MARTIN E. DACK (Bar No. 196068)
mdack@dacklaw.com
JAYSON Q. MARASIGAN (Bar No. 227225)
jmarasigan@dacklaw.com
DACK MARASIGAN, LLP
2601 Main Street, Suite 950
Irvine, California 92618
Telephone: (949) 789-0674
Facsimile: (949) 789-0687

*Attorneys for Defendant and Counterclaimant Paul EDALAT*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA -SOUTHERN DIVISION**

ALTERNATE HEALTH USA Inc. and ALTERNATE HEALTH CORP.,

Plaintiffs,

vs.

PAUL EDALAT,

Defendant.

PAUL EDALAT,

Counterclaimant.

vs.

ALTERNATE HEALTH USA Inc., ALTERNATE HEALTH CORP., HOWARD MANN, and MICHAEL L. MURPHY, M.D.

Counterdefendants.

CASE NO. 8:17-cv-1887-CJC (JDEx)

**ANSWER OF PAUL EDALAT AND COUNTERCLAIM OF PAUL EDALAT:**

COUNTERCLAIM FOR:

1. **FRAUD IN THE INDUCEMENT**
2. **FRAUD-MISREPRESENTATION**
3. **NEGLIGENT-MISREPRESENTATION**
4. **BREACH OF CONTRACT**
5. **DECLARATORY RELIEF**

**[JURY TRIAL DEMANDED]**

Defendant Paul EDALAT ("EDALAT" or "Defendant") for himself alone, answers the Complaint of ALTERNATE HEALTH USA Inc. ("AHUS") and ALTERNATE HEALTH CORP. ("AHC") (Collectively "Plaintiffs" or "ALTERNATE HEALTH") as follows:

## INTRODUCTION

1. Answering Paragraph 1 of Plaintiffs' Complaint, Defendant asserts that this Paragraph does not contain any factual allegations to which a response is required, but denies any factual allegations contained therein.

2. Answering Paragraph 2 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

3. Answering Paragraph 3 of Plaintiffs' Complaint, Defendant admits the first sentence only and denies the remaining allegations contained therein.

4. Answering Paragraph 4 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

5. Answering Paragraph 5 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

6. Answering Paragraph 6 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

7. Answering Paragraph 7 of Plaintiffs' Complaint, Defendant admits the last sentence only and denies the remaining allegations contained therein.

8. Answering Paragraph 8 of Plaintiff's Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

9. Answering Paragraph 9 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

10. Answering Paragraph 10 of Plaintiffs' Complaint, Defendant alleges that he

is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

11. Answering Paragraph 11 of Plaintiff's Complaint, Defendant admits the allegations contained therein.

12. Answering Paragraph 12 of Plaintiffs' Complaint, Defendant admits the third sentence only, and is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein.

13. Answering Paragraph 13 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

14. Answering Paragraph 14 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

15. Answering Paragraph 15 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

16. Answering Paragraph 16 of Plaintiffs' Complaint, Defendant admits the first sentence only and denies the remaining allegations contained therein.

17. Answering Paragraph 17 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

18. Answering Paragraph 18 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

19. Answering Paragraph 19 of Plaintiffs' Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

20. Answering Paragraph 20 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

21. Answering Paragraph 21 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

22. Answering Paragraph 22 of Plaintiff's Complaint, Defendant denies the

allegations contained therein.

23. Answering Paragraph 23 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

24. Answering Paragraph 24 of Plaintiffs' Complaint, Defendant admits the first sentence only and denies the remaining allegations contained therein.

25. Answering Paragraph 25 of Plaintiff's Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

26. Answering Paragraph 26 of Plaintiffs' Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

27. Answering Paragraph 27 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

28. Answering Paragraph 28 of Plaintiffs' Complaint, Defendant denies the first sentence only, and is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein.

29. Answering Paragraph 29 of Plaintiff's Complaint, Defendant admits the first sentence only, and is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein.

30. Answering Paragraph 30 of Plaintiffs' Complaint, Defendant admits the allegations contained therein.

31. Answering Paragraph 31 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

32. Answering Paragraph 32 of Plaintiffs' Complaint, Defendant admits the allegations contained therein.

33. Answering Paragraph 33 of Plaintiffs' Complaint, Defendant admits the allegations contained therein.

34. Answering Paragraph 34 of Plaintiffs' Complaint, Defendant alleges that he

is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

35. Answering Paragraph 35 of Plaintiff's Complaint, Defendant admits the allegations contained therein.

36. Answering Paragraph 36 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

37. Answering Paragraph 37 of Plaintiffs' Complaint, Defendant admits the allegations contained therein.

38. Answering Paragraph 38 of Plaintiff's Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

39. Answering Paragraph 39 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

40. Answering Paragraph 40 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

41. Answering Paragraph 41 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

42. Answering Paragraph 42 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

43. Answering Paragraph 43 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

44. Answering Paragraph 44 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the

allegations contained therein.

45. Answering Paragraph 45 of Plaintiff's Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

46. Answering Paragraph 46 of Plaintiffs' Complaint, Defendant denies the factual allegations contained therein.

47. Answering Paragraph 47 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

48. Answering Paragraph 48 of Plaintiffs' Complaint, Defendant asserts that this Paragraph does not contain any factual allegations to which a response is required, but denies any factual allegations contained therein.

49. Answering Paragraph 49 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

50. Answering Paragraph 50 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

51. Answering Paragraph 51 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

52. Answering Paragraph 52 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

53. Answering Paragraph 53 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

54. Answering Paragraph 54 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

55. Answering Paragraph 55 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

56. Answering Paragraph 56 of Plaintiff's Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

57. Answering Paragraph 57 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

58. Answering Paragraph 58 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

59. Answering Paragraph 59 of Plaintiff's Complaint, Defendant asserts that this Paragraph does not contain any factual allegations to which a response is required, but denies any factual allegations contained therein.

60. Answering Paragraph 60 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

61. Answering Paragraph 61 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

62. Answering Paragraph 62 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

63. Answering Paragraph 63 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

64. Answering Paragraph 64 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

65. Answering Paragraph 65 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

66. Answering Paragraph 66 of Plaintiff's Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

67. Answering Paragraph 67 of Plaintiffs' Complaint, Defendant alleges that he

is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

68. Answering Paragraph 68 of Plaintiffs' Complaint, Defendant asserts that this Paragraph does not contain any factual allegations to which a response is required, but denies any factual allegations contained therein.

69. Answering Paragraph 69 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

70. Answering Paragraph 70 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

71. Answering Paragraph 71 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

72. Answering Paragraph 72 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

73. Answering Paragraph 73 of Plaintiff's Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

74. Answering Paragraph 74 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

75. Answering Paragraph 75 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

76. Answering Paragraph 76 of Plaintiffs' Complaint, Defendant asserts that this Paragraph does not contain any factual allegations to which a response is required, but denies any factual allegations contained therein.

77. Answering Paragraph 77 of Plaintiff's Complaint, Defendant denies the

allegations contained therein.

78. Answering Paragraph 78 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

79. Answering Paragraph 79 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

80. Answering Paragraph 80 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

81. Answering Paragraph 81 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

82. Answering Paragraph 82 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

83. Answering Paragraph 83 of Plaintiff's Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

84. Answering Paragraph 84 of Plaintiffs' Complaint, Defendant denies the last sentence and alleges that he is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein.

85. Answering Paragraph 85 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

86. Answering Paragraph 86 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

87. Answering Paragraph 87 of Plaintiffs' Complaint, Defendant asserts that this Paragraph does not contain any factual allegations to which a response is required, but denies any factual allegations contained therein.

88. Answering Paragraph 88 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

89. Answering Paragraph 89 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

90. Answering Paragraph 90 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

91. Answering Paragraph 91 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

92. Answering Paragraph 92 of Plaintiffs' Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

93. Answering Paragraph 93 of Plaintiff's Complaint, Defendant alleges that he is without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein.

94. Answering Paragraph 94 of Plaintiffs' Complaint, Defendant denies the last sentence and alleges that he is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein.

95. Answering Paragraph 95 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

96. Answering Paragraph 96 of Plaintiffs' Complaint, Defendant denies the allegations contained therein.

Defendant further submits the following special affirmative defenses in response to the complaint:

**FIRST AFFIRMATIVE DEFENSE**

**(FAILS TO STATE FACTS)**

The complaint and each cause of action stated therein against Defendant fails to state facts sufficient to constitute a cause of action against Defendant.

**SECOND AFFIRMATIVE DEFENSE**

**(STATUTE OF LIMITATIONS)**

The complaint and each cause of action therein are barred by the applicable statutes of limitation.

**THIRD AFFIRMATIVE DEFENSE**

**(ESTOPPEL)**

Plaintiffs are estopped from asserting any and all claims in the complaint against Defendant based upon statements, actions, representations, and conduct of the Plaintiffs.

**FOURTH AFFIRMATIVE DEFENSE**

**(NO DAMAGE)**

Defendant alleges that Plaintiffs suffered no damage in their dealings with Defendant.

**FIFTH AFFIRMATIVE DEFENSE**

**(FAILURE TO MITIGATE)**

Plaintiffs have failed to mitigate whatever damages, if any, it has suffered (Defendant denies that Plaintiffs have suffered any damages).

**SIXTH AFFIRMATIVE DEFENSE**

**(THIRD PERSONS' COMPARATIVE FAULT/NEGLIGENCE)**

At all times mentioned in the complaint, the incident(s), injuries and damages alleged therein were either wholly or in part proximately caused by the negligence and fault of persons, firms, corporations, or entities other than Defendant and the negligence of such other persons, firms, corporations, and/or entities comparatively reduces the percentages of negligence or breach if any, attributed to said Defendant.

**SEVENTH AFFIRMATIVE DEFENSE**

**(PROXIMATE CAUSE)**

Even assuming for the sake of argument that Defendant has acted or failed to act as alleged in the complaint (which Defendant denies and only makes such assumption for purpose of this defense), such acts or failures to act are not the proximate cause of any damage alleged in the complaint.

**EIGHTH AFFIRMATIVE DEFENSE**

**(EXCUSE)**

Any alleged acts, errors, or omissions which Plaintiffs allege in their complaint constitute a violation of law or breach of duty were excused (Defendant denies any violation of law or breach of duty).

**NINTH AFFIRMATIVE DEFENSE**

**(CONSENT)**

Plaintiffs at all times gave consent, express or implied to the alleged acts, omissions, and conduct of Defendant (which acts, omissions, and conduct alleged in the complaint this Defendant denies).

**TENTH AFFIRMATIVE DEFENSE**

**(LACHES)**

Plaintiffs are barred from recovery against Defendant by operation of the Doctrine of Laches.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(WAIVER)**

By conduct, representations and omissions, the Plaintiffs have waived, relinquished, abandoned, and are equitably estopped to assert, any claim for relief against Defendant respecting the matters that are the subject of the complaint.

**TWELFTH AFFIRMATIVE DEFENSE**

**(FAILURE TO NAME INDISPENSABLE PARTIES)**

Plaintiffs are barred from recovering any damages or other relief by reason of their failure to bring their action against indispensable parties, including but not limited to Counterdefendants Howard Mann and Michael L. Murphy, M.D. based upon their fraudulent conduct.

**THIRTEEENTH AFFIRMATIVE DEFENSE**

**(IMPOSSIBILITY)**

Plaintiffs are barred and/or limited from recovering any damages or other relief because any duty or obligation Defendant may have had to perform for the benefit of

Plaintiffs was rendered impossible to perform due to the conduct of Plaintiffs and their agents.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(FAILURE OF CONDITION)**

Plaintiffs are barred and/or limited from recovering any damages or other relief because of a failure of the Plaintiffs, and/or the persons and/or entities acting on their behalf, to perform all or any conditions, whether precedent, concurrent and/or subsequent, covenants, and/or promises on their part to be performed as between the parties herein.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(STATUTE OF FRAUDS)**

The complaint is barred by the Statute of Frauds.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(PLAINTIFFS' FAILURE TO PERFORM)**

Any failure by the Defendant to perform any obligations described in the complaint, each alleged cause of action therein which supposition is not admitted by the Defendant, but is merely stated for the purposes of this affirmative defense, resulted from and was proximately caused by Plaintiffs' failure to perform their own obligations. Plaintiffs' failure to perform their obligations excused any performance and any of the Defendant's alleged obligations.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(LACK OF GOOD FAITH AND FAIR DEALING)**

Plaintiffs failed to act in good faith and fair dealing in the performance and enforcement of the contract.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(SUPERCEDING CAUSE)**

Defendant alleges that the complaint should be barred on the grounds that in the event the Plaintiffs are adjudged to sustain any damages or injuries, said responsibilities for the damages and injuries are vested with persons other than the Defendant, or the

superseding cause of Plaintiffs' damages and injuries, and therefore are not solely and exclusively liable for Plaintiffs' alleged damages and injuries.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(PRIOR MATERIAL BREACH BY PLAINTIFF)**

Defendant alleges that his obligations under the contract are excused due to a prior material breach of contract on the part of the Plaintiffs.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(UNCERTAINTY)**

Defendant alleges that the complaint, and each Cause of Action contained therein, is uncertain in that it is impossible to tell from the allegations which of the alleged acts of Defendant caused the damages alleged in the complaint.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(FAILURE TO DO EQUITY)**

No relief may be obtained under the complaint by reason of the Plaintiffs' failure to do equity in the matters alleged in the complaint filed herein.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(SETOFF)**

Without conceding that any act of the Defendant caused damage to the Plaintiffs or any other person in any respect, Defendant alleges that he is entitled to offset and recoup against any judgment that may be entered against him and all obligations of the Plaintiffs owing to the Defendant.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(LACK OF STANDING)**

Plaintiffs are barred from seeking relief against Defendant because they lack standing to sue Defendant.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(NOT ENTITLED TO PUNITIVE DAMAGES)**

Plaintiffs are not entitled to any award of punitive damages because Plaintiffs have

failed to allege facts sufficient to support Plaintiffs' entitlement to such a remedy pursuant to California Civil Code § 3294 and/or under the laws of the State of California.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(PRIVILEGE)**

The complaint and each cause of action therein are barred because any and all actions, communications and or statements of Defendant with respect to Plaintiffs were privileged.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(NO JUSTIFIABLE RELIANCE)**

The complaint and each cause of action therein are barred because Plaintiffs cannot establish that they relied or justifiably relied on any act or action by Defendant.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(NO DUTY OWED)**

The complaint and each cause of action therein are barred because Defendant did not owe a duty to Plaintiffs.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(NO CONTRACT/NO MUTUAL ASSENT)**

Defendant alleges that any agreement(s) recited by the Plaintiffs was not agreed to by Defendant, does not comport to the parties' mutual understanding regarding the terms of their relationship/agreement, and Defendant received no benefit from Plaintiffs.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

**(DAMAGES UNCERTAIN)**

The complaint and each cause of action therein are barred because the damages Plaintiffs allege they suffered are uncertain and thereby preclude calculation and recovery thereof.

**THIRTIETH AFFIRMATIVE DEFENSE**

**(LACK OF INTENT)**

The complaint and each cause of action therein are barred because Defendant

lacked the requisite intent to support the allegations made against him by Plaintiffs in the complaint.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

**(JUSTIFICATION)**

The complaint and each cause of action therein are barred because Defendant acted with justification at all times (Defendant denies they engaged in any actions to harm Plaintiffs).

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

**(LACK OF CONSIDERATION)**

The complaint and each cause of action therein are barred because Plaintiffs failed to provide consideration to Defendants for the purported contract(s).

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

**(GOOD FAITH BELIEF IN ACTIONS TAKEN)**

The Plaintiffs' Complaint, and each purported cause of actions contained therein, is barred in whole or in part because Defendant had an honest, reasonable, and good faith belief in the facts on which he based his acts, omissions, and conduct taken with respect to Plaintiffs.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

**(PAROL EVIDENCE RULE)**

The Complaint and each cause of action therein are barred because Plaintiffs are seeking to improperly use parole evidence to modify the terms of the alleged contract (the existence of which Defendant denies and only makes such assumption for purpose of this defense).

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

**(FRAUD)**

Plaintiffs are barred from recovering any damages or other relief by reason of their fraudulent conduct towards Defendant.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

**(IMPOSSIBILITY)**

Plaintiffs are barred and/or limited from recovering any damages or other relief because any duty or obligation Defendant may have had to perform for the benefit of Plaintiffs was rendered impossible to perform due to the conduct of Plaintiffs and their agents.

**ADDITIONAL AFFIRMATIVE DEFENSES**

Defendant presently has insufficient knowledge or information upon which to form a belief as to whether he may have additional, as yet unstated affirmative defenses available. Defendant hereby reserves the right to assert additional affirmative defenses in the event that discovery indicates that they are appropriate.

**JURY DEMAND**

Defendant EDALAT hereby demands trial by jury on all triable issues.

**WHEREFORE**, the Defendant prays as follows:

1. That the complaint herein be dismissed with prejudice;
2. That Plaintiffs take nothing by way of their complaint;
3. That Defendant be awarded his costs of suit incurred herein, including reasonable attorney's fees as allowed by law and/or contract; and
4. For such other and further relief as the Court deems just and proper.

DATED: November 22. 2017

DACK MARASIGAN. LLP
MARTIN E. DACK
JAYSON O. MARASIGAN

By: [signature]
MARTIN E. DACK
Attorneys for Defendant PAUL EDALAT

## COUNTERCLAIM OF PAUL EDALAT

COMES NOW, Counterclaimant Paul EDALAT ("EDALAT" or "COUNTERCLAIMANT") who alleges damages and seeks equitable relief against ALTERNATE HEALTH USA Inc. ("AHUS"), ALTERNATE HEALTH CORP. ("AHC"), HOWARD MANN ("MANN") and MICHAEL L. MURPHY, M.D. ("MURPHY") (AHUS, AHC, MANN and MURPHY shall be referred to collectively as "COUNTERDEFENDANTS") alleges as follows:

## JURISDICTION AND VENUE

1. EDALAT is, and all times herein mentioned was, an individual and a resident of the County of Orange, State of California.

2. EDALAT is informed and believes, and on that basis alleges, that Counterdefendant ALTERNATE HEALTH USA Inc. ("AHUS"), is a Delaware Corporation with its principal place of business in the State of Texas.

3. EDALAT is informed and believes, and on that basis alleges, that Counterdefendant ALTERNATE HEALTH CORP. ("AHC"), is a Canadian Corporation with its principal place of business in Canada.

4. ALTERNATE HEALTH USA Inc. ("AHUS") and ALTERNATE HEALTH CORP. ("AHC") shall be collectively referred to as "ALTERNATE HEALTH."

5. EDALAT is informed and believes, and on that basis alleges, that Counterdefendant HOWARD MANN ("MANN") is a citizen of Canada, is domiciled in Canada, and at all times relevant was, and is, a Board member and/or officer of ALTERNATE HEALTH.

6. EDALAT is informed and believes, and on that basis alleges, that Counterdefendant MICHAEL L. MURPHY, M.D. ("MURPHY") is an individual domiciled in San Antonio Texas and at all times relevant was, and is, a Board member and/ or officer of ALTERNATE HEALTH.

7. EDALAT is informed and believes and thereon alleges that each of the COUNTERDEFENDANTS are in some manner legally responsible for the acts and

omissions alleged herein, which actually and proximately caused and contributed to the various injuries and damages EDALAT has suffered, referred to herein.

8. EDALAT is informed and believes, and thereon allege, that at all times herein mentioned, each of the COUNTERDEFENDANTS was the agent, servant, employee, alter-ego, instrumentality, representative, co-venturer, and/or partner of each of the other COUNTERDEFENDANTS, and in doing the things herein alleged, was acting within the course, scope, purpose and knowledge of such agency, employment, alter-ego, instrumentality, representation, co-venture, and/or partnership, and with the knowledge, permission and consent or with the approval or ratification of their co-COUNTERDEFENDANTS and, as such, share liability with each other with respect to said matters complained of herein.

9. At all times relevant hereto, each of the COUNTERDEFENDANTS conspired with, aided and abetted, and/or acted in concert with each and every other COUNTERDEFENDANTS to harm, injure and damage EDALAT as hereinafter alleged and, in furtherance of the aforesaid conspiracy or other plan, each and every COUNTERDEFENDANT engaged in one or more of the overt acts hereinafter alleged.

10. This action is properly filed in the Central District of California – Southern Division, and this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy, without interest and costs, exceeds $75,000.00 as specified by 28 U.S.C. § 1332. Venue is also proper under 28 U.S.C. §1391 (b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

11. This Court has personal jurisdiction over MURPHY and MANN as the acts they engaged in causing damage to EDALAT occurred in California and in this judicial district. If and to the extent that MURPHY and MANN committed the wrongful acts outside of this judicial district, they committed said wrongful acts with the intent to cause a tortious effect in this judicial district and/or intentionally directed those wrongful acts at EDALAT.

**GENERAL ALLEGATIONS/INTRODUCTION**

12. EFT Global Holdings, Inc. dba Sentar Pharmaceuticals ("Sentar"), along with its principal EDALAT, originally met with COUNTERDEFENDANTS' representatives including MANN on or about May 20, 2016. At all times relevant, ALTERNATE HEALTH has been managed and directed by its principals: board members and officers MANN and MURPHY. Walter Grieves (of ALTERNATE HEALTH) and MANN visited Sentar's "Gillette facility" in Irvine, California on May 20, 2016. The additional attendees at the visit included EDALAT and Olivia Karpinski of Sentar. The parties met at the Gillette facility and discussed the former FDA issues at the facility, including EDALAT's prior company SciLabs Nutraceuticals, Inc. and the injunction contained in a Consent Decree/settlement with FDA attached as Exhibit "D" to the Complaint herein. Thus, the existence of the FDA injunction against EDALAT and SciLabs Nutraceuticals was known to MANN, MURPHY and ALTERNATE HEALTH, and Walter Grieves as early as this Gillette facility visit on May 20, 2016.

13. Sentar is a completely separate entity from SciLabs Nutraceuticals and has nothing to do with the Consent Decree which ALTERNATE HEALTH now complains of in its Complaint.

14. Notwithstanding, the FDA injunction is unrelated to the CBD pill production processes contemplated by the License Agreement attached to the Complaint as Exhibit "B", the Consulting Agreement attached as Exhibit "A" and the Manufacturing Agreement attached as Exhibit "C." The Consent Decree of Permanent Injunction against SciLabs Nutraceuticals, Inc. and EDALAT clearly states the injunction relates solely to the manufacture and distribution of "dietary supplements." The License Agreement relates solely to Sentar's granting of its license to ALTERNATE HEALTH for its use of the licensed patent rights to manufacture and distribute CBD and THC in tablet form as drugs for non-pharmaceutical uses. These are not dietary supplements and are not covered by the FDA injunction.

15. Dietary supplements are mentioned throughout the injunction, while it never refers to "prescription drugs" or "non-prescription drugs" while disclosing the scope of the

injunction. Prescription drugs are defined by the FDA as "a substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," while supplements are regulated separately and regarded as specialty foods.

16. The FDA's website at https://www.fda.gov/NewsEvents/PublicHealthFocus/ucm421168.htm#dietary_supplements answers the question whether CBD is a dietary supplement (It is not.):

**"13. Can products that contain THC or cannabidiol (CBD) be sold as dietary supplements?**

**A. No. Based on available evidence, FDA has concluded that THC and CBD products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) and (ii) of the FD&C Act, respectively…**

**…**

**FDA is not aware of any evidence that would call into question its current conclusions that THC and CBD products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) and (ii) of the FD&C Act."**

Thus, based on the FDA, CBD is not a dietary supplement and dietary supplements and are not covered by the FDA injunction at issue here.

17. Prior to the License Agreement being entered into in January 2017, MANN arranged for EDALAT and Karpinski to retain MANN'S attorney, Lee Durst, Esq. (MANN'S attorney) in an ongoing business dispute/lawsuit. (Cahill et.al. v EDALAT et. al.). MANN was copied on many of the emails and had extensive knowledge of the full legal proceedings, including the details and facts of the case. MANN was continuously kept abreast of the litigation proceedings. MANN was aware of the allegations made against EDALAT in the Cahill v. EDALAT trial, which included the FDA consent decree issue, and various other claims made in the litigation against all parties. At all times, MANN and ALTERNATE HEALTH stated that they were aware that the injunction existed and that it did not have any restrictions on the production of non-pharmaceutical drugs; just dietary supplements.

18. On June 21, 2016, MANN received the Sentar Pharmaceuticals licensing agreement to work toward ALTERNATE HEALTH 'S licensing of the Sentar technology

for a Zika Virus study and subsequent product commercialization and for sales. On June 27, 2016, MANN was sent the Sentar patent list. MANN subsequently represented to EDALAT that he had his patent attorney look at Sentar's patents and he stated they are the "strongest patents he has seen." MANN even stated that he wanted to potentially invest in Sentar.

19. On June 29, 2016, a full sales plan was sent including raw material (CBD) sourcing with a legal opinion, product design needs, manufacturing needs, potential raw material operation opportunity, and a full breakdown of case studies and a New Drug Application for the Zika Virus study. Identifying the sourcing and manufacturing were the goals at that time.

20. Sentar received from MANN and ALTERNATE HEALTH its Business Forecast Summary dated June 26, 2016 that states that expected revenues would generate royalties in year one to Sentar of more than $1 million and increasing significantly in the subsequent years. ALTERNATE HEALTH also represented through its ALTERNATE HEALTH Strategy Total Forecast that allocated monies for start-up expenses for sales of the non-pharmaceutical tablets specifically of $1,396,000 and operating expenses of $2.2 million that were never allocated, marketing campaigns, operating expenses and startup costs for marketing the non-pharmaceutical products on a monthly user subscription base. The contract states that this is the responsibility of ALTERNATE HEALTH, but to date, not even a fraction of the projected millions has been spent. Further, the numbers provided by ALTERNATE HEALTH prior to Sentar completing the licensing deal with ALTERNATE HEALTH reflect a projected royalty payment to Sentar in the amount of $1,044,440 (year one); $23,588,040 (year two) and $57,365,000 (year three).

21. ALTERNATE HEALTH has never performed and the products have never been commercialized to generate any revenues, and therefore no royalties.

22. ALTERNATE HEALTH also predicted astronomical sales for the Zika Virus study and finished product which has never occurred. The following is a string of text messages from MANN to EDALAT stating that the stock will be valued at over $100/share, and that the company will have billions in equity when it goes public:

Based on these representations, Sentar entered into the licensing agreement with ALTERNATE HEALTH in exchange for shares in the company in lieu of a cash payment. By August 9, 2016, Sentar was working on packaging for ALTERNATE HEALTH. Mann also represented to Sentar about "billion" dollar deals ALTERNATE HEALTH was closing:



23. On August 26, 2016, Sentar shipped CBD tablets to Dr. Riello to begin the Zika Virus study. The full product specs were sent August 30, 2016. Following a request by a shareholder, Amir Asvadi, on September 6, 2016, the parties agreed to have a phone call every Tuesday at 1:30 p.m. to move this project forward and to solve the lack of communication problems. EDALAT developed a CBD kit around this time and started discussions of the same.

24. On September 14, 2016, COUNTERDEFENDANTS through MANN and MURPHY misrepresented to EDALAT that they had access to 1000 dispensaries for immediate sales. On September 15, 2016, EDALAT and Sentar still did not have any of the ALTERNATE HEALTH details they needed for the project, raw material had not been provided, and sales were still being promised. The following emails show Sentar's team, including EDALAT, doing everything they could to complete a product – even doing the marketing/label design which is ALTERNATE HEALTH 'S responsibility under the agreements. There was no meaningful response to these emails on September 23, 2016 and October 4, 2016 to meet.

25. On or about September 24, 2016, Sentar sent all of the additional information to Dr. Riello for the Zika Virus study. On September 27, 2016, a production date and

marketing plan for sublingual pills and patches for the 1000 dispensaries was requested in addition to other needs. (See email below). EDALAT and Sentar even performed all of ALTERNATE HEALTH 'S marketing and package design, which was approved by MANN as shown below. The label approved by MANN was an RX product at ALTERNATE HEALTH's request (not "nutraceuticals). EDALAT and SENTAR worked with ALTERNATE HEALTH's legal team to get the product ready for use. Instead, MANN advised the ALTERNATE HEALTH team to "pull back on the commercialization," of the non-pharma products, so that MANN and ALTERNATE HEALTH could "squeeze Paul and Sentar for more money from the deal."

Weekly conference call

Olivia Karpinski [illegible]

Good morning team

Here is the conference call dial in for the call today at 1:30-2:00pm PDT

Conference bridge [redacted]

Items for discussion

1) Olivia to have the prototype of the final product for distribution in dispensaries by end of week. Let's discuss design needs and labeling. Once this is done we can schedule meetings with distributors and get sales going

2) Hempbuds: Farah is actively working on the testing and labeling requirements and will be communicating by email the timeframe

3) Howard to set up a call with PhD in Florida regarding hempbuds: bioavailability, absorption, dosing, quantity, labeling, delivery time, etc.

4) Cure Plant visit in Oxnard: Amir and Paul will be out of town Wednesday and Thursday of this week and we have a meeting at noon in LA on Friday. Olivia to work on scheduling with Walter

5) CBD Source: Walter and I have sourced international Isolate CBD powder from the stalk of the industrial hemp plant: $12,500 for 500grams / $19,500 for 1Kilo

6) Let's get a production date and marketing plan for sublingual pills and patch 1k dispensaries - Walter and Howard

7) PTSD: commission and other studies - Howard and Walter

We are looking forward to the call

Thank you

Olivia

Olivia Karpinski

Sentar Pharmaceuticals
17309 Gillette Ave

instructions - they are there as a placeholder and for review.

Look forward to your feedback so we can get the product label done this week and have a on-schedule, finished product by Friday!!!

Thank you,

Olivia

...

2 Attachments

Howard Mann <hmann@dcnetcast.com>
to Rick, me, Walter, Amir, Paul, Lee

Hi All,

The packaging looks great. In that there is really no need for me to participate at this stage, I will bow out and suggest Walter and Rick McCartney will take it from here.

Best,

Howard

Sent from my iPhone

...

Received on Sep 30, 2016 10:46:56 PM

HM: I just had dinner with Coach Darnel and his Wall Street guy, who did an analysis and appraised our stock at $300 a share.

Received on Sep 30, 2016 10:47:42 PM

HM: He told Rick to call you and tell you your stock is not worth $20M is worth over $600M

PaulEdalat - 99 - Oct 1, 2017, 9:43:04 PM

26. On January 9, 2017, Sentar entered into the License Agreement (attached as Exhibit B to the Complaint) with ALTERNATE HEALTH. Sentar never promised nor represented that Sentar would manufacture, package and distribute sublingual tablets at the Gillette Facility. The License Agreement reflects what the parties agreed to: solely the issuance by Sentar of a license for the use by ALTERNATE HEALTH of its patented technology.

27. On January 25, 2017, ALTERNATE HEALTH published an inaccurate press release wherein ALTERNATE HEALTH misrepresented the extent of the licensing agreement made with Sentar. EDALAT immediately requested that the press release be revoked and corrected. MANN responded via text advising EDALAT that he was "holding up $9MM of funding by not signing off on the press release" regarding the

licensing deal between Sentar and ALTERNATE HEALTH .

28. MANN, MURPHY and ALTERNATE HEALTH are using the Sentar patent license to raise funds ($9 Million) and then diverted those funds elsewhere rather than commercializing the CBD product as they promised. ALTERNATE HEALTH also engaged in other nefarious conduct. EDALAT assisted ALTERNATE HEALTH to acquire a transdermal patch company, Medipatch. ALTERNATE HEALTH never started paying the rent on the Gillette facility but had Medipatch move in. Further, on March 8, 2017, Sentar provided all compliance documents (which Sentar had previously paid tens of thousands for) for the facility to help them get the facility licensed.

29. In the past few months, Sentar and EDALAT have been working to provide ALTERNATE HEALTH with additional products, including a CBD kit concept and an already-finished product developed by EDALAT. Sentar gave ALTERNATE HEALTH all of the design work, die cuts, packaging, and linked them up with Sentar's packaging team and in-house design team. Sentar and EDALAT have performed above and beyond any of their obligations under the agreements. Sentar and EDALAT developed and created

the sublingual CBD tablet for ALTERNATE HEALTH, the canine product, identified and attempted to help ALTERNATE HEALTH to set up manufacturing. Sentar even pays the rent on the lab that ALTERNATE HEALTH used to raise money from investors.

30. Prior to ALTERNATE HEALTH's most recent Board Meeting, Sentar delivered to ALTERNATE HEALTH with 24 hours' notice, all the samples of the CBD products including the non-pharma product, the canine product and even the kits EDALAT had developed that were not yet an ALTERNATE HEALTH product. ALTERNATE HEALTH has been using Sentar's patents and the lab that Sentar has at the Gillette Facility in Irvine, California to raise money for their company and drive the stock value up, yet has not performed its contractual obligations. To date, ALTERNATE HEALTH has no CBD product sales from the sublingual patent license. Sentar has received no royalty payments to date from the license.

31. ALTERNATE HEALTH has recently made statements that it plans to license Sentar's technology to third parties, for commercial use, in violation of its License Agreement with Sentar. Any violations of Sentar's rights as to its technology, and any disclosure of confidential information regarding Sentar's technology could result in further legal action. ALTERNATE HEALTH does not have the rights to Sentar's technology beyond the scope of the licensing agreement.

32. ALTERNATE HEALTH has named MURPHY as its CEO. EDALAT has also learned that MURPHY is involved in ongoing insurance fraud civil litigation matters with Blue Cross and Aetna that has not been disclosed to Sentar or other shareholders including EDALAT. Blue Cross & Blue Shield of Mississippi allege that they have received insurance claims of more than $33.8 million for laboratory services that were not performed at a hospital contracted by the insurer according to a suit filed in Mississippi federal court. Blue Cross claims Mississippi-based Sharkey-Issaquena Community Hospital entered into a contract with laboratories Sun Clinical Laboratory LLC, Mission Toxicology LLC and its affiliates that allowed them to submit claims to Blue Cross using the hospital's name and billing information even though the services were performed independently of the hospital. "Beginning in February 2017 through the present, claims were and are being submitted to Blue Cross for payment for laboratory services

purportedly performed at and by the hospital which were not ordered by a licensed physician or other licensed health professional who has appropriate staff privileges at the hospital and which were not performed at the hospital in Rolling Fork, Mississippi," the complaint says. Blue Cross says it has paid about $9.8 million of the more than $33.8 million total claims so far.

33. EDALAT is informed and believes that MURPHY was the Manager of Sun Clinical Laboratories, LLC which is managed by Clover Tail Capital LLC, of which MURPHY is the managing member. None of this information was ever disclosed to EDALAT or the other shareholders of the publically traded ALTERNATE HEALTH. Unfortunately, EDALAT is now unable to sell his shares due to restrictions placed on their transfer by ALTERNATE HEALTH.

34. EDALAT also recently learned that on September 29, 2017 a new lawsuit was filed by Aetna, Inc. and Aetna Life Insurance Company ("Aetna") against MURPHY and his company Sun Clinical Laboratories, LLC, amongst several other defendants, alleging insurance fraud and RICO violations. This additional fraud litigation with Aetna in the jurisdiction of U.S. District Courts, Pennsylvania Eastern District (Case Number 2:17-cv-04354-BMS, along with the earlier fraud lawsuit with Blue Cross, have not been disclosed to Sentar, EDALAT or the other shareholders and is causing damage to the value of the AHC stock held by EDALAT.

## FIRST CAUSE OF ACTION

### Fraud in the Inducement

### (Against All Counterdefendants)

35. EDALAT refers to and incorporates herein by reference each and every other paragraph of this counterclaim as though fully set forth herein.

36. Since in or around May 2016, COUNTERDEFENDANTS have continuously represented to Sentar and EDALAT that they were intending to utilize Sentar's patent license for its sublingual pill delivery system to use in ALTERNATE HEALTH's manufacture and distribution of CBD tablets for non-pharmaceutical use. COUNTERDEFENDANTS further expressly represented they would "use its best efforts

to bring Licensor Patent Rights to market through a thorough, vigorous and diligent program and to continue active, diligent marketing efforts." Based on these representations, Sentar agreed to license its patented technology for its sublingual drug delivery system to ALTERNATE HEALTH. In exchange for the license, Sentar received 850,000 shares of stock in ALTERNATE HEALTH and the promise of 10 years of royalty payments based upon sales of CBD tablets. Based on these same representations, EDALAT agreed to enter into the Consulting Agreement with ALTERNATE HEALTH, attached to the Complaint as Exhibit "A." Pursuant to that Agreement, in exchange for EDALAT's expertise, he received shares of stock in AHC, of which he currently owns 1,638,506 shares.

37. EDALAT has performed his duties outlined in the Consulting Agreement beyond what was expected. EDALAT helped develop the company ALTERNATE HEALTH. EDALAT brought in investors and consultants to the Board. EDALAT was personally responsible for bringing in approximately $500,000 in capital contributions to ALTERNATE HEALTH from EDALAT'S connections. EDALAT introduced knowledgeable business people to ALTERNATE HEALTH as consultants. EDALAT and his team assisted in developing a CBD medical kit for ALTERNATE HEALTH. EDALAT worked closely with the vice president of sales for ALTERNATE HEALTH, Jade Green, spending 100s of hours in this endeavor.

38. COUNTERDEFENDANTS' representations were in fact false. COUNTERDEFENDANTS had never intended to manufacture and distribute the CBD pills, but instead utilized Sentar's patent license and EDALAT's expertise and experience to entice investors to invest in ALTERNATE HEALTH. ALTERNATE HEALTH received investments and used these investments for expenses and investments in other projects not involving the manufacture of CBD tablets. MANN also instructed the ALTERNATE HEALTH team to "pull back on the commercialization," of the non-pharma products, so that COUNTERDEFENDANTS could "squeeze Paul (Edalat) and Sentar for more money from the deal."

39. EDALAT justifiably relied on COUNTERDEFENDANTS' representations that they were intending to manufacture and distribute the CBD tablets because it was

already involved in the cannabis industry. Once EDALAT realized that COUNTERDEFENDANTS was not timely proceeding with its obligations, EDALAT attempted to move the process forward by investing a considerable amount of more effort into the process. EDALAT has been damaged in that he has wasted two years during his involvement with COUNTERDEFENDANTS. In addition, COUNTERDEFENDANTS have refused to allow EDALAT to sell his shares of AHC stock and has unreasonably refused to lift its restrictions on the transfer of his shares of stock. COUNTERDEFENDANTS' actions have caused damage to EDALAT as the shares of stock have lost significant value since he attempted to sell its shares.

40. COUNTERDEFENDANTS acted with the intent to deprive EDALAT of his legal rights and to injure it such that its actions constitute fraud, oppression or malice within the meaning of California Civil Code section 3294. Such conduct was despicable, oppressive and outrageous, justifying the imposition of punitive and exemplary damage against COUNTERDEFENDANTS to make an example of them and to deter such conduct in the future. EDALAT therefore requests punitive damages against COUNTERDEFENDANTS in a sum that is appropriate.

41. EDALAT further requests that the Court enter judgment ordering COUNTERDEFENDANTS to remove the restrictions on the transfer of the shares of ACH held by EDALAT.

## SECOND CAUSE OF ACTION

### Fraud-Misrepresentation

### (Against All Counterdefendants)

42. EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

43. Since in or around May 2016, COUNTERDEFENDANTS have continuously represented to Sentar and EDALAT that they were intending to utilize Sentar's patent license for its sublingual pill delivery system to use in ALTERNATE HEALTH's manufacture and distribution of CBD tablets for non-pharmaceutical use. COUNTERDEFENDANTS further expressly represented it would "use its best efforts to

bring Licensor Patent Rights to market through a thorough, vigorous and diligent program and to continue active, diligent marketing efforts." Based on these representations, Sentar agreed to license its patented technology for its sublingual drug delivery system to ALTERNATE HEALTH. In exchange for the license, Sentar received 850,000 shares of stock in ALTERNATE HEALTH and the promise of 10 years of royalty payments based upon sales of CBD tablets. Based on these same representations, EDALAT agreed to enter into the Consulting Agreement with ALTERNATE HEALTH attached to the Complaint as Exhibit "A." Pursuant to that Agreement, in exchange for EDALAT's expertise, he received shares of stock in AHC, of which he currently owns 1,638,506 shares.

44. COUNTERDEFENDANTS's representations were in fact false. COUNTERDEFENDANTS had never intended to manufacture and distribute the CBD pills, but instead utilized Sentar's patent license and EDALAT's expertise and experience to entice investors to invest in ALTERNATE HEALTH. COUNTERDEFENDANTS received investments and used these investments for expenses and investments in other projects not involving the manufacture of CBD tablets. MANN also instructed the ALTERNATE HEALTH team to "pull back on the commercialization," of the non-pharma products, so that COUNTERDEFENDANTS could "squeeze Paul (Edalat) and Sentar for more money from the deal."

45. EDALAT justifiably relied on COUNTERDEFENDANTS' representations that they were intending to manufacture and distribute the CBD tablets because it was already involved in the cannabis industry. Once EDALAT realized that COUNTERDEFENDANTS were not timely proceeding with their obligations, EDALAT attempted to move the process forward by investing a considerable amount of more effort into the process. EDALAT has been damaged in that he has wasted two years during his involvement with ALTERNATE HEALTH. In addition, COUNTERDEFENDANTS have refused to allow EDALAT to sell his shares of AHC stock and has unreasonably refused to lift its restrictions on the transfer of his shares of stock. COUNTERDEFENDANTS' actions have caused damage to EDALAT as the shares of stock have lost significant value since he attempted to sell its shares.

46. COUNTERDEFENDANTS acted with the intent to deprive EDALAT of his legal rights and to injure it such that its actions constitute fraud, oppression or malice within the meaning of California Civil Code section 3294. Such conduct was despicable, oppressive and outrageous, justifying the imposition of punitive and exemplary damage against COUNTERDEFENDANTS to make an example of them and to deter such conduct in the future. EDALAT therefore requests punitive damages against COUNTERDEFENDANTS in a sum that is appropriate.

47. EDALAT further requests that the Court enter judgment ordering COUNTERDEFENDANTS to remove the restrictions on the transfer of the shares of ACH held by EDALAT.

**THIRD CAUSE OF ACTION**

**Negligent Misrepresentation**

**(Against All Counterdefendants)**

48. EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

49. Since in or around May 2016, COUNTERDEFENDANTS have continuously represented to Sentar and EDALAT that they were intending to utilize Sentar's patent license for its sublingual pill delivery system to use in ALTERNATE HEALTH's manufacture and distribution of CBD tablets for non-pharmaceutical use. COUNTERDEFENDANTS further expressly represented it would "use its best efforts to bring Licensor Patent Rights to market through a thorough, vigorous and diligent program and to continue active, diligent marketing efforts." Based on these representations, Sentar agreed to license its patented technology for its sublingual drug delivery system to ALTERNATE HEALTH. In exchange for the license, Sentar received 850,000 shares of stock in ALTERNATE HEALTH and the promise of 10 years of royalty payments based upon sales of CBD tablets. Based on these same representations, EDALAT agreed to enter into the Consulting Agreement with ALTERNATE HEALTH attached to the Complaint as Exhibit "A." Pursuant to that Agreement, in exchange for EDALAT's expertise, he received shares of stock in AHC, of which he currently owns

1,638,506 shares.

50. When COUNTERDEFENDANTS made the above-described representations to EDALAT, they had no reasonable ground for believing that the representations were true, and the COUNTERDEFENDANTS made the representations with the intent to induce EDALAT to take the actions herein alleged.

51. COUNTERDEFENDANTS had no reasonable belief they would manufacture and distribute the CBD pills, but instead utilized Sentar's patent license and EDALAT's expertise and experience to entice investors to invest in ALTERNATE HEALTH. COUNTERDEFENDANTS received investments and used these investments for expenses and investments in other projects not involving the manufacture of CBD tablets. MANN also instructed the ALTERNATE HEALTH team to "pull back on the commercialization," of the non-pharma products, so that COUNTERDEFENDANTS could "squeeze Paul (Edalat) and Sentar for more money from the deal."

52. EDALAT justifiably relied on COUNTERDEFENDANTS' representations that they were intending to manufacture and distribute the CBD tablets because it was already involved in the cannabis industry. Once EDALAT realized that COUNTERDEFENDANTS were not timely proceeding with their obligations, EDALAT attempted to move the process forward by investing a considerable amount of more effort into the process. EDALAT has been damaged in that he has wasted two years during his involvement with ALTERNATE HEALTH. In addition, COUNTERDEFENDANTS have refused to allow EDALAT to sell his shares of AHC stock and has unreasonably refused to lift its restrictions on the transfer of his shares of stock.

53. As a direct and proximate result of the above-described misrepresentations of fact on the part of COUNTERDEFENDANTS, EDALAT has been damaged in a sum to be proven at trial.

54. COUNTERDEFENDANTS acted with the intent to deprive EDALAT of his legal rights and to injure it such that its actions constitute fraud, oppression or malice within the meaning of California Civil Code section 3294. Such conduct was despicable, oppressive and outrageous, justifying the imposition of punitive and exemplary damage

against COUNTERDEFENDANTS to make an example of them and to deter such conduct in the future. EDALAT therefore requests punitive damages against COUNTERDEFENDANTS in a sum that is appropriate.

55. EDALAT further requests that the Court enter judgment ordering COUNTERDEFENDANTS to remove the restrictions on the transfer of the shares of ACH held by EDALAT.

**FOURTH CAUSE OF ACTION**

**Breach of Contract**

**(Against Counterdefendants AHUS and AHC)**

56. EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

57. Since in or around May 2016, COUNTERDEFENDANTS has continuously represented to EDALAT and Sentar that it was intending to utilize Sentar's patent license for its sublingual pill delivery system to use in ALTERNATE HEALTH's manufacture and distribution of CBD tablets for non-pharmaceutical use. Based on these representations, EDALAT expended considerable resources to assist COUNTERDEFENDANTS towards the ultimate goal of manufacturing CBD tablets by using Sentar's license of its patented technology for its sublingual delivery system to ALTERNATE HEALTH. On January 9, 2017, EDALAT entered into the Consulting Agreement (attached as Exhibit A to the Complaint) with ALTERNATE HEALTH. EDALAT agreed to provide his expertise regarding sublingual delivery system technology to ALTERNATE HEALTH. In exchange, EDALAT received 1,638,506 shares of AHC stock (after EDALAT distributed a portion of his shares to third parties).

58. EDALAT has performed his duties outlined in the Consulting Agreement beyond what was expected. EDALAT helped develop the company ALTERNATE HEALTH. EDALAT brought in investors and consultants to the Board. EDALAT was personally responsible for bringing in approximately $500,000 in capital contributions to ALTERNATE HEALTH from EDALAT'S connections. EDALAT introduced knowledgeable business people to ALTERNATE HEALTH as consultants. EDALAT

and his team assisted in developing a CBD medical kit for ALTERNATE HEALTH. EDALAT worked closely with the vice president of sales for ALTERNATE HEALTH, Jade Green, spending 100s of hours in this endeavor.

59. ALTERNATE HEALTH has breached the Agreement in failing to use any effort to bring the CBD pills to market which has caused the value of EDALAT's shares of stock to decrease. ALTERNATE HEALTH had never intended to manufacture and distribute the CBD pills, but instead utilized Sentar's patent license through press releases and representations by MANN to entice investors to invest large sums of money in ALTERNATE HEALTH. ALTERNATE HEALTH received investments and used these investments for expenses and investments in other projects not involving the manufacture of CBD tablets.

60. Once EDALAT realized that ALTERNATE HEALTH was not timely proceeding with its obligations, EDALAT and Sentar attempted to move the process forward by investing a considerable amount of money and effort into the process.

61. In addition, ALTERNATE HEALTH has refused to allow EDALAT to sell his 1,638,506 shares of AHC stock and has unreasonably refused to lift its restrictions on the transfer of EDALAT's shares of stock. ALTERNATE HEALTH's actions have caused damage to EDALAT as the shares of stock have lost significant value since EDALAT attempted to sell his shares. EDALAT has been further damaged because there have been no sales of CBD tablets caused by the lack of effort by Alternate Health to perform its contractual obligations.

## FIFTH CAUSE OF ACTION

### Declaratory Relief

### (Against Counterdefendants AHUS and AHC)

62. EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

63. COUNTERDEFENDANTS have refused to allow EDALAT to sell his 1,638,506 shares of AHC stock and have unreasonably refused to lift its restrictions on the transfer of EDALAT's shares of stock. There is no legal or contractual basis to have

stock transfer restrictions on EDALAT's shares as AHC's shares are now public. COUNTERDEFENDANTS' actions have caused damage to EDALAT as the shares of stock have lost significant value since EDALAT attempted to sell his shares.

64. EDALAT requests the judgment include an order and/or finding that COUNTERDEFENDANTS shall remove any restrictions on the transfer of EDALAT's 1,638,506 shares of stock in AHC.

**WHEREFORE,** Counterclaimant EDALAT prays for judgment as follows:

1. For special and general damages according to proof;
2. For compensatory damages, including loss of profits, royalties, promotional opportunities, benefits and other opportunities of employment, according to proof;
3. For exemplary or punitive damages in an amount according to proof;
4. For an award making a finding and/or ordering the removal of any restrictions on the transfer of Paul Edalat's 1,638,506 shares of stock in AHC.
5. For an award of interest, including pre-judgment interest, at the legal rate;
6. For an award of attorney's fees;
7. For costs of suit incurred herein; and
8. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Counterclaimant Paul Edalat hereby demands trial of this action by jury.

DATED: November 22. 2017

DACK MARASIGAN. LLP
MARTIN E. DACK
JAYSON Q. MARASIGAN

Bv: [signature]
MARTIN E. DACK
Attorneys for Counterclaimant Paul Edalat

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange. I am over the age of eighteen years and not a party to the within entitled action; my business address is 2601 Main Street, Suite 950, Irvine, California 92614.

On November 22, 2017, I served the following document(s) described **ANSWER OF PAUL EDALAT AND COUNTERCLAIM OF PAUL EDALAT** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

**SEE ATTACHED LIST**

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY OVERNIGHT DELIVERY:** I served such envelope or package to be delivered on the same day to an authorized courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier.

☐ **BY FACSIMILE:** I served said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (949) 789-0687. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The sending facsimile machine issued a transmission report confirming that the transmission was complete and without error. Pursuant to Rule 2008(e), a copy of that report is attached to this declaration.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 22, 2017, at Irvine, California.

Martin E. Dack

**SERVICE LIST**

Fred Bennett
Robert J. Becher
QUINN EMANUEL URQUART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
E-Mail: fredbennett@quinemanuel.com
Fax: (213)443-3100
Attorneys for Plaintiffs Alternate Health USA Inc. and Alternate Health Corp.