1  MARC A. INDEGLIA (SBN 180635)
2  *marc@indegliacarney.com*
   INDEGLIA & CARNEY LLP
3  11900 W. Olympic Blvd, Suite 770
4  Los Angeles, CA 90064
   Telephone:  (310) 982-2720
5  Facsimile:   (310) 982-2719

6
7  Attorneys for Defendant and Counterclaimant,
   PAUL EDALAT

8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11                  SOUTHERN DIVISION
12

| | |
|---|---|
| 13 Alternative Health USA Inc., and<br>14 Alternate Health Corp.,<br><br>15      Plaintiffs,<br>16<br>17   v.<br>18 Paul Edalat,<br>19      Defendant.<br>20 | Case No. 8:17-cv-01887-CJC (JDEx)<br><br>Assigned to the Honorable Cormac J. Carney<br><br>**ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM OF PAUL EDALAT FOR:** |
| 21 Paul Edalat,<br>22      Counterclaimant<br>23   v.<br>24<br>25 Alternative Health USA Inc., and<br>26 Alternate Health Corp., Howard Mann,<br>and Michael L. Murphy, M.D,<br>27      Counterdefendants. | 1. **FRAUD IN THE INDUCEMENT**<br>2. **FRAUD - INTENTIONAL MISREPRESENTATION**<br>3. **NEGLIGENT MISREPRESENTATION**<br>4. **BREACH OF CONTRACT**<br>5. **REFUSAL TO REGISTER TRANSFER OF SECURITIES**<br>6. **MARKET MANIPULATION - VIOLATION OF** |

28

CALIFORNIA
CORPORATIONS CODE §§
25401 AND 25501
7. MARKET MANIPULATION –
VIOLATION OF 15 U.S.C. §78i
8. VIOLATION OF 15 U.S.C.
§77q(a), 15 U.S.C. §78j(b), AND
17 C.F.R. §240.10b-5
9. VIOLATION OF § 10(B) OF
THE 1934 ACT AND RULE
10B-5
10. UNFAIR BUSINESS
PRACTICES
11. CONVERSION
12. DECLARATORY RELIEF


JURY TRIAL DEMANDED

1     Pursuant to Fed. R. Civ. Proc. 8, Defendant PAUL EDALAT ("Defendant")
2 hereby responds to the allegations in the First Amended Complaint filed by Plaintiffs
3 ALTERNATE HEALTH USA INC. and ALTERNATE HEALTH CORP. (together
4 "Plaintiffs") as follows:

5                              **INTRODUCTION**

6     1.     This paragraph consists of legal conclusions, as to which no response is
7 required.  To the extent any response is required, Defendant denies these allegations.

8     2.     Defendant is without sufficient knowledge or information to form a belief
9 as to the truth of these allegations and, on that basis, denies each and every allegation
10 contained therein.

11     3.     Defendant admits the first sentence of this paragraph.  Defendant denies
12 the remaining allegations of this paragraph.

13     4.     Defendant denies the allegations of this paragraph.

14     5.     Defendant denies the allegations of this paragraph.

15     6.     Defendant denies the allegations of this paragraph.

16     7.     Defendant admits the last sentence of this paragraph.  Defendant denies
17 the remaining allegations of this paragraph.

18     8.     Defendant is without sufficient knowledge or information to form a belief
19 as to the truth of these allegations and, on that basis, denies each and every allegation
20 contained therein.

21                              **THE PARTIES**

22     9.     Defendant is without sufficient knowledge or information to form a belief
23 as to the truth of these allegations and, on that basis, denies each and every allegation
24 contained therein.

25     10.     Defendant is without sufficient knowledge or information to form a belief
26 as to the truth of these allegations and, on that basis, denies each and every allegation
27 contained therein.

28

-3-

1    11.    Defendant admits the allegations of this paragraph.

2    **JURISDICTION AND VENUE**

3    12.    Defendant admits the allegations of the fourth sentence of this paragraph.

4    Defendant is without sufficient knowledge or information to form a belief as to the

5    truth of the allegations in the second and third sentences of this paragraph and, on that

6    basis, denies each and every allegation contained therein.  The remainder of this

7    paragraph consists of legal conclusions, as to which no response is required. To the

8    extent any response is required, Defendant denies these allegations.

9    13.    This paragraph consists of legal conclusions, as to which no response is

10   required. To the extent any response is required, Defendant denies these allegations.

11   **FACTS GIVING RISE TO THE DISPUTE**

12   14.    Defendant denies the allegations of this paragraph.

13   15.    Defendant denies the allegations of this paragraph.

14   16.    Defendant admits the first sentence of this paragraph.  Defendant denies

15   the remaining allegations of this paragraph.

16   17.    Defendant denies the allegations of this paragraph.

17   18.    Defendant denies the allegations of this paragraph.

18   19.    Defendant is without sufficient knowledge or information to form a belief

19   as to the truth of the allegations in the first sentence of this paragraph and, on that

20   basis, denies each and every allegation contained therein.  Defendant admits the

21   second sentence of this paragraph.  Defendant admits that, on or about May 20, 2016,

22   Ms. Karpinski sent Mr. Mann an e-mail, with several attachments.  To the extent this

23   paragraph purports to describe any attachments to the e-mail, such documents speak

24   for themselves and no response is required.  To the extent any response is required,

25   Defendant denies these allegations.  Defendant denies the remainder of the allegations

26   of this paragraph.

27

28

20.     Defendant admits that, on or about May 20, 2016, Ms. Karpinski sent Mr. Mann an e-mail, with several attachments.  To the extent this paragraph purports to describe any attachments to the e-mail, such documents speak for themselves and no response is required.  To the extent any response is required, Defendant denies these allegations.  Defendant denies the remainder of the allegations of this paragraph.

21.     Defendant denies the allegations of this paragraph.

22.     Defendant denies the allegations of this paragraph.

23.     Defendant denies the allegations of this paragraph.

24.     Defendant denies the allegations of this paragraph.

25.     Defendant admits that Exhibit A appears to be an Agreement for ConsultingServices (sic) by and among Plaintiffs and Defendant.  Defendant admits that Exhibit B appears to be a License Agreement for Sublingual Delivery System by and among Plaintiffs and EFT Global Holdings, d.b.a. Sentar Pharmaceuticals.  Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies each and every allegation contained therein.

26.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

27.     Defendant denies the allegations of this paragraph.

## THE CONSULTING AGREEMENT

28.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

29.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

-5-
ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

30.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

31.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

32.     Defendant admits the allegations of this paragraph.

33.     Defendant admits the allegations of this paragraph.

34.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

## THE SUBLINGUAL LICENSE AGREEMENT

35.     Defendant admits the allegations of this paragraph.

36.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

37.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

38.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

39.     Defendant denies the allegations of this paragraph.

## THE MANUFACTURING AGREEMENT

40.     Defendant denies the allegations of this paragraph.

1    41.    This paragraph purports to describe the purported "Manufacturing

2  Agreement," which is a document that speaks for itself and no response is required.

3  To the extent any response is required, Defendant denies these allegations.

4    42.    Defendant denies the allegations of this paragraph.

5    **ALTERNATE HEALTH DISCOVERS EDALAT'S DECEIT**

6    43.    Defendant is without sufficient knowledge or information to form a belief

7  as to the truth of these allegations and, on that basis, denies each and every allegation

8  contained therein.

9    44.    Defendant is without sufficient knowledge or information to form a belief

10  as to the truth of these allegations and, on that basis, denies each and every allegation

11  contained therein.

12    45.    To the extent this paragraph purports to describe a complaint filed by the

13  FDA, such document speaks for itself and no response is required.  To the extent any

14  response is required, Defendant denies these allegations.  Defendant denies the

15  remainder of the allegations of this paragraph.

16    46.    To the extent this paragraph purports to describe a consent decree, such

17  document speaks for itself and no response is required.  To the extent any response is

18  required, Defendant denies these allegations.  Defendant denies the remainder of the

19  allegations of this paragraph.

20    47.    Defendant denies the allegations of this paragraph.

21    48.    Defendant is without sufficient knowledge or information to form a belief

22  as to the truth of these allegations and, on that basis, denies each and every allegation

23  contained therein.

24    **FIRST CAUSE OF ACTION:  FRAUD IN THE INDUCEMENT**

25    49.    Defendant incorporates by reference, as though fully set forth herein, the

26  responses set forth above.

27    50.    Defendant denies the allegations of this paragraph.

28

-7-
ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

1    51.    Defendant denies the allegations of this paragraph.

2    52.    Defendant denies the allegations of this paragraph.

3    53.    Defendant denies the allegations of this paragraph.

4    54.    Defendant denies the allegations of this paragraph.

5    55.    Defendant is without sufficient knowledge or information to form a belief

6    as to the truth of these allegations and, on that basis, denies each and every allegation

7    contained therein.

8    56.    Defendant is without sufficient knowledge or information to form a belief

9    as to the truth of these allegations and, on that basis, denies each and every allegation

10   contained therein.

11   57.    Defendant denies the allegations of this paragraph.

12   58.    Defendant denies the allegations of this paragraph.

13   59.    Defendant denies the allegations of this paragraph.

14   **SECOND CAUSE OF ACTION:  FRAUD – MISREPRESENTATION,**

15   **CONCEALMENT, AND NONDISCLOSURE**

16   60.    Defendant incorporates by reference, as though fully set forth herein, the

17   responses set forth above.

18   61.    Defendant denies the allegations of this paragraph.

19   62.    Defendant denies the allegations of this paragraph.

20   63.    Defendant denies the allegations of this paragraph.

21   64.    Defendant denies the allegations of this paragraph.

22   65.    Defendant denies the allegations of this paragraph.

23   66.    Defendant is without sufficient knowledge or information to form a belief

24   as to the truth of these allegations and, on that basis, denies each and every allegation

25   contained therein.

26   67.    Defendant denies the allegations of this paragraph.

27   68.    Defendant denies the allegations of this paragraph.

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

**THIRD CAUSE OF ACTION:  NEGLIGENT MISREPRESENTATION**

69.    Defendant incorporates by reference, as though fully set forth herein, the responses set forth above.

70.    Defendant denies the allegations of this paragraph.

71.    Defendant denies the allegations of this paragraph.

72.    Defendant denies the allegations of this paragraph.

73.    Defendant denies the allegations of this paragraph.

74.    Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

75.    Defendant denies the allegations of this paragraph.

76.    Defendant denies the allegations of this paragraph.

**FOURTH CAUSE OF ACTION:  RESTITUTION FOR RESCISSION OF CONTRACT BASED ON FRAUD**

77.    Defendant incorporates by reference, as though fully set forth herein, the responses set forth above.

78.    Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

79.    Defendant denies the allegations of this paragraph.

80.    Defendant denies the allegations of this paragraph.

81.    Defendant denies the allegations of this paragraph.

82.    Defendant denies the allegations of this paragraph.

83.    Defendant denies the allegations of this paragraph.

84.    Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

85.     Defendant denies the allegations of this paragraph.

86.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

87.     Defendant denies the allegations of this paragraph.

88.     Defendant denies the allegations of this paragraph.

## FIFTH CAUSE OF ACTION:  RESTITUTION FOR RESCISSION OF CONTRACT BASED ON NEGLIGENT MISREPRESENTATION

89.     Defendant incorporates by reference, as though fully set forth herein, the responses set forth above.

90.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

91.     Defendant denies the allegations of this paragraph.

92.     Defendant denies the allegations of this paragraph.

93.     Defendant denies the allegations of this paragraph.

94.     Defendant denies the allegations of this paragraph.

95.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

96.     Defendant denies the allegations of this paragraph.

97.     Defendant denies the allegations of this paragraph.

98.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

99.     Defendant denies the allegations of this paragraph.

///

## REQUEST FOR RELIEF

Defendant expressly denies that Plaintiffs are entitled to any of the relief sought, on any cause of action, in the request for relief in the First Amended Complaint.

## AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to the First Amended Complaint and the purported claims for relief therein, Defendant alleges the following.  All such affirmative defenses are pled in the alternative and do not constitute any admission of liability or that the Plaintiffs are entitled to any relief.

### First Affirmative Defense

### (Failure to State a Claim)

Neither the First Amended Complaint, nor any purported cause of action asserted therein, states facts sufficient to constitute a claim against this answering Defendant.

### Second Affirmative Defense

### (Actions Not Unlawful)

Plaintiffs' claims are barred, in whole or in part, because Defendant's actions that Plaintiffs allege were not unlawful.

### Third Affirmative Defense

### (Actions Not Fraudulent, Deceptive or Likely to Mislead)

Plaintiffs' claims are barred, in whole or in part, because Defendant's actions that Plaintiffs allege were not fraudulent, deceptive, or likely to mislead.

### Fourth Affirmative Defense

### (Statute of Limitations)

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations.

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

<div align="center">Fifth Affirmative Defense</div>

<div align="center">(Standing)</div>

Plaintiffs' claims are barred, in whole or in part, by lack of standing.

<div align="center">Sixth Affirmative Defense</div>

<div align="center">(*Res Judicata*, Issue Preclusion and/or Claim Preclusion)</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrines of *res judicata*, issue preclusion, and/or claim preclusion.

<div align="center">Seventh Affirmative Defense</div>

<div align="center">(No Authorization)</div>

Plaintiffs' claims are barred, in whole or in part, because Defendant did not authorize, ratify, encourage, participate in, aid, or abet any of the misconduct Plaintiffs allege.

<div align="center">Eighth Affirmative Defense</div>

<div align="center">(No Proximate Cause – Third Parties/Contribution and Indemnification)</div>

Under the principles of contribution and indemnity, third parties, by their acts and conduct, proximately caused or contributed to the alleged injury, damage, or detriment, if any, Plaintiffs may have sustained or will sustain.

<div align="center">Ninth Affirmative Defense</div>

<div align="center">(Intervening/Superseding Cause)</div>

Any alleged harm to Plaintiffs was caused and/or brought about by intervening and superseding causes and was not caused by Defendant or any person or entity, if any, for whom or which it was responsible.

<div align="center">Tenth Affirmative Defense</div>

<div align="center">(Waiver)</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

///

///

<div align="center">Eleventh Affirmative Defense</div>

<div align="center">(Estoppel)</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

<div align="center">Twelfth Affirmative Defense</div>

<div align="center">(Laches)</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

<div align="center">Thirteenth Affirmative Defense</div>

<div align="center">(Unclean Hands and Related Equitable Principles)</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands and related equitable principles.

<div align="center">Fourteenth Affirmative Defense</div>

<div align="center">(Good Faith)</div>

Plaintiffs' claims are barred, in whole or in part, because Defendant at all times acted in good faith and did not directly or indirectly perform any act whatsoever that would constitute a violation of any right of Plaintiff.

<div align="center">Fifteenth Affirmative Defense</div>

<div align="center">(Failure to Mitigate)</div>

Plaintiffs' claims are barred, in whole or in part, or alternatively their recovery should be limited, to the extent Plaintiffs failed to take action to mitigate their damages, if any.

<div align="center">Sixteenth Affirmative Defense</div>

<div align="center">(Uncertainty/ Speculative Damages)</div>

Plaintiffs' claims are barred, in whole or in part, because the Complaint and each claim for relief asserted therein, and the damages sought, if any, are speculative and/or uncertain, and therefore, not compensable.

///

///

<div align="center">Seventeenth Affirmative Defense</div>

<div align="center">(Accord and Satisfaction)</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

<div align="center">Eighteenth Affirmative Defense</div>

<div align="center">(No Causation)</div>

Plaintiffs' claims are barred, in whole or in part, because Defendant was not the cause in fact or the proximate cause of any losses alleged by Plaintiffs.

<div align="center">Nineteenth Affirmative Defense</div>

<div align="center">(Failure to Plead with Particularity)</div>

Plaintiffs' claims are barred, in whole or in part, because the Complaint fails to plead fraud with particularity.

<div align="center">Twentieth Affirmative Defense</div>

<div align="center">(Ratification)</div>

Plaintiffs' claims are barred, in whole or in part, because their conduct constitutes ratification.

<div align="center">Twenty-First Affirmative Defense</div>

<div align="center">(Breach of Contract)</div>

Plaintiffs' claims are barred because Plaintiffs' conduct regarding their duties under the agreements constituted a breach of those agreements, and such a breach either bars or proportionately reduces any potential recovery by Plaintiffs, and/or entitles Defendant to recover any damages it has incurred as a result of Plaintiffs' breach.

///

///

///

///

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

<div align="center">Twenty-Second Affirmative Defense</div>

<div align="center">(Excused Performance)</div>

Plaintiffs' claims are barred because any obligation of Defendant pursuant to the terms of any agreement is excused due to Plaintiffs' misconduct, breach of said agreement(s), and failure to perform.

<div align="center">Twenty-Third Affirmative Defense</div>

<div align="center">(Conditions Precedent)</div>

Plaintiffs' claims are barred because any obligation of Defendant pursuant to the terms of any agreement are excused since conditions precedent to performance have not been met.

<div align="center">Twenty-Fourth Affirmative Defense</div>

<div align="center">(Failure of Performance)</div>

Plaintiffs' claims are barred in whole or in part as a result of their own failure to perform.

<div align="center">Twenty-Fifth Affirmative Defense</div>

<div align="center">(Prevention and Frustration)</div>

Plaintiffs' claims are barred because Defendant was ready, willing, and able to perform under any and all agreements, and Plaintiffs prevented and frustrated such performance.

<div align="center">Twenty-Sixth Affirmative Defense</div>

<div align="center">(Failure to Cooperate)</div>

Plaintiffs' claims are barred because their conduct regarding the duty to cooperate constituted a breach of said duty resulting in prejudice to Defendant, and such failure to cooperate either bars or proportionately reduces any potential recovery by Plaintiffs, and/or entitles Defendant to recover any damages he has incurred as a result of Plaintiffs' breach.

///

1

<div align="center">Twenty-Seventh Affirmative Defense</div>

2

<div align="center">(Performance of Obligation)</div>

3

4

5

Plaintiffs' claims are barred, in whole or in part, because Defendant discharged each and every obligation, if any, that he may have owed to Plaintiffs, and Defendant otherwise owed no duty to Plaintiffs.

6

7

<div align="center">Twenty-Eighth Affirmative Defense</div>

8

<div align="center">(Set-Off)</div>

9

10

11

Plaintiffs' claims are barred because they are subject to set-off of all sums due and owing from Plaintiffs to Defendant pursuant to valid claims by Defendant against Plaintiffs.

12

<div align="center">Twenty-Ninth Affirmative Defense</div>

13

<div align="center">(Lack of Consideration and/or Performance)</div>

14

15

Plaintiffs' claims are barred, in whole or in part, for lack of consideration and/or performance.

16

<div align="center">Thirtieth Affirmative Defense</div>

17

<div align="center">(Fraud)</div>

18

19

20

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs, either independently or in concern with others, committed fraud in connection with their performances under the agreements.

21

<div align="center">Thirty-First Affirmative Defense</div>

22

<div align="center">(Failure to Plead Fraud with Particularity)</div>

23

24

Plaintiffs' claims are barred, in whole or in part, because the First Amended Complaint fails to plead fraud with particularity.

25

///

26

///

27

///

28

<div align="center">-16-</div>

1

<center>Thirty-Second Affirmative Defense</center>

2

<center>(Lack of Irreparable Harm)</center>

3   Plaintiffs' claims for injunctive relief are barred because Plaintiff cannot show

4   that it will suffer any irreparable harm from Defendant's actions.

5

<center>Thirty-Third Affirmative Defense</center>

6

<center>(Adequacy of Remedy at Law)</center>

7   The alleged injury or damage suffered by Plaintiffs, if any, would be adequately

8   compensated by damages. Accordingly, Plaintiffs have a complete and adequate

9   remedy at law and are not entitled to seek equitable relief.

10

<center>Thirty-Fourth Affirmative Defense</center>

11

<center>(First Amendment)</center>

12   The claims made in the First Amended Complaint are barred, in whole or in

13   part, by the First Amendment to the Constitution of the United States.

14

<center>Thirty-Fifth Affirmative Defense</center>

15

<center>(Duplicative Claims)</center>

16   Without admitting that the First Amended Complaint states a claim, any

17   remedies are limited to the extent that there is sought an overlapping or duplicative

18   recovery pursuant to the various claims for any alleged single wrong.

19

<center>Thirty-Sixth Affirmative Defense</center>

20

<center>(Uncertainty)</center>

21   Plaintiffs' claims are barred, in whole or in part, because the First Amended

22   Complaint, and each claim for relief asserted therein, and the damages sought, are

23   uncertain.

24   ///

25   ///

26   ///

27   ///

28

<center>-17-</center>

<u>Thirty-Seventh Affirmative Defense</u>

(Contribution and Indemnification)

Under the principles of contribution and indemnity, persons other than Defendant may be wholly or partially responsible for the purported loss, injury, damage, or detriment, if any, Plaintiffs may have sustained or will sustain.

<u>Thirty-Eighth Affirmative Defense</u>

(Intervening/Superseding Cause)

Any alleged harm to Plaintiffs was caused and/or brought about by intervening and superseding causes and were not caused by Defendant or any person or entity, if any, for which they were responsible.

<u>Thirty-Ninth Affirmative Defense</u>

(Bona Fide Error)

Plaintiffs' claims are barred, in whole or in part, because, although Defendant denies each and every claim of Plaintiffs and deny that Defendant engaged in wrongdoing or error of any kind, any alleged error on Defendant's part was unintentional and resulted from bona fide error notwithstanding Defendant's use of reasonable procedures adopted to avoid any such error.

<u>Fortieth Affirmative Defense</u>

(Comparative Fault)

Defendant alleges that the injuries complained of and the damages sought by Plaintiffs were caused directly and proximately by Plaintiffs' own fault, acts or omissions.  In the event that Plaintiffs are found to have sustained and to be entitled to recovery of any damages, Defendant is liable only for that portion of any damages that correspond to his degree of fault or responsibility, if any, and not for the acts or omissions of Plaintiffs or other persons, whether individual, corporate, or otherwise, and whether named or unnamed in the First Amended Complaint.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">

### Forty-First Affirmative Defense

(Nonjoinder/Misjoinder of Potentially Responsible Parties)

</div>

Plaintiffs have misjoined, or failed to join, all the potentially responsible parties necessary for the full and just adjudication of the alleged claims in the First Amended Complaint, as mandated by Federal Rules of Civil Procedure 19(a) and 21, including, without limitation, Howard Mann and Michael L. Murphy, M.D.

<div align="center">

### Forty-Second Affirmative Defense

(Unjust Enrichment)

</div>

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs would be unjustly enriched if allowed to recover any sums claimed to be due under the First Amended Complaint.

<div align="center">

### Forty-Third Affirmative Defense

(Lack of Damages)

</div>

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs suffered no damages as a result of the alleged wrongful conduct.

<div align="center">

### Forty-Fourth Affirmative Defense

(In Pari Delicto)

</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrine of in pari delicto.

<div align="center">

### Forty-Fifth Affirmative Defense

(Express or Implied Consent)

</div>

Each cause of action contained in the First Amended Complaint is barred by the doctrine of express and/or implied consent.

<div align="center">

### Forty-Sixth Affirmative Defense

(No Restitution or Disgorgement)

</div>

Plaintiffs are not entitled to restitution or disgorgement of profits.

///

1 | Forty-Seventh Affirmative Defense

2 | (Quantum Meruit)

3 | Without admitting any wrongful conduct by Defendant, Defendant is entitled to

4 | the value of the goods and services provided to Plaintiffs under the doctrine of

5 | quantum meruit.

6 | Forty-Eighth Affirmative Defense

7 | (Impossibility)

8 | Plaintiffs are barred and/or limited from recovering any damages or other relief

9 | because any duty or obligation Defendant may have had to perform for the benefit of

10 | Plaintiffs was rendered impossible to perform due to the conduct of Plaintiffs and their

11 | agents.

12 | Forty-Ninth Affirmative Defense

13 | (Failure of Condition)

14 | Plaintiffs are barred and/or limited from recovering any damages or other relief

15 | because of a failure of the Plaintiffs, and/or the persons and/or entities acting on their

16 | behalf, to perform all or any conditions, whether precedent, concurrent and/or

17 | subsequent, covenants, and/or promises on their part to be performed as between the

18 | parties herein.

19 | Fiftieth Affirmative Defense

20 | (Statute of Frauds)

21 | The First Amended Complaint is barred by the Statute of Frauds.

22 | Fifty-First Affirmative Defense

23 | (Lack of Good Faith and Fair Dealing)

24 | Plaintiffs failed to act in good faith and fair dealing in the performance and

25 | enforcement of the contract.

26 | ///

27 | ///

28 |

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

1

<div align="center">

Fifty-Second Affirmative Defense

</div>

2

<div align="center">

(Failure to do Equity)

</div>

3   No relief may be obtained under the complaint by reason of the Plaintiffs'

4   failure to do equity in the matters alleged in the complaint filed herein.

5

6

<div align="center">

Fifty-Third Affirmative Defense

</div>

7

<div align="center">

(No Justifiable Reliance)

</div>

8   The First Amended Complaint and each cause of action therein are barred

9   because Plaintiffs cannot establish that they relied or justifiably relied on any act or

10   action by Defendant.

11

<div align="center">

Fifty-Fourth Affirmative Defense

</div>

12

<div align="center">

(No Contract/No Mutual Assent)

</div>

13   Defendant alleges that any agreement(s) recited by the Plaintiffs was not agreed

14   to by Defendant, does not comport to the parties' mutual understanding regarding the

15   terms of their relationship/agreement, and Defendant received no benefit from

16   Plaintiffs.

17

<div align="center">

Fifty-Fifth Affirmative Defense

</div>

18

<div align="center">

(Justification)

</div>

19   The First Amended Complaint and each cause of action therein are barred

20   because Defendant acted with justification at all times (Defendant denies he engaged

21   in any actions to harm Plaintiffs).

22

<div align="center">

Fifty-Sixth Affirmative Defense

</div>

23

<div align="center">

(Parol Evidence Rule)

</div>

24   The First Amended Complaint and each cause of action therein are barred

25   because Plaintiffs are seeking to improperly use parole evidence to modify the terms

26   of the alleged agreements.

27   ///

28

<div align="center">

-21-

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

</div>

<div align="center">

Fifty-Seventh Affirmative Defense

(Impossibility)

</div>

Plaintiffs are barred and/or limited from recovering any damages or other relief because any duty or obligation Defendant may have had to perform for the benefit of Plaintiffs was rendered impossible to perform due to the conduct of Plaintiffs and their agents.

<div align="center">

Fifty-Eighth Affirmative Defense

(Puffery)

</div>

Plaintiffs are barred and/or limited from recovering any damages or other relief because any alleged misstatements or omissions of Defendant were mere puffery.

<div align="center">

Fifty-Ninth Affirmative Defense

(No Punitive Damages)

</div>

Plaintiffs are not entitled to recover punitive or exemplary damages, and any allegation or prayer with respect thereto should be stricken, because of the following: (a) Plaintiffs has failed to plead and cannot establish facts sufficient to support allegations of malice, oppression, or fraud; (b) an award of punitive damages would violate the rights of Defendant to due process and equal protection of the laws, as guaranteed by the United States and California constitutions; (c) applicable state law provides no constitutionally adequate and meaningful standards to guide the public, including Defendant, as to the kind of conduct which may subject it to such a sanction; (d) applicable state law leaves determination of the fact and amount of punitive damages to the arbitrary discretion of the trier of fact, without providing adequate or meaningful limits to exercise that discretion, thereby constituting a taking without due process; (e) no provision of applicable state law provides adequate procedural safeguards, consistent with the criteria set forth in Mathews v. Eldridge (1976) 424 U.S. 319, for the imposition of a punitive damage award; and (f) the concept of punitive damages whereby an award is made to Plaintiffs, as private

parties, not as compensation, but as a windfall incident to the punishment of Defendant, represents the taking of property without due process of law; (g) punitive damages violate Defendant's rights to protection from "excessive fines," as provided by the Eighth Amendment to the United States Constitution and Article I, Section 17 of the Constitution of the State of California, and further violate Defendant's rights to substantive due process as provided by the Fifth and Fourteenth Amendments to the United States Constitution, and by the Constitution of the State of California; (h) the imposition of punitive damages upon proof under a standard less than "beyond a reasonable doubt" violates Defendant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and under the Constitution of the State of California; and (i) Defendant alleges that Plaintiffs are precluded from recovering punitive damages under the applicable provision of Civil Code § 3294, or such other statute of similar effect as may be applicable.

<div align="center">Sixtieth Affirmative Defense</div>

<div align="center">(Reservation of Defenses and Rights)</div>

The First Amended Complaint does not describe its claims or events with sufficient particularity to permit Defendant to ascertain what other affirmative defenses may exist, and Defendant presently has insufficient knowledge or information to form a belief as to whether it has additional, as yet unstated, affirmative defenses available to it. Defendant therefore reserves the right to assert all affirmative defenses which may pertain to the First Amended Complaint once the precise nature of the claims is ascertained and in the event discovery indicates that they would be appropriate.

<div align="center">**PRAYER**</div>

WHEREFORE, this answering Defendant prays for judgment as follows:

1. That the First Amended Complaint be dismissed in its entirety;

2. That judgment be entered in favor of Defendant and that Plaintiffs take nothing

1    by their First Amended Complaint;

2        3.  That Defendant be awarded its costs of suit and attorney's fees to the extent

3    permitted by law;

4        4.  That Defendant be awarded such other and further relief as the Court deems just

5    and proper.

6                        **<u>DEMAND FOR JURY TRIAL</u>**

7        Defendant hereby respectfully demands a trial by jury in this action.

8

9

10   DATED:        January 3, 2018              INDEGLIA & CARNEY LLP

11                                      By:    */ s / Marc A. Indeglia*

12                                             Marc A. Indeglia
                                               Attorneys for Defendant,
13                                             PAUL EDALAT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

## COUNTERCLAIM OF PAUL EDALAT

COMES NOW, Counterclaimant Paul EDALAT ("EDALAT" or "COUNTERCLAIMANT") who alleges damages and seeks equitable relief against ALTERNATE HEALTH USA Inc. ("AHUS"), ALTERNATE HEALTH CORP. ("AHC"), HOWARD MANN ("MANN") and MICHAEL L. MURPHY, M.D. ("MURPHY") (AHUS, AHC, MANN and MURPHY shall be referred to collectively as "COUNTERDEFENDANTS") alleges as follows:

## JURISDICTION AND VENUE

1.      EDALAT is, and all times herein mentioned was, an individual and a resident of the County of Orange, State of California.

2.      EDALAT is informed and believes, and, on that basis, alleges, that Counterdefendant ALTERNATE HEALTH USA Inc. ("AHUS"), is a Delaware Corporation with its principal place of business in the State of Texas.

3.      EDALAT is informed and believes, and, on that basis, alleges, that Counterdefendant ALTERNATE HEALTH CORP. ("AHC"), is a Canadian Corporation with its principal place of business in Canada.

4.      ALTERNATE HEALTH USA Inc. ("AHUS") and ALTERNATE HEALTH CORP. ("AHC") shall be collectively referred to as "ALTERNATE HEALTH."

5.      EDALAT is informed and believes, and, on that basis, alleges, that Counterdefendant HOWARD MANN ("MANN") is a citizen of Canada, is domiciled in Canada, and at all times relevant was, and is, a Board member and/or officer of ALTERNATE HEALTH.

6.      EDALAT is informed and believes, and, on that basis, alleges, that Counterdefendant MICHAEL L. MURPHY, M.D. ("MURPHY") is an individual domiciled in San Antonio, Texas and at all times relevant was, and is, a Board member and/or officer of ALTERNATE HEALTH.

1       7.      EDALAT is informed and believes and thereon alleges that each of the

2  COUNTERDEFENDANTS are in some manner legally responsible for the acts and

3  omissions alleged herein, which actually and proximately caused and contributed to

4  the various injuries and damages EDALAT has suffered, referred to herein.

5       8.      EDALAT is informed and believes, and thereon allege, that at all times

6  herein mentioned, each of the COUNTERDEFENDANTS was the agent, servant,

7  employee, alter-ego, instrumentality, representative, co-venturer, and/or partner of

8  each of the other COUNTERDEFENDANTS, and in doing the things herein alleged,

9  was acting within the course, scope, purpose and knowledge of such agency,

10  employment, alter-ego, instrumentality, representation, co-venture, and/or partnership,

11  and with the knowledge, permission and consent or with the approval or ratification of

12  their co- COUNTERDEFENDANTS and, as such, share liability with each other with

13  respect to said matters complained of herein.

14      9.      At all times relevant hereto, each of the COUNTERDEFENDANTS

15  conspired with, aided and abetted, and/or acted in concert with each and every other

16  COUNTERDEFENDANTS to harm, injure and damage EDALAT as hereinafter

17  alleged and, in furtherance of the aforesaid conspiracy or other plan, each and every

18  COUNTERDEFENDANT engaged in one or more of the overt acts hereinafter

19  alleged.

20      10.     This action is properly filed in the Central District of California –

21  Southern Division, and this Court has diversity jurisdiction pursuant to 28 U.S.C. §

22  1332. The amount in controversy, without interest and costs, exceeds $75,000.00 as

23  specified by 28 U.S.C. § 1332.  Venue is also proper under 28 U.S.C. §1391 (b)(2) as

24  this is the judicial district in which a substantial part of the events or omissions giving

25  rise to the claim occurred.

26      11.     The claims asserted in this Counterclaim also arise out of the same facts

27  and circumstances as those of the First Amended Complaint, so the Court may

28

1    exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(a).

2        12.   This Court has personal jurisdiction over MURPHY and MANN as the

3    acts they engaged in causing damage to EDALAT occurred in California and in this

4    judicial district.  If and to the extent that MURPHY and MANN committed the

5    wrongful acts outside of this judicial district, they committed said wrongful acts with

6    the intent to cause a tortious effect in this judicial district and/or intentionally directed

7    those wrongful acts at EDALAT.

8                    **GENERAL ALLEGATIONS/INTRODUCTION**

9        13.   EFT Global Holdings, Inc. dba Sentar Pharmaceuticals ("Sentar"), along

10   with its principal EDALAT, originally met with COUNTERDEFENDANTS'

11   representatives including MANN on or about May 20, 2016.  At all times relevant,

12   ALTERNATE HEALTH has been managed and directed by its principals: board

13   members and officers MANN and MURPHY.  MANN visited Sentar's "Gillette

14   facility" in Irvine, California on May 20, 2016.  The additional attendees at the visit

15   included EDALAT, Olivia Karpinski of Sentar, and Walter Grieves.  The parties met

16   at the Gillette facility and discussed the former FDA issues at the facility, including

17   EDALAT's prior company SciLabs Nutraceuticals, Inc. and the injunction contained

18   in a Consent Decree/settlement with FDA attached as Exhibit "D" to the First

19   Amended Complaint herein.  Thus, the existence of the FDA injunction against

20   EDALAT and SciLabs Nutraceuticals was known to MANN, MURPHY, and

21   ALTERNATE HEALTH as early as this Gillette facility visit on May 20, 2016.

22       14.   Sentar is a completely separate entity from SciLabs Nutraceuticals and

23   has nothing to do with the Consent Decree which ALTERNATE HEALTH now

24   complains of in its Complaint.

25       15.   Notwithstanding, the FDA injunction is unrelated to the CBD pill

26   production processes contemplated by the License Agreement attached to the First

27   Amended Complaint as Exhibit "B" and the Consulting Agreement attached as

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

Exhibit "A".  The Consent Decree of Permanent Injunction against SciLabs Nutraceuticals, Inc. and EDALAT clearly states the injunction relates solely to the manufacture and distribution of "dietary supplements."  The License Agreement relates solely to Sentar's granting of its license to ALTERNATE HEALTH for its use of the licensed patent rights to manufacture and distribute CBD and THC in tablet form as drugs for non-pharmaceutical uses.  These are not dietary supplements and are not covered by the FDA injunction.

16.     Dietary supplements are mentioned throughout the injunction, while it never refers to "prescription drugs" or "non-prescription drugs" while disclosing the scope of the injunction. Prescription drugs are defined by the FDA as "a substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," while supplements are regulated separately and regarded as specialty foods.

17.     The FDA's website at https://www.fda.gov/NewsEvents/PublicHealthFocus/ucm421168.htm#dietary_supplements answers the question whether CBD is a dietary supplement (It is not.):

**"13. Can products that contain THC or cannabidiol (CBD) be sold as dietary supplements?**

**A. No. Based on available evidence, FDA has concluded that THC and CBD products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) and (ii) of the FD&C Act, respectively…**

**…**

**FDA is not aware of any evidence that would call into question its current conclusions that THC and CBD products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) and (ii) of the FD&C Act."**

Thus, based on the FDA, CBD is not a dietary supplement and dietary supplements and are not covered by the FDA injunction at issue here.

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

18.     Prior to the License Agreement being entered into in January 2017, MANN arranged for EDALAT and Karpinski to retain MANN'S attorney, Lee Durst, Esq. (MANN'S attorney) in an ongoing business dispute/lawsuit.  (Cahill et.al. v EDALAT et. al.).  MANN was copied on many of the emails and had extensive knowledge of the full legal proceedings, including the details and facts of the case.  MANN was continuously kept abreast of the litigation proceedings.  MANN was aware of the allegations made against EDALAT in the Cahill v. EDALAT trial, which included the FDA consent decree issue, and various other claims made in the litigation against all parties.  At all times, MANN and ALTERNATE HEALTH stated that they were aware that the injunction existed and that it did not have any restrictions on the production of non-pharmaceutical drugs, but rather just dietary supplements.

19.     On June 21, 2016, MANN received the Sentar Pharmaceuticals licensing agreement to work toward ALTERNATE HEALTH 'S licensing of the Sentar technology for a Zika Virus study and subsequent commercialization and sales of products based on the Sentar technology (the "Licensed Products").  On June 27, 2016, MANN was sent the Sentar patent list.  MANN subsequently represented to EDALAT that he had his patent attorney look at Sentar's patents and he stated they are the "strongest patents he has seen."  MANN even stated that he wanted to potentially invest in Sentar.

20.     On June 29, 2016, a full sales plan was sent including raw material (CBD) sourcing with a legal opinion, product design needs, manufacturing needs, potential raw material operation opportunity, and a full breakdown of case studies and a New Drug Application for the Zika Virus study.  Identifying the sourcing and manufacturing were the goals at that time.

21.     In soliciting EDALAT and Sentar to proceed with the proposed licensing and consulting arrangements, MANN and ALTERNATE HEALTH made materially false and misleading statements and omissions concerning ALTERNATE HEALTH's

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

financial projections and about the true intention with respect to commercialization efforts with respect to the Licensed Products.  On or about June 26, 2016, MANN and ALTERNATE HEALTH delivered its Business Forecast Summary dated June 26, 2016.  Although ALTERNATE HEALTH had no history of operating revenues or profits, the Business Forecast Summary forecasted that expected revenues from the sale of Licensed Products would generate royalties to Sentar of more than $1 million in ALTERNATE HEALTH's very first year of operation, and that those royalties would increase significantly thereafter to over $23 million in the second year of operation and over $57 million in the third year.  ALTERNATE HEALTH also represented through its ALTERNATE HEALTH Strategy Total Forecast that it had allocated $1,396,000 for start-up expenses for sales of the Licensed Products and operating expenses of $2.2 million for marketing campaigns, operating expenses and startup costs for marketing the non-pharmaceutical products on a monthly user subscription base.  The License Agreement ultimately provided that these start-up and operating expenses and the corresponding efforts to commercialize and sell Licensed Products were the responsibility of ALTERNATE HEALTH.

22.    Unless ALTERNATE HEALTH took the initial step of commercializing Licensed Products, it was impossible for ALTERNATE HEALTH to meet any of the seven or eight figure royalty forecasts from the sale of Licensed Products.  Further, even if ALTERNATE HEALTH did take any of the steps required to commercialize a Licensed Product, ALTERNATE HEALTH's projections were false and misleading in that they were not remotely likely and had no reasonable basis in fact, as ALTERNATE HEALTH had no history of product development and commercialization, particularly in the field of use proposed to be authorized by the License Agreement.

23.    At the time ALTERNATE HEALTH and MANN provided these financial projections to EDALAT and Sentar, however, ALTERNATE HEALTH and

MANN knew, or were at least reckless in not knowing, that ALTERNATE HEALTH had no intention of attempting to commercialize the Licensed Products. Rather, ALTERNATE HEALTH and MANN sought to obtain the license to the Licensed Products, and the corresponding consulting services from EDALAT, in order to use the existence of the License Agreement as a marketing tool to raise capital from unsuspecting investors. Indeed, EDALAT is informed and believes, and based thereon alleges, that ALTERNATE HEALTH raised approximately $9 million from unsuspecting investors throughout 2016 and 2017 based in large part on the promise that ALTERNATE HEALTH would commercialize and sell the Licensed Products in accordance with the same projections provided to EDALAT and Sentar.

24.     To date, ALTERNATE HEALTH has not even spent a fraction of the projected millions on commercializing the Licensed Products, notwithstanding the large amount of capital raised based on its representations – to EDALAT, Sentar, and the investors – that it would use its best efforts to commercialize the Licensed Products and allocate its capital in accordance with its projections. Due to its failure and refusal to use its best efforts and use the proceeds from its capital raise in accordance with its representations, ALTERNATE HEALTH has never commercialized any Licensed Products or generated any revenues therefrom, thus generating no royalties under the License Agreement.

25.     MANN and ALTERNATE HEALTH also made materially false and misleading statements and omissions concerning ALTERNATE HEALTH's projected stock value, again with no reasonable basis in fact. In particular, on or about June 29, 2016, in a text exchange with EDALAT, MANN projected, with no reasonable basis in fact, that (a) ALTERNATE HEALTH stock should be $5 per share (as opposed to $1 per share being used to value the shares of ALTERNATE HEALTH stock being offered for the license of the Licensed Products and for EDALAT's associated consulting services, and (b) that ALTERNATE HEALTH could be bigger than GW

Pharmaceuticals ("GW"), a publicly traded company with a stock price of $134 per share and a market capitalization of $3.7 billion:



26.     Based on these false and misleading representations, Sentar agreed to enter into a licensing agreement with ALTERNATE HEALTH in exchange for shares in the company in lieu of a cash payment, and EDALAT agreed to provide consulting

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

services for the development and refinement of the technology underlying the Licensed Products in exchange for shares in the company in lieu of a cash payment.

27.   By August 9, 2016, in advance of the License Agreement and Consulting Agreement becoming effective, EDALAT and Sentar were working on packaging on proposed Licensed Products for ALTERNATE HEALTH.  On August 15, 2016, in order to further induce EDALAT to continue to provide consulting services, to further induce EDALAT to enter into an effective Consulting Agreement, to induce Sentar to continue to agree to enter into an effective License Agreement, MANN also represented to EDALAT and Sentar that ALTERNATE HEALTH was going to enter into a "lab" deal with another company that would be a "1 Billion dollar contract":



In truth, ALTERNATE HEALTH was not about to sign a lab deal worth $1 Billion.

28.   On August 26, 2016, Sentar shipped CBD tablets to Dr. Riello (an agent for ALTERNATE HEALTH) to begin the Zika Virus study. The full product specs were sent August 30, 2016.  Following a request by a shareholder, Amir Asvadi, on

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

September 6, 2016, the parties agreed to have a phone call every Tuesday at 1:30 p.m. to move this project forward and to solve the lack of communication problems. EDALAT developed a CBD kit around this time and started discussions of the same.

29.    On September 14, 2016, MANN and MURPHY misrepresented to EDALAT that they had access to 1,000 dispensaries for immediate sales of Licensed Products.  In truth, MANN and MURPHY did not have "access" to anywhere near 1,000 dispensaries.

30.    On September 15, 2016, EDALAT and Sentar still did not have any of the ALTERNATE HEALTH details they needed for the project, raw material had not been provided, and sales were still being promised.  The following emails show that Sentar and EDALAT were doing everything they could to complete a Licensed Product, even going as far as to undertake the marketing and label design, even though these tasks were to be ALTERNATE HEALTH'S responsibility under the agreements.  There was no meaningful response to these emails on September 23, 2016 and October 4, 2016 to meet.

31.    On or about September 24, 2016, Sentar sent all of the additional information to Dr. Riello for the Zika Virus study.   On September 27, 2016, a production date and marketing plan for sublingual pills and patches for the 1,000 dispensaries was requested in addition to other needs.  EDALAT and Sentar continued to perform all of ALTERNATE HEALTH'S marketing and package design, which were approved by MANN as shown below.  The label approved by MANN was an RX product at ALTERNATE HEALTH's request (not "nutraceuticals").  EDALAT and SENTAR worked with ALTERNATE HEALTH's legal team to get the product ready for use.

32.    On September 30, 2016, MANN texted EDALAT and falsely represented to EDALAT that shares of ALTERNATE HEALTH had been appraised

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

by a Wall Street investment banker at $300 per share, and that the shares to be issued to EDALAT and Sentar were worth "over $600M ($600 million)."

33.    Based on these false and misleading representations, Sentar continued to agree to enter into a licensing agreement with ALTERNATE HEALTH in exchange for shares in the company in lieu of a cash payment, and EDALAT continued to provide consulting services for the development and refinement of the technology underlying the Licensed Products in exchange for shares in the company in lieu of a cash payment.

34.    However, MANN thereafter instructed the ALTERNATE HEALTH team to "pull back on the commercialization," of the non-pharma products, so that MANN and ALTERNATE HEALTH could "squeeze Paul and Sentar for more money from the deal."

35.    On January 9, 2017, Sentar entered into the License Agreement (attached as Exhibit B to the First Amended Complaint) with ALTERNATE HEALTH.  Sentar never promised nor represented that Sentar would manufacture, package and distribute sublingual tablets at the Gillette Facility.  The License Agreement reflects what the parties agreed to: solely the issuance by Sentar of a license for the use by ALTERNATE HEALTH of its patented technology.

36.    Also on January 9, 2017, EDALAT entered into the Consulting Agreement (attached as Exhibit A to the First Amended Complaint) with ALTERNATE HEALTH, which reflected not only future consulting services to be provided by EDALAT, but also consulting services already rendered to ALTERNATE HEALTH between May 2016 and January 9, 2017.  Pursuant to the Consulting Agreement, ALTERATE HEALTH issued to EDALAT a total of 2,118,506 shares of ALTERNATE HEALTH common stock (the "Consulting Shares").  These shares were to be duly authorized, validly issued, fully paid, non-assessable, and fully vested upon execution of the Consulting Agreement.

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

37.     On January 25, 2017, ALTERNATE HEALTH published a false and misleading press release wherein ALTERNATE HEALTH misrepresented the extent of the licensing agreement made with Sentar.  EDALAT immediately requested that the press release be revoked and corrected.  MANN responded via text advising EDALAT that he was "holding up $9MM of funding by not signing off on the press release" regarding the licensing deal between Sentar and ALTERNATE HEALTH.

38.     MANN, MURPHY and ALTERNATE HEALTH used the License Agreement to raise funds ($9 Million), and then diverted those funds elsewhere rather than commercializing the CBD product as they promised.  ALTERNATE HEALTH also engaged in other nefarious conduct.  EDALAT assisted ALTERNATE HEALTH to acquire a transdermal patch company, Medipatch.  ALTERNATE HEALTH never started paying the rent on the Gillette facility but had Medipatch move in.  Further, on March 8, 2017, Sentar provided all compliance documents (which Sentar had previously paid tens of thousands for) for the facility to help them get the facility licensed.

39.     In the past few months, Sentar and EDALAT have been working to provide ALTERNATE HEALTH with additional products, including a CBD kit concept and an already-finished product developed by EDALAT.  Sentar gave ALTERNATE HEALTH all of the design work, die cuts, packaging, and linked them up with Sentar's packaging team and in-house design team.  Sentar and EDALAT have performed above and beyond any of their obligations under the agreements. Sentar and EDALAT developed and created the sublingual CBD tablet for ALTERNATE HEALTH, the canine product, identified and attempted to help ALTERNATE HEALTH to set up manufacturing.  Sentar even pays the rent on the lab that ALTERNATE HEALTH used to raise money from investors.

40.     Prior to ALTERNATE HEALTH's most recent Board Meeting, Sentar delivered to ALTERNATE HEALTH with 24 hours' notice, all the samples of the

CBD products including the non-pharma product, the canine product and even the kits EDALAT had developed that were not yet an ALTERNATE HEALTH product. ALTERNATE HEALTH has been using Sentar's patents and the lab that Sentar has at the Gillette Facility in Irvine, California to raise money for their company and drive the stock value up, yet has not performed its contractual obligations.  To date, ALTERNATE HEALTH has no CBD product sales from the sublingual patent license.  Sentar has received no royalty payments to date from the license.

41.    ALTERNATE HEALTH has recently made statements that it plans to license Sentar's technology to third parties, for commercial use, in violation of its License Agreement with Sentar.  Any violations of Sentar's rights as to its technology, and any disclosure of confidential information regarding Sentar's technology could result in further legal action. ALTERNATE HEALTH does not have the rights to Sentar's technology beyond the scope of the licensing agreement.

42.    ALTERNATE HEALTH has named MURPHY as its CEO.  EDALAT has also learned that MURPHY is involved in ongoing insurance fraud civil litigation matters with Blue Cross and Aetna that has not been disclosed to Sentar or other shareholders including EDALAT.  Blue Cross & Blue Shield of Mississippi allege that they have received insurance claims of more than $33.8 million for laboratory services that were not performed at a hospital contracted by the insurer according to a suit filed in Mississippi federal court.  Blue Cross claims Mississippi-based Sharkey-Issaquena Community Hospital entered into a contract with laboratories Sun Clinical Laboratory LLC, Mission Toxicology LLC and its affiliates that allowed them to submit claims to Blue Cross using the hospital's name and billing information even though the services were performed independently of the hospital. "Beginning in February 2017 through the present, claims were and are being submitted to Blue Cross for payment for laboratory services purportedly performed at and by the hospital which were not ordered by a licensed physician or other licensed health professional

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

who has appropriate staff privileges at the hospital and which were not performed at the hospital in Rolling Fork, Mississippi," the complaint says.  Blue Cross says it has paid about $9.8 million of the more than $33.8 million total claims so far.

43.     EDALAT is informed and believes that MURPHY was the Manager of Sun Clinical Laboratories, LLC which is managed by Clover Tail Capital LLC, of which MURPHY is the managing member.  None of this information was ever disclosed to EDALAT or the other shareholders of the publicly traded ALTERNATE HEALTH.

44.     EDALAT also recently learned that on September 29, 2017 a new lawsuit was filed by Aetna, Inc. and Aetna Life Insurance Company ("Aetna") against MURPHY and his company Sun Clinical Laboratories, LLC, amongst several other defendants, alleging insurance fraud and RICO violations. This additional fraud litigation with Aetna in the jurisdiction of U.S. District Courts, Pennsylvania Eastern District (Case Number 2:17-cv-04354-BMS), along with the earlier fraud lawsuit with Blue Cross, have not been disclosed to Sentar, EDALAT or the other shareholders and is causing damage to the value of the AHC stock held by EDALAT.

45.     Further in an unlawful attempt to manipulate its own stock price, ALTERNATE HEALTH has refused to remove the restrictive legend from the certificate for the Consulting Shares and issue a certificate without a restrictive legend, even though the Consulting Shares are duly authorized, validly issued, fully paid, non-assessable, and fully vested, and all the conditions for the removal have been met.  By so doing, ALTERNATE HEALTH has wrongfully eliminated EDALAT's ability to sell, transfer, hypothecate, or otherwise dispose of the Consulting Shares (which were worth up to $5,000,000), thus artificially propping up its stock price while causing significant damages to EDALAT.  As a result of ALTERNATE HEALTH's refusal to remove the restrictive legend from the Consulting Shares certificates, EDALAT (and his designees) cannot sell the

Consulting Shares, notwithstanding their right to do so.  As a result, EDALAT (and his designees) have has suffered losses of up to $5,000,000.

## FIRST CAUSE OF ACTION

### Fraud in the Inducement

### (Against All Counterdefendants)

46.     EDALAT refers to and incorporates herein by reference each and every other paragraph of this counterclaim as though fully set forth herein.

47.     As more specifically alleged above, since in or around May 2016, COUNTERDEFENDANTS have continuously represented to Sentar and EDALAT that they were intending to utilize Sentar's patent license for its sublingual pill delivery system to use in ALTERNATE HEALTH's manufacture and distribution of CBD tablets for non-pharmaceutical use.  COUNTERDEFENDANTS further expressly represented they would "use its best efforts to bring Licensor Patent Rights to market through a thorough, vigorous and diligent program and to continue active, diligent marketing efforts."  Based on these representations and the representations set forth above, Sentar agreed to license its patented technology for its sublingual drug delivery system to ALTERNATE HEALTH.  In exchange for the license, Sentar received 850,000 shares of stock in ALTERNATE HEALTH and the promise of 10 years of royalty payments based upon sales of CBD tablets.   Based on these same representations, EDALAT agreed to enter into the Consulting Agreement with ALTERNATE HEALTH, attached to the Complaint as Exhibit "A."  Pursuant to that Agreement, in exchange for EDALAT's expertise, he received 2,118,506 duly authorized, validly issued, fully paid, non-assessable, and fully vested shares (the "Consulting Shares"), of which he currently owns 1,638,506 shares.

48.     EDALAT has performed his duties outlined in the Consulting Agreement beyond what was expected.  EDALAT helped develop the company ALTERNATE HEALTH.  EDALAT brought in investors and consultants to the

1   Board.  EDALAT was personally responsible for bringing in approximately

2   $500,000 in capital contributions to ALTERNATE HEALTH from EDALAT'S

3   connections.  EDALAT introduced knowledgeable business people to ALTERNATE

4   HEALTH as consultants.  EDALAT and his team assisted in developing a CBD

5   medical kit for ALTERNATE HEALTH.  EDALAT worked closely with the vice

6   president of sales for ALTERNATE HEALTH, Jade Green, spending 100s of hours

7   in this endeavor.

8        49.    COUNTERDEFENDANTS' representations were in fact false.

9   COUNTERDEFENDANTS had never intended to manufacture and distribute the

10  CBD pills, but instead utilized Sentar's patent license and EDALAT's expertise and

11  experience to entice investors to invest in ALTERNATE HEALTH.  ALTERNATE

12  HEALTH received investments and used these investments for expenses and

13  investments in other projects not involving the manufacture of CBD tablets.  MANN

14  also instructed the ALTERNATE HEALTH team to "pull back on the

15  commercialization," of the non-pharma products, so that COUNTERDEFENDANTS

16  could "squeeze Paul (Edalat) and Sentar for more money from the deal."

17       50.    Further, as set forth above, COUNTERDEFENDANTS provided

18  EDALAT and Sentar with numerous false and misleading financial projections

19  which had no reasonable basis in fact, and further made numerous false and

20  misleading projections regarding ALTERNATE HEALTH's projected stock price

21  and market capitalization, again with no reasonable basis in fact.

22       51.    EDALAT justifiably relied on COUNTERDEFENDANTS'

23  representations that they were intending to manufacture and distribute the CBD

24  tablets because it was already involved in the cannabis industry.  Once EDALAT

25  realized that COUNTERDEFENDANTS was not timely proceeding with its

26  obligations, EDALAT attempted to move the process forward by investing a

27  considerable amount of more effort into the process.  EDALAT has been damaged in

28

-40-

1  that he has wasted two years during his involvement with

2  COUNTERDEFENDANTS by providing COUNTERDEFENDANTS with millions

3  of dollars worth of consulting services for no compensation.

4       52.    In addition, COUNTERDEFENDANTS have refused to allow

5  EDALAT to sell his shares of AHC stock and has unreasonably refused to lift its

6  restrictions on the transfer of his shares of stock.  COUNTERDEFENDANTS'

7  actions have caused damage to EDALAT as the shares of stock have lost significant

8  value since he attempted to sell its shares.

9       53.    COUNTERDEFENDANTS acted with the intent to deprive EDALAT

10  of his legal rights and to injure it such that its actions constitute fraud, oppression or

11  malice within the meaning of California Civil Code section 3294.  Such conduct was

12  despicable, oppressive and outrageous, justifying the imposition of punitive and

13  exemplary damage against COUNTERDEFENDANTS to make an example of them

14  and to deter such conduct in the future.  EDALAT therefore requests punitive

15  damages against COUNTERDEFENDANTS in a sum that is appropriate.

16       54.    EDALAT further requests that the Court enter judgment ordering

17  COUNTERDEFENDANTS to remove the restrictions on the transfer of the shares of

18  ACH held by EDALAT.

19  ### SECOND CAUSE OF ACTION

20  **Fraud-Misrepresentation**

21  **(Against All Counterdefendants)**

22       55.    EDALAT refers to and incorporates herein by reference each and every

23  other paragraph of this complaint as though fully set forth herein.

24       56.    As more specifically alleged above, since in or around May 2016,

25  COUNTERDEFENDANTS have continuously represented to Sentar and EDALAT

26  that they were intending to utilize Sentar's patent license for its sublingual pill

27  delivery system to use in ALTERNATE HEALTH's manufacture and distribution of

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

1  CBD tablets for non-pharmaceutical use.  COUNTERDEFENDANTS further
2  expressly represented it would "use its best efforts to bring Licensor Patent Rights to
3  market through a thorough, vigorous and diligent program and to continue active,
4  diligent marketing efforts."  Based on these representations, Sentar agreed to license
5  its patented technology for its sublingual drug delivery system to ALTERNATE
6  HEALTH.  In exchange for the license, Sentar received 850,000 shares of stock in
7  ALTERNATE HEALTH and the promise of 10 years of royalty payments based
8  upon sales of CBD tablets.   Based on these same representations, EDALAT agreed
9  to enter into the Consulting Agreement with ALTERNATE HEALTH attached to the
10  Complaint as Exhibit "A."  Pursuant to that Agreement, in exchange for EDALAT's
11  expertise, he received shares of stock in AHC, of which he currently owns 1,638,506
12  shares.

13        57.    COUNTERDEFENDANTS's representations were in fact false.
14  COUNTERDEFENDANTS had never intended to manufacture and distribute the
15  CBD pills, but instead utilized Sentar's patent license and EDALAT's expertise and
16  experience to entice investors to invest in ALTERNATE HEALTH.
17  COUNTERDEFENDANTS received investments and used these investments for
18  expenses and investments in other projects not involving the manufacture of CBD
19  tablets.  MANN also instructed the ALTERNATE HEALTH team to "pull back on
20  the commercialization," of the non-pharma products, so that
21  COUNTERDEFENDANTS could "squeeze Paul (Edalat) and Sentar for more
22  money from the deal."

23        58.    EDALAT justifiably relied on COUNTERDEFENDANTS'
24  representations that they were intending to manufacture and distribute the CBD
25  tablets because it was already involved in the cannabis industry. Once EDALAT
26  realized that COUNTERDEFENDANTS were not timely proceeding with their
27  obligations, EDALAT attempted to move the process forward by investing a

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT

1    considerable amount of more effort into the process.  EDALAT has been damaged in

2    that he has wasted two years during his involvement with

3    COUNTERDEFENDANTS by providing COUNTERDEFENDANTS with millions

4    of dollars worth of consulting services for no compensation.   In addition,

5    COUNTERDEFENDANTS have refused to allow EDALAT to sell his shares of

6    AHC stock and has unreasonably refused to lift its restrictions on the transfer of his

7    shares of stock.  COUNTERDEFENDANTS' actions have caused damage to

8    EDALAT as the shares of stock have lost significant value since he attempted to sell

9    its shares.

10        59.    COUNTERDEFENDANTS acted with the intent to deprive EDALAT

11   of his legal rights and to injure it such that its actions constitute fraud, oppression or

12   malice within the meaning of California Civil Code section 3294.  Such conduct was

13   despicable, oppressive and outrageous, justifying the imposition of punitive and

14   exemplary damage against COUNTERDEFENDANTS to make an example of them

15   and to deter such conduct in the future.  EDALAT therefore requests punitive

16   damages against COUNTERDEFENDANTS in a sum that is appropriate.

17                           **THIRD CAUSE OF ACTION**

18                           **Negligent Misrepresentation**

19                           **(Against All Counterdefendants)**

20        60.    EDALAT refers to and incorporates herein by reference each and every

21   other paragraph of this complaint as though fully set forth herein.

22        61.    As more specifically alleged above, since in or around May 2016,

23   COUNTERDEFENDANTS have continuously represented to Sentar and EDALAT

24   that they were intending to utilize Sentar's patent license for its sublingual pill

25   delivery system to use in ALTERNATE HEALTH's manufacture and distribution of

26   CBD tablets for non-pharmaceutical use.  COUNTERDEFENDANTS further

27   expressly represented it would "use its best efforts to bring Licensor Patent Rights to

28

-43-

1  market through a thorough, vigorous and diligent program and to continue active,
2  diligent marketing efforts."  Based on these representations, Sentar agreed to license
3  its patented technology for its sublingual drug delivery system to ALTERNATE
4  HEALTH.  In exchange for the license, Sentar received 850,000 shares of stock in
5  ALTERNATE HEALTH and the promise of 10 years of royalty payments based
6  upon sales of CBD tablets.   Based on these same representations, EDALAT agreed
7  to enter into the Consulting Agreement with ALTERNATE HEALTH attached to the
8  Complaint as Exhibit "A."  Pursuant to that Agreement, in exchange for EDALAT's
9  expertise, he received shares of stock in AHC, of which he currently owns 1,638,506
10  shares.

11  62.  When COUNTERDEFENDANTS made the above-described
12  representations to EDALAT, they had no reasonable ground for believing that the
13  representations were true, and the COUNTERDEFENDANTS made the
14  representations with the intent to induce EDALAT to take the actions herein alleged.

15  63.  COUNTERDEFENDANTS had no reasonable belief they would
16  manufacture and distribute the CBD pills, but instead utilized Sentar's patent license
17  and EDALAT's expertise and experience to entice investors to invest in
18  ALTERNATE HEALTH.  COUNTERDEFENDANTS received investments and
19  used these investments for expenses and investments in other projects not involving
20  the manufacture of CBD tablets.  MANN also instructed the ALTERNATE
21  HEALTH team to "pull back on the commercialization," of the non-pharma
22  products, so that COUNTERDEFENDANTS could "squeeze Paul (Edalat) and
23  Sentar for more money from the deal."

24  64.  EDALAT justifiably relied on COUNTERDEFENDANTS'
25  representations that they were intending to manufacture and distribute the CBD
26  tablets because it was already involved in the cannabis industry.  Once EDALAT
27  realized that COUNTERDEFENDANTS were not timely proceeding with their
28

1    obligations, EDALAT attempted to move the process forward by investing a

2    considerable amount of more effort into the process.  EDALAT has been damaged in

3    that he has wasted two years during his involvement with ALTERNATE HEALTH.

4    In addition, COUNTERDEFENDANTS have refused to allow EDALAT to sell his

5    shares of AHC stock and has unreasonably refused to lift its restrictions on the

6    transfer of his shares of stock.

7         65.    As a direct and proximate result of the above-described

8    misrepresentations of fact on the part of COUNTERDEFENDANTS, EDALAT has

9    been damaged in a sum to be proven at trial.

10        66.    COUNTERDEFENDANTS acted with the intent to deprive EDALAT

11   of his legal rights and to injure it such that its actions constitute fraud, oppression or

12   malice within the meaning of California Civil Code section 3294.  Such conduct was

13   despicable, oppressive and outrageous, justifying the imposition of punitive and

14   exemplary damage against COUNTERDEFENDANTS to make an example of them

15   and to deter such conduct in the future.  EDALAT therefore requests punitive

16   damages against COUNTERDEFENDANTS in a sum that is appropriate.

17                    **FOURTH CAUSE OF ACTION**

18                        **Breach of Contract**

19             **(Against Counterdefendants AHUS and AHC)**

20        67.    EDALAT refers to and incorporates herein by reference each and every

21   other paragraph of this complaint as though fully set forth herein.

22        68.    Since in or around May 2016, COUNTERDEFENDANTS has

23   continuously represented to EDALAT and Sentar that it was intending to utilize

24   Sentar's patent license for its sublingual pill delivery system to use in ALTERNATE

25   HEALTH's manufacture and distribution of CBD tablets for non-pharmaceutical use.

26   Based on these representations, EDALAT expended considerable resources to assist

27   COUNTERDEFENDANTS towards the ultimate goal of manufacturing CBD tablets

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT

by using Sentar's license of its patented technology for its sublingual delivery system to ALTERNATE HEALTH.  On January 9, 2017, EDALAT entered into the Consulting Agreement (attached as Exhibit A to the Complaint) with ALTERNATE HEALTH.  EDALAT agreed to provide his expertise regarding sublingual delivery system technology to ALTERNATE HEALTH.  In exchange, EDALAT received 1,638,506 duly authorized, validly issued, fully paid, non-assessable, and fully vested shares of AHC stock (after EDALAT distributed a portion of his shares to third parties).

69.    EDALAT has performed his duties outlined in the Consulting Agreement beyond what was expected. EDALAT helped develop the company ALTERNATE HEALTH.  EDALAT brought in investors and consultants to the Board.  EDALAT was personally responsible for bringing in approximately $500,000 in capital contributions to ALTERNATE HEALTH from EDALAT'S connections.  EDALAT introduced knowledgeable business people to ALTERNATE HEALTH as consultants.  EDALAT and his team assisted in developing a CBD medical kit for ALTERNATE HEALTH.  EDALAT worked closely with the vice president of sales for ALTERNATE HEALTH, Jade Green, spending 100s of hours in this endeavor.

70.    ALTERNATE HEALTH has refused to remove the restrictive legend from the certificate for the Consulting Shares and issue a certificate without a restrictive legend, even though the Consulting Shares are duly authorized, validly issued, fully paid, non-assessable, and fully vested, and all the conditions for the removal have been met.  By so doing, ALTERNATE HEALTH has, in effect, failed to deliver the consideration called for under the Consulting Agreement by unilaterally and unlawfully eliminating EDALAT's ability to sell, transfer, hypothecate, or otherwise dispose of the Consulting Shares (which were worth up to $5,000,000), thus artificially propping up its stock price while causing significant

1    damages to EDALAT.  Further, as a result of ALTERNATE HEALTH's refusal to

2    remove the restrictive legend from the Consulting Shares certificates, ALTERNATE

3    HEALTH has breached the implied covenant of good faith and fair dealing implied

4    in every contract.

5          71.    As a result, EDALAT (and his designees) cannot sell the Consulting

6    Shares, notwithstanding their right to do so.  As a result, EDALAT (and his

7    designees) have suffered and will continue to suffer damages in an amount to be

8    proven at trial but which exceeds $75,000.

9                                **FIFTH CAUSE OF ACTION**

10                          **Refusal to Register Transfer of Securities**

11                             **(Against Counterdefendant AHC)**

12         72.     EDALAT refers to and incorporates herein by reference each and every

13   other paragraph of this complaint as though fully set forth herein.

14         73.    COUNTERDEFENDANT AHC is under a duty to register the transfer

15   of its securities if the statutory conditions of the Securities Transfer Act are met.

16         74.    EDALAT has met the statutory conditions of the Securities Transfer Act

17   for the transfer of his Consulting Shares, but COUNTERDEFENDANT AHC failed,

18   and has continued to fail, to register the transfer of EDALAT's Consulting Shares.

19         75.    Pursuant to the Securities Transfer Act, COUNTERDEFENDANT AHC

20   is liable to EDALAT for loss resulting from unreasonable delay in registration or

21   failure or refusal to register the transfer.

22         76.    As a direct and proximate result of COUNTERDEFENDANT AHC's

23   violation of the Securities Transfer Act, EDALAT has suffered and will continue to

24   suffer damages in an amount to be proven at trial but which exceeds $75,000.

25

26

27

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH CAUSE OF ACTION

**Market Manipulation – Misrepresentation or Omission of Material Facts in**

**Violation of California Corporations Code §§ 25401 and 25501**

**(Against All Counterdefendants)**

77.   EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

78.   Corporation Code § 25401 provides as follows:

   "It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by, means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact, necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."

79.   Corporation Code § 25501 provides as follows:

   "Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission."

80.   In offering and selling securities in the State of California, COUNTERDEFENDANTS made untrue statements and/or misrepresentations of

-48-

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

1  material facts to EDALAT, as set forth above.

2      81.    The misstatements and omissions referred to herein were of "material

3  facts" within the meaning of section 25401.

4      82.    COUNTERDEFENDANTS made untrue statements and/or omitted to

5  disclose material facts in connection with the offer and sale of securities in violation

6  of section 25401 and, as such, are liable to EDALAT under section 25501.

7      83.    As a direct and proximate result of COUNTERDEFENDANTS' material

8  misrepresentations, EDALAT has suffered and will continue to suffer damages in an

9  amount to be proven at trial but which exceeds $75,000.

10                    **SEVENTH CAUSE OF ACTION**

11         **Market Manipulation – Violation of 15 U.S.C. §78i**

12                 **(Against All Counterdefendants)**

13     84.    EDALAT refers to and incorporates herein by reference each and every

14  other paragraph of this complaint as though fully set forth herein.

15     85.    COUNTERDEFENDANTS, directly and with scienter, in connection

16  with the purchase and sale of securities, by use of means or instrumentalities of

17  interstate commerce or by use of the mails, effected alone or with one or more other

18  persons a series of transactions for the purchase and/or sale of AHC common stock for

19  the purpose of pegging, fixing, or stabilizing the price of such security in

20  contravention of 15 U.S.C. §78i.

21     86.    COUNTERDEFENDANTS' misrepresentations, omissions, and

22  fraudulent scheme directly and proximately caused EDALAT to provide consulting

23  services to ALTERNATE HEALTH and accept the Consulting Shares in lieu of cash

24  in consideration for entering into the Consulting Agreement and providing the

25  consulting services.  As a direct and proximate result of COUNTERDEFENDANTS'

26  wrongful acts, EDALAT has suffered and will continue to suffer damages in an

27  amount to be proven at trial but which exceeds $75,000.

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

87.     COUNTERDEFENDANTS' repeatedly failed to remove the restrictive legend from the Consulting Shares despite requests from EDALAT, in an illegal attempt to artificially inflate the price of AHC common stock.

88.     As a direct and proximate result of COUNTERDEFENDANTS' wrongful acts, EDALAT has suffered and will continue to suffer damages in an amount to be proven at trial but which exceeds $75,000.

89.     COUNTERDEFENDANTS' acts, practices, and courses of conduct were performed intentionally, knowingly, deceitfully, and fraudulently, with reckless indifference toward, and a disregard of, the rights of EDALAT, with the intention on their part of depriving EDALAT of property and legal rights and otherwise causing injury.  Such misconduct was and is despicable and fraudulent conduct that has subjected EDALAT to unjust hardship, entitling EDALAT to exemplary and punitive damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF 15 U.S.C. §77q(a), 15 U.S.C. §78j(b),

## AND 17 C.F.R. §240.10b-5

### (Against All Counterdefendants)

90.     EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

91.     As described above, COUNTERDEFENDANTS, directly and indirectly with scienter, in connection with the purchase and sale of securities, by use of any means or instrumentalities of interstate commerce or by use of the mails, has employed a device, scheme, or artifice to defraud, has made untrue statements of material facts or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and has engaged in one or more acts, practices, or courses of business which have operated as a fraud or deceit upon EDALAT.

92.     COUNTERDEFENDANTS' misrepresentations, omissions, and fraudulent scheme directly and proximately caused EDALAT to provide the consulting services to ALTERNATE HEALTH and accept the Consulting Shares in lieu of cash in consideration for entering into the Consulting Agreement and providing the consulting services.  As a direct and proximate result of COUNTERDEFENDANTS' wrongful acts, EDALAT has suffered and will continue to suffer damages in an amount to be proven at trial but which exceeds $75,000.

93.     Cross-Defendant's acts, practices, and courses of conduct were performed intentionally, knowingly, deceitfully, and fraudulently, with reckless indifference toward, and a disregard of, the rights of EDALAT, with the intention on their part of depriving EDALAT of property and legal rights and otherwise causing injury.  Such misconduct was and is despicable and fraudulent conduct that has subjected EDALAT to unjust hardship, entitling EDALAT to exemplary and punitive damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## VIOLATION OF §10(B) OF THE 1934 ACT AND RULE 10B-5

### (Against All Counterdefendants)

94.      EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

95.     COUNTERDEFENDANTS disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

96.     COUNTERDEFENDANTS violated §10(b) of the 1934 Act and Rule 10b-5 in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order

1  to make the statements made, in light of the circumstances under which they were

2  made, not misleading; or (c) engaged in acts, practices, and a course of business that

3  operated as a fraud or deceit up on EDALAT in connection with EDALAT's

4  acquisition of AHC common stock.

5      97.    EDALAT has suffered damages in that, in reliance on the integrity of the

6  market, he accepted AHC common stock at artificially inflated prices.  EDALAT

7  would not have accepted AHC common stock at the price at which it was valued, or at

8  all, if he had been aware that the market price had been artificially and falsely inflated

9  by COUNTERDEFENDANTS' misleading statements.

10     98.    COUNTERDEFENDANTS' acts, practices, and courses of conduct were

11  performed intentionally, knowingly, deceitfully, and fraudulently, with reckless

12  indifference toward, and a disregard of, the rights of EDALAT, with the intention on

13  their part of depriving EDALAT of property and legal rights and otherwise causing

14  injury.  Such misconduct was and is despicable and fraudulent conduct that has

15  subjected EDALAT to unjust hardship, entitling EDALAT to exemplary and punitive

16  damages in an amount to be determined at trial.

17  **TENTH CAUSE OF ACTION**

18  **UNFAIR BUSINESS PRACTICES**

19  **(Against All Counterdefendants)**

20     99.    EDALAT refers to and incorporates herein by reference each and every

21  other paragraph of this complaint as though fully set forth herein.

22     100.   By the foregoing acts, COUNTERDEFENDANTS, and each of them, in

23  the course of their business, engaged in acts and practices that constitute unlawful,

24  unfair, and fraudulent business practices as prohibited by California Business and

25  Professions Code 17200 et. seq.

26     101.   COUNTERDEFENDANTS' unfair competition and unlawful business

27  practices present a continuing threat to EDALAT and members of the general public

28

1 | insofar as COUNTERDEFENDANTS threaten to continue their pattern of misconduct
2 | as described herein.

3 |     102.   Pursuant thereto, EDALAT is entitled to a restitution order against
4 | COUNTERDEFENDANTS, and each of them, for the return of all property obtained
5 | by them by means of their unlawful, unfair, and fraudulent business practices as
6 | described herein to EDALAT.

7 |     103.   Furthermore, EDALAT seeks and requests that the Court issue an
8 | injunction against COUNTERDEFENDANTS, and each of them, as may be necessary
9 | to restore to EDALAT any money or property, real or personal, which
10 | COUNTERDEFENDANTS have acquired by means of their unlawful, unfair, and
11 | fraudulent business practices as described herein.

12 |     104.  COUNTERDEFENDANTS' acts, practices, and course of business were
13 | performed intentionally, knowingly, fraudulently, and with reckless indifference
14 | toward, and a disregard of, the rights of EDALAT, entitled EDALAT to an award of
15 | actual and punitive damages in an amount to be determined at trial.

16 | <div align="center">**ELEVENTH CAUSE OF ACTION**</div>
17 | <div align="center">**Conversion**</div>
18 | <div align="center">**(Against All Counterdefendants)**</div>

19 |     105.   EDALAT refers to and incorporates herein by reference each and every
20 | other paragraph of this complaint as though fully set forth herein.

21 |     106.   ALTERNATE HEALTH has refused (and Counterdefendants have
22 | caused ALTERNATE HEALTH to refuse) to remove the restrictive legend from the
23 | certificate for the Consulting Shares and issue a certificate without a restrictive
24 | legend, even though the Consulting Shares are duly authorized, validly issued, fully
25 | paid, non-assessable, and fully vested, and all the conditions for the removal have
26 | been met.  By so doing, COUNTERDEFENDANTS have wrongfully exerted
27 | dominion over EDALAT's property, in denial of, and inconsistent with EDALAT's

28 |

1   rights therein and in exclusion of and/or defiance to EDALAT's rights.

2   COUNTERDEFENDANTS have exercised such dominion without EDALAT's

3   authority or consent and in disregard, violation, and denial of EDALAT's rights as a

4   stockholder of AHC.  By the foregoing acts, COUNTERDEFENDANTS have

5   converted EDALAT's property to their own ownership, possession, custody, or

6   control, and for their use and enjoyment.

7          107.   By these acts, COUNTERDEFENDANTS have acquired title to or

8   possession of EDALAT's property, with actual and/or constructive knowledge that

9   such acquisition was the result of malfeasance, inequitable coercion, and improper and

10  impermissible conduct.  Any property held by COUNTERDEFENDANTS as a result

11  is held unfairly and was obtained by such malfeasance, inequitable coercion, and/or

12  other unconscionable conduct and in violation of EDALAT's rights.  Accordingly,

13  COUNTERDEFENDANTS have been unjustly enriched and are under an equitable

14  duty to convey such property deemed to be held in constructive trust for EDALAT,

15  and EDALAT is entitled to a judgment accordingly.

16         108.   COUNTERDEFENDANTS' acts, practices, and course of business were

17  performed intentionally, knowingly, fraudulently, and with reckless indifference

18  toward, and a disregard of, the rights of EDALAT, entitled EDALAT to an award of

19  actual and punitive damages in an amount to be determined at trial.

20  <div align="center">**TWELFTH CAUSE OF ACTION**</div>

21  <div align="center">**Declaratory Relief**</div>

22  <div align="center">**(Against Counterdefendants AHUS and AHC)**</div>

23         109.   EDALAT refers to and incorporates herein by reference each and every

24  other paragraph of this complaint as though fully set forth herein.

25         110.   COUNTERDEFENDANTS have refused to allow EDALAT to sell his

26  1,638,506 shares of AHC stock and have unreasonably refused to lift its restrictions

27  on the transfer of EDALAT's shares of stock.  There is no legal or contractual basis

28

1   to have stock transfer restrictions on EDALAT's shares as AHC's shares are now

2   public.  COUNTERDEFENDANTS' actions have caused damage to EDALAT as the

3   shares of stock have lost significant value since EDALAT attempted to sell his

4   shares.

5        111.   EDALAT requests the judgment include an order and/or finding that

6   COUNTERDEFENDANTS shall remove any restrictions on the transfer of

7   EDALAT's Consulting Shares.

8        **WHEREFORE,** Counterclaimant EDALAT prays for judgment as follows:

9        1.    A judgment of preliminary and permanent injunction ordering AHC to

10  remove the restrictive legend from the certificate for the Consulting Shares and issue a

11  certificate without a restrictive legend;

12       2.    A judgment that the Consulting Shares are being held by

13  COUNTERDEFENDANTS in constructive trust for EDALAT and his designees and

14  that COUNTERDEFENDANTS are under an equitable duty to return and convey

15  such property to EDALAT and his designees by removing the restrictive legend from

16  the certificate for the Consulting Shares and issue a certificate without a restrictive

17  legend;

18       3.    A judgment of preliminary and permanent injunction against

19  COUNTERDEFENDANTS' taking any action to suspend or otherwise thwart

20  EDALAT (or his designees) from selling, transferring, hypothecating, or otherwise

21  disposing of the Consulting Shares in the future;

22       4.    For special and general damages according to proof;

23       5.    For compensatory damages, including loss of profits, royalties,

24  promotional opportunities, benefits and other opportunities of employment, according

25  to proof;

26       6.    For exemplary or punitive damages in an amount according to proof;

27       7.    For an award of interest, including pre-judgment interest, at the legal

28

rate;

8.      For an award of attorney's fees;

9.      For costs of suit incurred herein; and

10.     For such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Counterclaimant Paul Edalat hereby demands trial of this action by jury.

DATED:      January 3, 2018          INDEGLIA & CARNEY LLP

                                    By:   */ s / Marc A. Indeglia*
                                          Marc A. Indeglia
                                          Attorneys for Defendant,
                                          PAUL EDALAT

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT was served on counsel of record in accordance with the Federal Rule of Civil Procedure on this 3rd day of January, 2018, via this Court's ECF System and via U.S. Mail on January 3, 2018 on the following:

Fred G. Bennett, Esq.
Robert J. Becher, Esq.
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

*Attorneys for Plaintiffs and Crossdefendants Alternate Health USA Inc. and Alternate Health Corp.*

*(Served via this Court's ECF System Only)*

I am readily familiar with Indeglia & Carney LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service and Overnight Delivery Service. That practice includes the deposit of all correspondence with the United States Postal Service and/or Overnight Delivery Service the same day it is collected and processed.

I declare under perjury under the laws of the State of California that the forgoing is true and correct.

Executed on January 3, 2018 at Los Angeles, California.

*/s/ Marc A. Indeglia*