MARC A. INDEGLIA (SBN 180635)
*marc@indegliacarney.com*
INDEGLIA & CARNEY LLP
11900 W. Olympic Blvd, Suite 770
Los Angeles, CA 90064
Telephone:  (310) 982-2720
Facsimile:   (310) 982-2719

Attorneys for Defendant and Counterclaimant,
PAUL EDALAT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| Alternative Health USA Inc., and Alternate Health Corp.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Paul Edalat,<br><br>                    Defendant. | Case No. 8:17-cv-01887-CJC (JDEx)<br><br>Assigned to the Honorable Cormac J. Carney<br><br>**ANSWER OF DEFENDANT PAUL EDALAT TO FIRST AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIM OF PAUL EDALAT FOR:** |
| Paul Edalat,<br><br>                    Counterclaimant<br><br>        v.<br><br>Alternative Health USA Inc., Alternate Health Corp., Howard Mann, Michael L. Murphy, M.D, and Computershare Investor Services, Inc.,<br><br>                    Counterdefendants. | 1. **FRAUD**<br>2. **NEGLIGENT MISREPRESENTATION**<br>3. **BREACH OF CONTRACT**<br>4. **REFUSAL TO REGISTER TRANSFER OF SECURITIES**<br>5. **CONVERSION**<br>6. **DECLARATORY RELIEF**<br><br>     **JURY TRIAL DEMANDED** |

1    Pursuant to Fed. R. Civ. Proc. 8, Defendant PAUL EDALAT ("Defendant")

2    hereby responds to the allegations in the First Amended Complaint filed by Plaintiffs

3    ALTERNATE HEALTH USA INC. and ALTERNATE HEALTH CORP. (together

4    "Plaintiffs") as follows:

5                                    **INTRODUCTION**

6        1.    This paragraph consists of legal conclusions, as to which no response is

7    required.  To the extent any response is required, Defendant denies these allegations.

8        2.    Defendant is without sufficient knowledge or information to form a belief

9    as to the truth of these allegations and, on that basis, denies each and every allegation

10   contained therein.

11       3.    Defendant admits the first sentence of this paragraph.  Defendant denies

12   the remaining allegations of this paragraph.

13       4.    Defendant denies the allegations of this paragraph.

14       5.    Defendant denies the allegations of this paragraph.

15       6.    Defendant denies the allegations of this paragraph.

16       7.    Defendant admits the last sentence of this paragraph.  Defendant denies

17   the remaining allegations of this paragraph.

18       8.    Defendant is without sufficient knowledge or information to form a belief

19   as to the truth of these allegations and, on that basis, denies each and every allegation

20   contained therein.

21                                   **THE PARTIES**

22       9.    Defendant is without sufficient knowledge or information to form a belief

23   as to the truth of these allegations and, on that basis, denies each and every allegation

24   contained therein.

25       10.   Defendant is without sufficient knowledge or information to form a belief

26   as to the truth of these allegations and, on that basis, denies each and every allegation

27   contained therein.

28
ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

11.     Defendant admits the allegations of this paragraph.

## JURISDICTION AND VENUE

12.     Defendant admits the allegations of the fourth sentence of this paragraph. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in the second and third sentences of this paragraph and, on that basis, denies each and every allegation contained therein.  The remainder of this paragraph consists of legal conclusions, as to which no response is required. To the extent any response is required, Defendant denies these allegations.

13.     This paragraph consists of legal conclusions, as to which no response is required. To the extent any response is required, Defendant denies these allegations.

## FACTS GIVING RISE TO THE DISPUTE

14.     Defendant denies the allegations of this paragraph.

15.     Defendant denies the allegations of this paragraph.

16.      Defendant admits the first sentence of this paragraph.  Defendant denies the remaining allegations of this paragraph.

17.     Defendant denies the allegations of this paragraph.

18.     Defendant denies the allegations of this paragraph.

19.     Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in the first sentence of this paragraph and, on that basis, denies each and every allegation contained therein.  Defendant admits the second sentence of this paragraph.  Defendant admits that, on or about May 20, 2016, Ms. Karpinski sent Mr. Mann an e-mail, with several attachments.  To the extent this paragraph purports to describe any attachments to the e-mail, such documents speak for themselves and no response is required.  To the extent any response is required, Defendant denies these allegations.  Defendant denies the remainder of the allegations of this paragraph.

-3-

20.     Defendant admits that, on or about May 20, 2016, Ms. Karpinski sent Mr. Mann an e-mail, with several attachments.  To the extent this paragraph purports to describe any attachments to the e-mail, such documents speak for themselves and no response is required.  To the extent any response is required, Defendant denies these allegations.  Defendant denies the remainder of the allegations of this paragraph.

21.     Defendant denies the allegations of this paragraph.

22.     Defendant denies the allegations of this paragraph.

23.     Defendant denies the allegations of this paragraph.

24.     Defendant denies the allegations of this paragraph.

25.     Defendant admits that Exhibit A appears to be an Agreement for ConsultingServices (sic) by and among Plaintiffs and Defendant.  Defendant admits that Exhibit B appears to be a License Agreement for Sublingual Delivery System by and among Plaintiffs and EFT Global Holdings, d.b.a. Sentar Pharmaceuticals.  Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies each and every allegation contained therein.

26.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

27.     Defendant denies the allegations of this paragraph.

## THE CONSULTING AGREEMENT

28.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

29.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

30.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

31.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

32.     Defendant admits the allegations of this paragraph.

33.     Defendant admits the allegations of this paragraph.

34.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

## THE SUBLINGUAL LICENSE AGREEMENT

35.     Defendant admits the allegations of this paragraph.

36.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

37.     This paragraph purports to describe the "Consulting Agreement," which is a document that speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.

38.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

39.     Defendant denies the allegations of this paragraph.

## THE MANUFACTURING AGREEMENT

40.     Defendant denies the allegations of this paragraph.

41.     This paragraph purports to describe the purported "Manufacturing Agreement," which is a document that speaks for itself and no response is required. To the extent any response is required, Defendant denies these allegations.

42.     Defendant denies the allegations of this paragraph.

### ALTERNATE HEALTH DISCOVERS EDALAT'S DECEIT

43.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

44.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

45.     To the extent this paragraph purports to describe a complaint filed by the FDA, such document speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.  Defendant denies the remainder of the allegations of this paragraph.

46.     To the extent this paragraph purports to describe a consent decree, such document speaks for itself and no response is required.  To the extent any response is required, Defendant denies these allegations.  Defendant denies the remainder of the allegations of this paragraph.

47.     Defendant denies the allegations of this paragraph.

48.     Defendant is without sufficient knowledge or information to form a belief as to the truth of these allegations and, on that basis, denies each and every allegation contained therein.

### FIRST CAUSE OF ACTION:  FRAUD IN THE INDUCEMENT

49.     Defendant incorporates by reference, as though fully set forth herein, the responses set forth above.

50.     Defendant denies the allegations of this paragraph.

1    51.    Defendant denies the allegations of this paragraph.

2    52.    Defendant denies the allegations of this paragraph.

3    53.    Defendant denies the allegations of this paragraph.

4    54.    Defendant denies the allegations of this paragraph.

5    55.    Defendant is without sufficient knowledge or information to form a belief

6    as to the truth of these allegations and, on that basis, denies each and every allegation

7    contained therein.

8    56.    Defendant is without sufficient knowledge or information to form a belief

9    as to the truth of these allegations and, on that basis, denies each and every allegation

10   contained therein.

11   57.    Defendant denies the allegations of this paragraph.

12   58.    Defendant denies the allegations of this paragraph.

13   59.    Defendant denies the allegations of this paragraph.

14   **SECOND CAUSE OF ACTION:  FRAUD – MISREPRESENTATION,**

15   **CONCEALMENT, AND NONDISCLOSURE**

16   60.    Defendant incorporates by reference, as though fully set forth herein, the

17   responses set forth above.

18   61.    Defendant denies the allegations of this paragraph.

19   62.    Defendant denies the allegations of this paragraph.

20   63.    Defendant denies the allegations of this paragraph.

21   64.    Defendant denies the allegations of this paragraph.

22   65.    Defendant denies the allegations of this paragraph.

23   66.    Defendant is without sufficient knowledge or information to form a belief

24   as to the truth of these allegations and, on that basis, denies each and every allegation

25   contained therein.

26   67.    Defendant denies the allegations of this paragraph.

27   68.    Defendant denies the allegations of this paragraph.

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

1   **THIRD CAUSE OF ACTION:  NEGLIGENT MISREPRESENTATION**

2   69.    Defendant incorporates by reference, as though fully set forth herein, the

3   responses set forth above.

4   70.    Defendant denies the allegations of this paragraph.

5   71.    Defendant denies the allegations of this paragraph.

6   72.    Defendant denies the allegations of this paragraph.

7   73.    Defendant denies the allegations of this paragraph.

8   74.    Defendant is without sufficient knowledge or information to form a belief

9   as to the truth of these allegations and, on that basis, denies each and every allegation

10  contained therein.

11  75.    Defendant denies the allegations of this paragraph.

12  76.    Defendant denies the allegations of this paragraph.

13  **FOURTH CAUSE OF ACTION:  RESTITUTION FOR RESCISSION OF**

14  **CONTRACT BASED ON FRAUD**

15  77.    Defendant incorporates by reference, as though fully set forth herein, the

16  responses set forth above.

17  78.    Defendant is without sufficient knowledge or information to form a belief

18  as to the truth of these allegations and, on that basis, denies each and every allegation

19  contained therein.

20  79.    Defendant denies the allegations of this paragraph.

21  80.    Defendant denies the allegations of this paragraph.

22  81.    Defendant denies the allegations of this paragraph.

23  82.    Defendant denies the allegations of this paragraph.

24  83.    Defendant denies the allegations of this paragraph.

25  84.    Defendant is without sufficient knowledge or information to form a belief

26  as to the truth of these allegations and, on that basis, denies each and every allegation

27  contained therein.

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

1      85.     Defendant denies the allegations of this paragraph.

2      86.     Defendant is without sufficient knowledge or information to form a belief

3 as to the truth of these allegations and, on that basis, denies each and every allegation

4 contained therein.

5      87.     Defendant denies the allegations of this paragraph.

6      88.     Defendant denies the allegations of this paragraph.

7     **FIFTH CAUSE OF ACTION:  RESTITUTION FOR RESCISSION OF**

8     **CONTRACT BASED ON NEGLIGENT MISREPRESENTATION**

9      89.     Defendant incorporates by reference, as though fully set forth herein, the

10 responses set forth above.

11     90.     Defendant is without sufficient knowledge or information to form a belief

12 as to the truth of these allegations and, on that basis, denies each and every allegation

13 contained therein.

14     91.     Defendant denies the allegations of this paragraph.

15     92.     Defendant denies the allegations of this paragraph.

16     93.     Defendant denies the allegations of this paragraph.

17     94.     Defendant denies the allegations of this paragraph.

18     95.     Defendant is without sufficient knowledge or information to form a belief

19 as to the truth of these allegations and, on that basis, denies each and every allegation

20 contained therein.

21     96.     Defendant denies the allegations of this paragraph.

22     97.     Defendant denies the allegations of this paragraph.

23     98.     Defendant is without sufficient knowledge or information to form a belief

24 as to the truth of these allegations and, on that basis, denies each and every allegation

25 contained therein.

26     99.     Defendant denies the allegations of this paragraph.

27 ///

28

**REQUEST FOR RELIEF**

Defendant expressly denies that Plaintiffs are entitled to any of the relief sought, on any cause of action, in the request for relief in the First Amended Complaint.

**AFFIRMATIVE DEFENSES**

As separate and distinct affirmative defenses to the First Amended Complaint and the purported claims for relief therein, Defendant alleges the following.  All such affirmative defenses are pled in the alternative and do not constitute any admission of liability or that the Plaintiffs are entitled to any relief.

First Affirmative Defense

(Failure to State a Claim)

Neither the First Amended Complaint, nor any purported cause of action asserted therein, states facts sufficient to constitute a claim against this answering Defendant.

Second Affirmative Defense

(Actions Not Unlawful)

Plaintiffs' claims are barred, in whole or in part, because Defendant's actions that Plaintiffs allege were not unlawful.

Third Affirmative Defense

(Actions Not Fraudulent, Deceptive or Likely to Mislead)

Plaintiffs' claims are barred, in whole or in part, because Defendant's actions that Plaintiffs allege were not fraudulent, deceptive, or likely to mislead.

Fourth Affirmative Defense

(Statute of Limitations)

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations.

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

<div align="center">Fifth Affirmative Defense</div>

<div align="center">(Standing)</div>

Plaintiffs' claims are barred, in whole or in part, by lack of standing.

<div align="center">Sixth Affirmative Defense</div>

<div align="center">(*Res Judicata*, Issue Preclusion and/or Claim Preclusion)</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrines of *res judicata*, issue preclusion, and/or claim preclusion.

<div align="center">Seventh Affirmative Defense</div>

<div align="center">(No Authorization)</div>

Plaintiffs' claims are barred, in whole or in part, because Defendant did not authorize, ratify, encourage, participate in, aid, or abet any of the misconduct Plaintiffs allege.

<div align="center">Eighth Affirmative Defense</div>

<div align="center">(No Proximate Cause – Third Parties/Contribution and Indemnification)</div>

Under the principles of contribution and indemnity, third parties, by their acts and conduct, proximately caused or contributed to the alleged injury, damage, or detriment, if any, Plaintiffs may have sustained or will sustain.

<div align="center">Ninth Affirmative Defense</div>

<div align="center">(Intervening/Superseding Cause)</div>

Any alleged harm to Plaintiffs was caused and/or brought about by intervening and superseding causes and was not caused by Defendant or any person or entity, if any, for whom or which it was responsible.

<div align="center">Tenth Affirmative Defense</div>

<div align="center">(Waiver)</div>

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

///

///

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

<u>Eleventh Affirmative Defense</u>

(Estoppel)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

<u>Twelfth Affirmative Defense</u>

(Laches)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

<u>Thirteenth Affirmative Defense</u>

(Unclean Hands and Related Equitable Principles)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands and related equitable principles.

<u>Fourteenth Affirmative Defense</u>

(Good Faith)

Plaintiffs' claims are barred, in whole or in part, because Defendant at all times acted in good faith and did not directly or indirectly perform any act whatsoever that would constitute a violation of any right of Plaintiff.

<u>Fifteenth Affirmative Defense</u>

(Failure to Mitigate)

Plaintiffs' claims are barred, in whole or in part, or alternatively their recovery should be limited, to the extent Plaintiffs failed to take action to mitigate their damages, if any.

<u>Sixteenth Affirmative Defense</u>

(Uncertainty/ Speculative Damages)

Plaintiffs' claims are barred, in whole or in part, because the Complaint and each claim for relief asserted therein, and the damages sought, if any, are speculative and/or uncertain, and therefore, not compensable.

///

///

1

<div align="center">

Seventeenth Affirmative Defense

</div>

2

<div align="center">

(Accord and Satisfaction)

</div>

3   Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and

4   satisfaction.

5

<div align="center">

Eighteenth Affirmative Defense

</div>

6

<div align="center">

(No Causation)

</div>

7   Plaintiffs' claims are barred, in whole or in part, because Defendant was not the

8   cause in fact or the proximate cause of any losses alleged by Plaintiffs.

9

<div align="center">

Nineteenth Affirmative Defense

</div>

10

<div align="center">

(Failure to Plead with Particularity)

</div>

11   Plaintiffs' claims are barred, in whole or in part, because the Complaint fails to

12   plead fraud with particularity.

13

<div align="center">

Twentieth Affirmative Defense

</div>

14

<div align="center">

(Ratification)

</div>

15   Plaintiffs' claims are barred, in whole or in part, because their conduct

16   constitutes ratification.

17

<div align="center">

Twenty-First Affirmative Defense

</div>

18

<div align="center">

(Breach of Contract)

</div>

19   Plaintiffs' claims are barred because Plaintiffs' conduct regarding their duties

20   under the agreements constituted a breach of those agreements, and such a breach

21   either bars or proportionately reduces any potential recovery by Plaintiffs, and/or

22   entitles Defendant to recover any damages it has incurred as a result of Plaintiffs'

23   breach.

24   ///

25   ///

26   ///

27   ///

28

1

### Twenty-Second Affirmative Defense

2

### (Excused Performance)

3   Plaintiffs' claims are barred because any obligation of Defendant pursuant to

4   the terms of any agreement is excused due to Plaintiffs' misconduct, breach of said

5   agreement(s), and failure to perform.

6

### Twenty-Third Affirmative Defense

7

### (Conditions Precedent)

8   Plaintiffs' claims are barred because any obligation of Defendant pursuant to

9   the terms of any agreement are excused since conditions precedent to performance

10   have not been met.

11

### Twenty-Fourth Affirmative Defense

12

### (Failure of Performance)

13   Plaintiffs' claims are barred in whole or in part as a result of their own failure to

14   perform.

15

### Twenty-Fifth Affirmative Defense

16

### (Prevention and Frustration)

17   Plaintiffs' claims are barred because Defendant was ready, willing, and able to

18   perform under any and all agreements, and Plaintiffs prevented and frustrated such

19   performance.

20

### Twenty-Sixth Affirmative Defense

21

### (Failure to Cooperate)

22   Plaintiffs' claims are barred because their conduct regarding the duty to

23   cooperate constituted a breach of said duty resulting in prejudice to Defendant, and

24   such failure to cooperate either bars or proportionately reduces any potential recovery

25   by Plaintiffs, and/or entitles Defendant to recover any damages he has incurred as a

26   result of Plaintiffs' breach.

27   ///

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

<div align="center">Twenty-Seventh Affirmative Defense</div>

<div align="center">(Performance of Obligation)</div>

Plaintiffs' claims are barred, in whole or in part, because Defendant discharged each and every obligation, if any, that he may have owed to Plaintiffs, and Defendant otherwise owed no duty to Plaintiffs.

<div align="center">Twenty-Eighth Affirmative Defense</div>

<div align="center">(Set-Off)</div>

Plaintiffs' claims are barred because they are subject to set-off of all sums due and owing from Plaintiffs to Defendant pursuant to valid claims by Defendant against Plaintiffs.

<div align="center">Twenty-Ninth Affirmative Defense</div>

<div align="center">(Lack of Consideration and/or Performance)</div>

Plaintiffs' claims are barred, in whole or in part, for lack of consideration and/or performance.

<div align="center">Thirtieth Affirmative Defense</div>

<div align="center">(Fraud)</div>

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs, either independently or in concern with others, committed fraud in connection with their performances under the agreements.

<div align="center">Thirty-First Affirmative Defense</div>

<div align="center">(Failure to Plead Fraud with Particularity)</div>

Plaintiffs' claims are barred, in whole or in part, because the First Amended Complaint fails to plead fraud with particularity.

///

///

///

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

1

<u>Thirty-Second Affirmative Defense</u>

2

(Lack of Irreparable Harm)

3

Plaintiffs' claims for injunctive relief are barred because Plaintiff cannot show

4

that it will suffer any irreparable harm from Defendant's actions.

5

<u>Thirty-Third Affirmative Defense</u>

6

(Adequacy of Remedy at Law)

7

The alleged injury or damage suffered by Plaintiffs, if any, would be adequately

8

compensated by damages. Accordingly, Plaintiffs have a complete and adequate

9

remedy at law and are not entitled to seek equitable relief.

10

<u>Thirty-Fourth Affirmative Defense</u>

11

(First Amendment)

12

The claims made in the First Amended Complaint are barred, in whole or in

13

part, by the First Amendment to the Constitution of the United States.

14

<u>Thirty-Fifth Affirmative Defense</u>

15

(Duplicative Claims)

16

Without admitting that the First Amended Complaint states a claim, any

17

remedies are limited to the extent that there is sought an overlapping or duplicative

18

recovery pursuant to the various claims for any alleged single wrong.

19

<u>Thirty-Sixth Affirmative Defense</u>

20

(Uncertainty)

21

Plaintiffs' claims are barred, in whole or in part, because the First Amended

22

Complaint, and each claim for relief asserted therein, and the damages sought, are

23

uncertain.

24

///

25

///

26

///

27

///

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

<div align="center">Thirty-Seventh Affirmative Defense</div>

<div align="center">(Contribution and Indemnification)</div>

Under the principles of contribution and indemnity, persons other than Defendant may be wholly or partially responsible for the purported loss, injury, damage, or detriment, if any, Plaintiffs may have sustained or will sustain.

<div align="center">Thirty-Eighth Affirmative Defense</div>

<div align="center">(Intervening/Superseding Cause)</div>

Any alleged harm to Plaintiffs was caused and/or brought about by intervening and superseding causes and were not caused by Defendant or any person or entity, if any, for which they were responsible.

<div align="center">Thirty-Ninth Affirmative Defense</div>

<div align="center">(Bona Fide Error)</div>

Plaintiffs' claims are barred, in whole or in part, because, although Defendant denies each and every claim of Plaintiffs and deny that Defendant engaged in wrongdoing or error of any kind, any alleged error on Defendant's part was unintentional and resulted from bona fide error notwithstanding Defendant's use of reasonable procedures adopted to avoid any such error.

<div align="center">Fortieth Affirmative Defense</div>

<div align="center">(Comparative Fault)</div>

Defendant alleges that the injuries complained of and the damages sought by Plaintiffs were caused directly and proximately by Plaintiffs' own fault, acts or omissions.  In the event that Plaintiffs are found to have sustained and to be entitled to recovery of any damages, Defendant is liable only for that portion of any damages that correspond to his degree of fault or responsibility, if any, and not for the acts or omissions of Plaintiffs or other persons, whether individual, corporate, or otherwise, and whether named or unnamed in the First Amended Complaint.

///

1

<div align="center">

Forty-First Affirmative Defense

2

(Nonjoinder/Misjoinder of Potentially Responsible Parties)

</div>

3       Plaintiffs have misjoined, or failed to join, all the potentially responsible parties

4  necessary for the full and just adjudication of the alleged claims in the First Amended

5  Complaint, as mandated by Federal Rules of Civil Procedure 19(a) and 21, including,

6  without limitation, Howard Mann and Michael L. Murphy, M.D.

7

<div align="center">

Forty-Second Affirmative Defense

8

(Unjust Enrichment)

</div>

9       Plaintiffs' claims are barred, in whole or in part, because Plaintiffs would be

10 unjustly enriched if allowed to recover any sums claimed to be due under the First

11 Amended Complaint.

12

<div align="center">

Forty-Third Affirmative Defense

13

(Lack of Damages)

</div>

14      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs suffered no

15 damages as a result of the alleged wrongful conduct.

16

<div align="center">

Forty-Fourth Affirmative Defense

17

(In Pari Delicto)

</div>

18      Plaintiffs' claims are barred, in whole or in part, by the doctrine of in pari

19 delicto.

20

<div align="center">

Forty-Fifth Affirmative Defense

21

(Express or Implied Consent)

</div>

22      Each cause of action contained in the First Amended Complaint is barred by the

23 doctrine of express and/or implied consent.

24

<div align="center">

Forty-Sixth Affirmative Defense

25

(No Restitution or Disgorgement)

</div>

26      Plaintiffs are not entitled to restitution or disgorgement of profits.

27 ///

28

<div align="center">

-18-

</div>

1

<div align="center">Forty-Seventh Affirmative Defense</div>

2

<div align="center">(Quantum Meruit)</div>

3    Without admitting any wrongful conduct by Defendant, Defendant is entitled to

4  the value of the goods and services provided to Plaintiffs under the doctrine of

5  quantum meruit.

6

<div align="center">Forty-Eighth Affirmative Defense</div>

7

<div align="center">(Impossibility)</div>

8    Plaintiffs are barred and/or limited from recovering any damages or other relief

9  because any duty or obligation Defendant may have had to perform for the benefit of

10  Plaintiffs was rendered impossible to perform due to the conduct of Plaintiffs and their

11  agents.

12

<div align="center">Forty-Ninth Affirmative Defense</div>

13

<div align="center">(Failure of Condition)</div>

14    Plaintiffs are barred and/or limited from recovering any damages or other relief

15  because of a failure of the Plaintiffs, and/or the persons and/or entities acting on their

16  behalf, to perform all or any conditions, whether precedent, concurrent and/or

17  subsequent, covenants, and/or promises on their part to be performed as between the

18  parties herein.

19

<div align="center">Fiftieth Affirmative Defense</div>

20

<div align="center">(Statute of Frauds)</div>

21    The First Amended Complaint is barred by the Statute of Frauds.

22

<div align="center">Fifty-First Affirmative Defense</div>

23

<div align="center">(Lack of Good Faith and Fair Dealing)</div>

24    Plaintiffs failed to act in good faith and fair dealing in the performance and

25  enforcement of the contract.

26  ///

27  ///

28

<div align="center">-19-</div>

<div align="center">Fifty-Second Affirmative Defense</div>

<div align="center">(Failure to do Equity)</div>

No relief may be obtained under the complaint by reason of the Plaintiffs' failure to do equity in the matters alleged in the complaint filed herein.

<div align="center">Fifty-Third Affirmative Defense</div>

<div align="center">(No Justifiable Reliance)</div>

The First Amended Complaint and each cause of action therein are barred because Plaintiffs cannot establish that they relied or justifiably relied on any act or action by Defendant.

<div align="center">Fifty-Fourth Affirmative Defense</div>

<div align="center">(No Contract/No Mutual Assent)</div>

Defendant alleges that any agreement(s) recited by the Plaintiffs was not agreed to by Defendant, does not comport to the parties' mutual understanding regarding the terms of their relationship/agreement, and Defendant received no benefit from Plaintiffs.

<div align="center">Fifty-Fifth Affirmative Defense</div>

<div align="center">(Justification)</div>

The First Amended Complaint and each cause of action therein are barred because Defendant acted with justification at all times (Defendant denies he engaged in any actions to harm Plaintiffs).

<div align="center">Fifty-Sixth Affirmative Defense</div>

<div align="center">(Parol Evidence Rule)</div>

The First Amended Complaint and each cause of action therein are barred because Plaintiffs are seeking to improperly use parole evidence to modify the terms of the alleged agreements.

///

<div align="center">Fifty-Seventh Affirmative Defense</div>

<div align="center">(Impossibility)</div>

Plaintiffs are barred and/or limited from recovering any damages or other relief because any duty or obligation Defendant may have had to perform for the benefit of Plaintiffs was rendered impossible to perform due to the conduct of Plaintiffs and their agents.

<div align="center">Fifty-Eighth Affirmative Defense</div>

<div align="center">(Puffery)</div>

Plaintiffs are barred and/or limited from recovering any damages or other relief because any alleged misstatements or omissions of Defendant were mere puffery.

<div align="center">Fifty-Ninth Affirmative Defense</div>

<div align="center">(No Punitive Damages)</div>

Plaintiffs are not entitled to recover punitive or exemplary damages, and any allegation or prayer with respect thereto should be stricken, because of the following: (a) Plaintiffs has failed to plead and cannot establish facts sufficient to support allegations of malice, oppression, or fraud; (b) an award of punitive damages would violate the rights of Defendant to due process and equal protection of the laws, as guaranteed by the United States and California constitutions; (c) applicable state law provides no constitutionally adequate and meaningful standards to guide the public, including Defendant, as to the kind of conduct which may subject it to such a sanction; (d) applicable state law leaves determination of the fact and amount of punitive damages to the arbitrary discretion of the trier of fact, without providing adequate or meaningful limits to exercise that discretion, thereby constituting a taking without due process; (e) no provision of applicable state law provides adequate procedural safeguards, consistent with the criteria set forth in Mathews v. Eldridge (1976) 424 U.S. 319, for the imposition of a punitive damage award; and (f) the concept of punitive damages whereby an award is made to Plaintiffs, as private

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

parties, not as compensation, but as a windfall incident to the punishment of Defendant, represents the taking of property without due process of law; (g)  punitive damages violate Defendant's rights to protection from "excessive fines," as provided by the Eighth Amendment to the United States Constitution and Article I, Section 17 of the Constitution of the State of California, and further violate Defendant's rights to substantive due process as provided by the Fifth and Fourteenth Amendments to the United States Constitution, and by the Constitution of the State of California; (h) the imposition of punitive damages upon proof under a standard less than "beyond a reasonable doubt" violates Defendant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and under the Constitution of the State of California; and (i)  Defendant alleges that Plaintiffs are precluded from recovering punitive damages under the applicable provision of <u>Civil Code</u> § 3294, or such other statute of similar effect as may be applicable.

<div align="center">Sixtieth Affirmative Defense</div>

<div align="center">(Reservation of Defenses and Rights)</div>

The First Amended Complaint does not describe its claims or events with sufficient particularity to permit Defendant to ascertain what other affirmative defenses may exist, and Defendant presently has insufficient knowledge or information to form a belief as to whether it has additional, as yet unstated, affirmative defenses available to it.  Defendant therefore reserves the right to assert all affirmative defenses which may pertain to the First Amended Complaint once the precise nature of the claims is ascertained and in the event discovery indicates that they would be appropriate.

<div align="center">**PRAYER**</div>

WHEREFORE, this answering Defendant prays for judgment as follows:

1. That the First Amended Complaint be dismissed in its entirety;

2. That judgment be entered in favor of Defendant and that Plaintiffs take nothing

<div align="center">-22-</div>

1 | by their First Amended Complaint;

2 |    3.  That Defendant be awarded its costs of suit and attorney's fees to the extent

3 | permitted by law;

4 |    4.  That Defendant be awarded such other and further relief as the Court deems just

5 | and proper.

6 | **<u>DEMAND FOR JURY TRIAL</u>**

7 |      Defendant hereby respectfully demands a trial by jury in this action.

8 |

9 |

10 | DATED:     February 12, 2018     INDEGLIA & CARNEY LLP

11 |      By:   */ s / Marc A. Indeglia*

12 |      Marc A. Indeglia

     Attorneys for Defendant,

13 |      PAUL EDALAT

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

## **COUNTERCLAIM OF PAUL EDALAT**

COMES NOW, Counterclaimant Paul EDALAT ("EDALAT" or "COUNTERCLAIMANT") who alleges damages and seeks equitable relief against ALTERNATE HEALTH USA Inc. ("AHUS"), ALTERNATE HEALTH CORP. ("AHC"), HOWARD MANN ("MANN") MICHAEL L. MURPHY, M.D. ("MURPHY"), and COMPUTERSHARE INVESTOR SERVICES, INC. ("COMPUTERSHARE") (AHUS, AHC, MANN, MURPHY and COMPUTERSHARE shall be referred to collectively as "COUNTERDEFENDANTS") alleges as follows:

## **JURISDICTION AND VENUE**

1.      EDALAT is, and all times herein mentioned was, an individual and a resident of the County of Orange, State of California.

2.      EDALAT is informed and believes, and, on that basis, alleges, that Counterdefendant ALTERNATE HEALTH USA Inc. ("AHUS"), is a Delaware Corporation with its principal place of business in the State of Texas.

3.      EDALAT is informed and believes, and, on that basis, alleges, that Counterdefendant ALTERNATE HEALTH CORP. ("AHC"), is a British Columbia Corporation with its principal place of business in Canada, whose shares are publicly traded on the Canadian Stock Exchange and on the OTC Markets.

4.      ALTERNATE HEALTH USA Inc. ("AHUS") and ALTERNATE HEALTH CORP. ("AHC") shall be collectively referred to as "ALTERNATE HEALTH."

5.      EDALAT is informed and believes, and, on that basis, alleges, that Counterdefendant HOWARD MANN ("MANN") is a citizen of Canada, is domiciled in Canada, and at all times relevant was, and is, a Board member and/or officer and the controlling person of ALTERNATE HEALTH.

6.      EDALAT is informed and believes, and, on that basis, alleges, that

1   Counterdefendant MICHAEL L. MURPHY, M.D. ("MURPHY") is an individual

2   domiciled in San Antonio, Texas and at all times relevant was, and is, a Board

3   member and/or officer of ALTERNATE HEALTH.

4        7.    EDALAT is informed and believes, and on that basis, alleges, that

5   Counterdefendant COMPUTERSHARE INVESTOR SERVICES, INC.

6   ("COMPUTERSHARE") is a Canadian corporation with its principal place of

7   business in Canada.  EDALAT is further informed and believes, and on that basis,

8   alleges, that, at all times relevant hereto, COMPUTERSHARE was and is the duly

9   appointed transfer agent and registrar for the common shares of AHC.

10        8.    EDALAT is informed and believes and thereon alleges that each of the

11   COUNTERDEFENDANTS are in some manner legally responsible for the acts and

12   omissions alleged herein, which actually and proximately caused and contributed to

13   the various injuries and damages EDALAT has suffered, referred to herein.

14        9.    EDALAT is informed and believes, and thereon allege, that at all times

15   herein mentioned, each of the COUNTERDEFENDANTS was the agent, servant,

16   employee, alter-ego, instrumentality, representative, co-venturer, and/or partner of

17   each of the other COUNTERDEFENDANTS, and in doing the things herein alleged,

18   was acting within the course, scope, purpose and knowledge of such agency,

19   employment, alter-ego, instrumentality, representation, co-venture, and/or partnership,

20   and with the knowledge, permission and consent or with the approval or ratification of

21   their co- COUNTERDEFENDANTS and, as such, share liability with each other with

22   respect to said matters complained of herein.

23        10.   At all times relevant hereto, each of the COUNTERDEFENDANTS

24   conspired with, aided and abetted, and/or acted in concert with each and every other

25   COUNTERDEFENDANTS to harm, injure and damage EDALAT as hereinafter

26   alleged and, in furtherance of the aforesaid conspiracy or other plan, each and every

27   COUNTERDEFENDANT engaged in one or more of the overt acts hereinafter

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

alleged.

11.    This action is properly filed in the Central District of California – Southern Division, and this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy, without interest and costs, exceeds $75,000.00 as specified by 28 U.S.C. § 1332.  Venue is also proper under 28 U.S.C. §1391 (b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

12.    The claims asserted in this Counterclaim also arise out of the same facts and circumstances as those of the First Amended Complaint, so the Court may exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(a).

13.    This Court has personal jurisdiction over MURPHY, MANN, and COMPUTERSHARE as the acts they engaged in causing damage to EDALAT occurred in California and in this judicial district.  If and to the extent that MURPHY, MANN, and COMPUTERSHARE committed the wrongful acts outside of this judicial district, they committed said wrongful acts with the intent to cause a tortious effect in this judicial district and/or intentionally directed those wrongful acts at EDALAT.

## GENERAL ALLEGATIONS

14.    On or about May 19, 2016, EDALAT and MANN met.  During their initial meeting, MANN represented that he was the principal of ALTERNATE HEALTH, which he described as a recognized leader in the medicinal deployment of medical cannabis in Canada.  MANN advised EDALAT that he was intending to take ALTERNATE HEALTH public, and that they were seeking to enter the nutraceutical market and acquire rights to a CBD tablet for such entry.  EDALAT advised MANN that he was a principal of EFT Global Holdings, Inc. dba Sentar Pharmaceuticals ("Sentar"), a privately held company in Irvine, California, which had developed

-26-

sublingual delivery systems technology for compoundable nutraceutical products, including CBD and THC, in tablet form (the "Technology").

15.     Thereafter, EDALAT, MANN, and other representatives of Sentar and ALTERNATE HEALTH commenced discussions regarding ALTERNATE HEALTH's possible license of Sentar's Technology.  During the course of these discussions, ALTERNATE HEALTH also sought EDALAT's advice, counsel, and assistance in connection with further research and development with respect to the Technology, the development of products and services based on the Technology. ALTERNATE HEALTH also sought EDALAT's advice, counsel, and assistance with respect to other matters, including, without limitation, the location and acquisition of new prospective product lines, the location and acquisition of new prospective acquisition targets, introductions to prospective business partners, and introductions to prospective investors.

16.     By June 2016, EDALAT was actively acting as an advisor and consultant to ALTERNATE HEALTH while ALTERNATE HEALTH and Sentar commenced negotiation of a license agreement for the Technology and while ALTERNATE HEALTH and EDALAT commenced negotiation of the terms of his consulting and advisory services.  From June 2016 through on or about January 9, 2017, EDALAT continued to actively advise, consult, and assist ALTERNATE HEALTH in connection with further research and development with respect to the Technology, the development of products and services based on the Technology, the location and acquisition of new prospective product lines, the location and acquisition of new prospective acquisition targets, introductions to prospective business partners, and introductions to prospective investors.  EDALAT provided these services on a good faith basis and in anticipation of the parties' entering into a written consulting agreement.

17.     During this period, as EDALAT advised, consulted, and assisted ALTERNATE HEALTH, MANN, MURPHY, and ALTERNATE HEALTH made materially false and misleading statements and omissions concerning ALTERNATE HEALTH's financial projections and about the true intention with respect to commercialization efforts with respect to the Technology.  On or about June 26, 2016, MANN and ALTERNATE HEALTH delivered its Business Forecast Summary dated June 26, 2016.  Although ALTERNATE HEALTH had no history of operating revenues or profits, the Business Forecast Summary forecasted that it would generate revenues of $200 million in its first year of operation, $500 million in its second year of operation, and $740 million in its third year of operation.  It also forecasted expected revenues from the sale of licensed products based on the Technology would generate royalties to Sentar of more than $1 million in ALTERNATE HEALTH's first year of operation, over $23 million in the second year of operation, and over $57 million in the third year of operation.  ALTERNATE HEALTH also represented through its ALTERNATE HEALTH Strategy Total Forecast that it had allocated $1.396 million for start-up expenses for sales of licensed products based upon the Technology and operating expenses of $2.2 million for marketing campaigns, operating expenses and startup costs for marketing the non-pharmaceutical products on a monthly user subscription base.

18.     However, unless ALTERNATE HEALTH took the initial step of commercializing licensed products based upon the Technology, it was impossible for ALTERNATE HEALTH to meet any of the revenue or royalty forecasts from the sale of such licensed products.  Further, even if ALTERNATE HEALTH did take any of the steps required to commercialize a licensed product, ALTERNATE HEALTH's projections were false and misleading in that they were not remotely likely and had no reasonable basis in fact, as ALTERNATE HEALTH had no history of product development and commercialization, particularly in the field of use proposed to be

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

authorized by the license agreement, and did not have the capital necessary or management capable of generating revenues in those amounts.

19.    At the time ALTERNATE HEALTH and MANN provided these financial projections to EDALAT, however, ALTERNATE HEALTH and MANN knew, or were at least reckless in not knowing, that ALTERNATE HEALTH had no intention of attempting to commercialize licensed products based on the Technology. Rather, ALTERNATE HEALTH and MANN sought to obtain the license to the Technology, and the corresponding consulting services from EDALAT, in order to use the existence of the license as a marketing tool to raise capital from unsuspecting investors. Indeed, EDALAT is informed and believes, and based thereon alleges, that ALTERNATE HEALTH raised approximately $9 million from unsuspecting investors throughout 2016 and 2017 based in large part on the promise that ALTERNATE HEALTH would commercialize and sell licensed products based on the Technology in accordance with the same projections provided to EDALAT.

20.    To date, ALTERNATE HEALTH has not even spent a fraction of the projected millions on commercializing the Technology, notwithstanding the large amount of capital raised based on its representations that it would use its best efforts to commercialize the Technology and allocate its capital in accordance with its projections. Due to its failure and refusal to use its best efforts and use the proceeds from its capital raise in accordance with its representations, ALTERNATE HEALTH has never commercialized any products based on the Technology.

21.    MANN and ALTERNATE HEALTH also made materially false and misleading statements and omissions concerning ALTERNATE HEALTH's projected stock value, again with no reasonable basis in fact. In particular, on or about June 29, 2016, in a text exchange with EDALAT, MANN projected, with no reasonable basis in fact, that (a) ALTERNATE HEALTH stock should be $5 per share (as opposed to $1 per share being used to value the shares of ALTERNATE HEALTH stock being

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

offered for EDALAT's consulting services), and (b) that ALTERNATE HEALTH could be bigger than GW Pharmaceuticals ("GW"), a publicly traded company with a stock price of $134 per share and a market capitalization of $3.7 billion:



22.   On August 15, 2016, MANN also represented to EDALAT that ALTERNATE HEALTH was going to enter into a "lab" deal with another company that would be a "1 Billion dollar contract":



In truth, ALTERNATE HEALTH was not about to sign a lab deal worth $1 Billion.

23. On September 14, 2016, MANN and MURPHY falsely represented to EDALAT that they had access to 1,000 dispensaries for immediate sales of Licensed Products. In truth, MANN and MURPHY did not have "access" to anywhere near 1,000 dispensaries.

24. On September 30, 2016, MANN texted EDALAT and falsely represented to EDALAT that shares of ALTERNATE HEALTH had been appraised by a Wall Street investment banker at $300 per share, and that the shares to be issued to EDALAT (and Sentar) were worth "over $600M ($600 million)."

25. MANN, MURPHY, and ALTERNATE HEALTH knew, or were reckless in not knowing, that these representations were false and misleading when made and were made without any reasonable basis in fact.

26. MANN, MURPHY, and ALTERNATE HEALTH intended for EDALAT to rely on these false and misleading representations in providing consulting services, advice, and counsel to ALTERNATE HEALTH and in agreeing to accept common shares of AHC as compensation for those services.

27.     In reliance these false and misleading representations regarding ALTERNATE HEALTH, its financial condition and projections, and its common shares, EDALAT continued to provide consulting services consulting services, advice, and counsel to ALTERNATE HEALTH and agreed to accept common shares of AHC as compensation for those services.

28.     On or about January 9, 2017, ALTERNATE HEALTH and EDALAT entered into an Agreement for Consulting Services (the "Consulting Agreement", a true and correct copy of which is attached to the First Amended Complaint as Exhibit A), pursuant to which ALTERNATE HEALTH retained EDALAT as an advisor and consultant to the Company for the development and refinement of sublingual delivery system technology regarding THC, CBD and other compoundable nutraceutical products (the "Technology").  The Consulting Agreement reflected not only future consulting services to be provided by EDALAT, but also consulting services already rendered to ALTERNATE HEALTH between May 2016 and January 9, 2017.

29.     Pursuant to the Consulting Agreement, as compensation for EDALAT's entering into the Consulting Agreement, ALTERATE HEALTH issued to EDALAT a total of 2,118,506 shares of ALTERNATE HEALTH common stock (the "Consulting Shares").  The Consulting Shares were duly authorized, validly issued, fully paid, non-assessable, and fully vested upon execution of the Consulting Agreement.  The Consulting Shares were the only consideration that EDALAT received for his retention as a consultant and advisor and for the consulting and advisory services he provided to ALTERNATE HEALTH.

30.     Concurrently with the execution of the Consulting Agreement, and pursuant to his rights thereunder, EDALAT assigned 480,000 of the Consulting Shares to seven (7) nominees (the "Assigns").

31.     The Consulting Shares were issued as "restricted securities" (as that term is defined in the Securities Act of 1933, as amended (the "1933 Act")) in reliance on a

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

private placement exemption from the registration requirements of the 1933 Act.  The

certificates representing the Consulting Shares bore only the following two legends

(the "Restrictive Legends"):

> UNLESS PERMITTED UNDER SECURITIES
> LEGISLATION, THE HOLDER OF THIS SECURITY MUST
> NOT TRADE THE SECURITY BEFORE JULY 03, 2017,
> WITHOUT PRIOR WRITTEN APPROVAL OF THE
> CANADIAN SECURITIES EXCHANGE AND
> COMPLIANCE WITH ALL APPLICABLE SECURITIES
> LEGISLATION, THE SECURITIES REPRESENTED
> BY THIS CERTIFICATE MAY NOT BE SOLD,
> TRANSFERRED, HYPOTHECATED OR OTHERWISE
> TRADED ON OR THORUGH THE FACILITIES OF THE
> CANADIAN SECURITIES EXCHANGE OR OTHERWISE
> IN CANADA OR TO OR FOR THE BENEFIT OF A
> CANADIAN RESIDENT UNTIL JULY 03, 2017.

> THE SECURITIES REPRESENTED HEREBY HAVE NOT
> BEEN AND WILL NOT BE REGISTERED UNDER THE
> UNITED STATES SECURITIES ACT OF 1933, AS
> AMENDED (THE "U.S. SECURITIES ACT").  THESE
> SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR
> OTHERWISE TRANSFERRED ONLY (A) TO THE
> COMPANY; (B) OUTSIDE THE UNITED STATES IN
> COMPLIANCE WITH RULE 904 OF REGULATION S
> UNDER THE U.S. SECURITIES ACT OR (C) IN
> COMPLIANCE WITH THE EXEMPTION FROM

-33-

REGISTRATION REQUIREMENTS UNDER THE U.S. SECURITIES ACT PROVIDED BY RULE 144 THEREUNDER, IF AVAILABLE, AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS; OR (D) IN A TRANSACTION THAT DOES NOT REQUIRE REGISTRATION UNDER THE U.S. SECURITIES ACT OR ANY APPLICABLE STATE LAWS, AND, THE HOLDER HAS, PRIOR TO SUCH SALE, FURNISHED TO THE COMPANY AN OPINION OF COUNSEL OR OTHER EVIDENCE OF EXEMPTION, IN EITHER CASE REASONABLY SATISFACTORY TO THE COMPANY. DELIVERY OF THIS CERTIFICATE MAY NOT CONSTITUTE "GOOD DELIVERY" IN SETTLEMENT OF TRANSACTIONS ON STOCK EXCHANGES IN CANADA.

32.     On or about August 23, 2017, Canaccord Genuity Wealth Management (USA) Inc. ("Cannacord"), acting as broker for EDALAT, delivered to ALTERNATE HEALTH and COMPUTERSHARE all documentation necessary to allow ALTERNATE HEALTH and COMPUTERSHARE to remove the Restrictive Legends from the certificate representing the Consulting Shares to allow EDALAT to transfer the Consulting Shares.

33.     On or about September 18, 2017, COMPUTERSHARE notified Cannacord that COMPUTERSHARE and ALTERNATE HEALTH would not remove the Restrictive Legends from the certificate representing EDALAT's Consulting Shares, and accordingly, refused to register the transfer of EDALAT's Consulting Shares.   ALTERNATE HEALTH and COMPUTERSHARE continue to refuse to remove the Restrictive Legends from the certificate representing EDALAT's

Consulting Shares and issue a certificate without a restrictive legend, even though the Consulting Shares are duly authorized, validly issued, fully paid, non-assessable, and fully vested, and all the conditions for the removal have been met.

34.   EDALAT is informed and believes, and based thereon alleges, that ALTERNATE HEALTH has refused to register the transfer of the Consulting Shares in an unlawful attempt to manipulate its own stock price by artificially restricting the supply of its common shares into the market to artificially prop up its stock price.

35.   As a result of COMPUTERSHARE's and ALTERNATE HEALTH's refusal to remove the Restrictive Legends, ALTERNATE HEALTH and COMPUTERSHARE have wrongfully eliminated EDALAT's ability to sell, transfer, hypothecate, or otherwise dispose of the Consulting Shares (which were worth up to $5,000,000), thus artificially propping up the stock price of AHC while causing significant damages to EDALAT.  Further, EDALAT (and his designees) cannot sell the Consulting Shares, notwithstanding their right to do so.  As a result, EDALAT (and his designees) have has suffered losses of up to $5,000,000.

36.   Further, if the Consulting Shares had been as represented by MANN, MURPHY, and ALTERNATE HEALTH, the Consulting Shares would have had a value of up to $150,000,000.

### FIRST CAUSE OF ACTION

### Fraud

### (Against Counterdefendants ALTERNATE HEALTH, MANN, and MURPHY)

37.   EDALAT refers to and incorporates herein by reference each and every other paragraph of this counterclaim as though fully set forth herein.

38.   As more specifically alleged in ¶¶ 17-24 above, Counterdefendants ALTERNATE HEALTH, MANN, and MURPHY made false and misleading representations to EDALAT without any reasonable basis in fact.  These representations were false, and MANN, MURPHY, and ALTERNATE HEALTH

1    knew, or were reckless in not knowing, that these representations were false and

2    misleading when made and were made without any reasonable basis in fact.

3        39.    MANN, MURPHY, and ALTERNATE HEALTH intended for EDALAT

4    to rely on these false and misleading representations in providing consulting services,

5    advice, and counsel to ALTERNATE HEALTH and in agreeing to accept common

6    shares of AHC as compensation for those services.

7        40.    EDALAT reasonably relied on these false and misleading

8    representations regarding ALTERNATE HEALTH, its financial condition and

9    projections, and its common shares, and accordingly, EDALAT continued to provide

10   consulting services consulting services, advice, and counsel to ALTERNATE

11   HEALTH and agreed to accept common shares of AHC as compensation for those

12   services.

13       41.    Based on these representations, EDALAT agreed to enter into the

14   Consulting Agreement.  Pursuant to that Agreement, in exchange for EDALAT's

15   expertise, he received 2,118,506 duly authorized, validly issued, fully paid, non-

16   assessable, and fully vested shares (the "Consulting Shares"), of which he currently

17   owns 1,638,506 shares.

18       42.    EDALAT acquired the Consulting Shares for the purpose of reselling

19   the Consulting Shares after the appropriate holding period under federal securities

20   laws.

21       43.    If the Consulting Shares had been as represented by MANN, MURPHY,

22   and ALTERNATE HEALTH, the Consulting Shares would have had a value of up to

23   $150,000,000.

24       44.    ALTERNATE HEALTH, MANN, and MURPHY's false and

25   misleading representations to EDALAT, and EDALAT's reliance thereon, were

26   substantial factors in causing EDALAT's losses, in an amount to be proven at trial.

27       45.    ALTERNATE HEALTH, MANN, and MURPHY's acts, practices, and

28

1  courses of conduct were performed intentionally, knowingly, deceitfully, and

2  fraudulently, with reckless indifference toward, and a disregard of, the rights of

3  EDALAT, with the intention on their part of depriving EDALAT of property and legal

4  rights and otherwise causing injury.  Such misconduct was and is despicable and

5  fraudulent conduct that has subjected EDALAT to unjust hardship, entitling EDALAT

6  to exemplary and punitive damages in an amount to be determined at trial.

7  <div align="center">**SECOND CAUSE OF ACTION**</div>

8  <div align="center">**Negligent Misrepresentation**</div>

9  <div align="center">**(Against Counterdefendants ALTERNATE HEALTH, MANN, and MURPHY)**</div>

10  46.  EDALAT refers to and incorporates herein by reference each and every

11  other paragraph of this complaint as though fully set forth herein.

12  47.  As more specifically alleged in ¶¶ 17-24 above, Counterdefendants

13  ALTERNATE HEALTH, MANN, and MURPHY made false and misleading

14  representations to EDALAT without any reasonable basis in fact.  These

15  representations were false, and MANN, MURPHY, and ALTERNATE HEALTH

16  had no reasonable grounds for believing the representations were true when made.

17  48.  MANN, MURPHY, and ALTERNATE HEALTH intended for EDALAT

18  to rely on these false and misleading representations in providing consulting services,

19  advice, and counsel to ALTERNATE HEALTH and in agreeing to accept common

20  shares of AHC as compensation for those services.

21  49.  EDALAT reasonably relied on these false and misleading

22  representations regarding ALTERNATE HEALTH, its financial condition and

23  projections, and its common shares, and accordingly, EDALAT continued to provide

24  consulting services consulting services, advice, and counsel to ALTERNATE

25  HEALTH and agreed to accept common shares of AHC as compensation for those

26  services.

27  50.  Based on these representations, EDALAT agreed to enter into the

28

<div align="center">-37-</div>

Consulting Agreement. Pursuant to that Agreement, in exchange for EDALAT's expertise, he received 2,118,506 duly authorized, validly issued, fully paid, non-assessable, and fully vested shares (the "Consulting Shares"), of which he currently owns 1,638,506 shares.

51. EDALAT acquired the Consulting Shares for his own account for investment purposes, but with the purpose of reselling the Consulting Shares after holding the Consulting Shares for the appropriate holding period under federal securities laws.

52. If the Consulting Shares had been as represented by MANN, MURPHY, and ALTERNATE HEALTH, the Consulting Shares would have had a value of up to $150,000,000.

53. ALTERNATE HEALTH, MANN, and MURPHY's false and misleading representations to EDALAT, and EDALAT's reliance thereon, were substantial factors in causing EDALAT's losses, in an amount to be proven at trial.

54. ALTERNATE HEALTH, MANN, and MURPHY's acts, practices, and courses of conduct were performed intentionally, knowingly, deceitfully, and fraudulently, with reckless indifference toward, and a disregard of, the rights of EDALAT, with the intention on their part of depriving EDALAT of property and legal rights and otherwise causing injury. Such misconduct was and is despicable and fraudulent conduct that has subjected EDALAT to unjust hardship, entitling EDALAT to exemplary and punitive damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Breach of Contract (Covenant of Good Faith and Fair Dealing)

### (Against Counterdefendants AHUS and AHC)

55. EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

56.     On or about January 9, 2017, ALTERNATE HEALTH and EDALAT entered into the Consulting Agreement, pursuant to which ALTERNATE HEALTH retained EDALAT as an advisor and consultant to the Company for the development and refinement of the Technology.  The Consulting Agreement reflected not only future consulting services to be provided by EDALAT, but also consulting services already rendered to ALTERNATE HEALTH between May 2016 and January 9, 2017.

57.     Pursuant to the Consulting Agreement, as compensation for EDALAT's entering into the Consulting Agreement, ALTERATE HEALTH issued to EDALAT a total of 2,118,506 shares of ALTERNATE HEALTH common stock (the "Consulting Shares").  The Consulting Shares were duly authorized, validly issued, fully paid, non-assessable, and fully vested upon execution of the Consulting Agreement.  The Consulting Shares were the only consideration that EDALAT received for his retention as a consultant and advisor and for the consulting and advisory services he provided to ALTERNATE HEALTH.

58.     The Consulting Shares were issued as "restricted securities" (as that term is defined in the 1933 Act) in reliance on a private placement exemption from the registration requirements of the 1933 Act.  The certificates representing the Consulting Shares bore the two Restrictive Legends.

59.     As a matter of law, under the covenant of good faith and fair dealing, there is an implied promise that ALTERNATE HEALTH will not do anything to unfairly interfere with EDALAT's right to receive the benefit of the Consulting Agreement.

60.     In addition to the express terms of the Consulting Agreement, implied by law in every contract, including the Consulting Agreement, is the covenant of good faith and fair dealing, which is read into the Consulting Agreement and functions as a supplement to the express contractual provisions to prevent a contracting party from engaging in conduct which, while not technically

1    transgressing the express covenants, frustrates the other party's rights to the benefits

2    of the Consulting Agreement.  The covenant also requires each party to do

3    everything the Consulting Agreement presupposes the party will do to accomplish

4    the Consulting Agreement's purposes.

5         61.    EDALAT had an express right under the Consulting Agreement to

6    receive the Consulting Shares, but the benefits to EDALAT from receiving the

7    Consulting Shares would come from the ability to resell the Consulting Shares after

8    holding the Consulting Shares for the appropriate holding period under federal

9    securities laws.  Refusing to remove the Restrictive Legends from the certificate

10   representing EDALAT's Consulting Shares and issue a certificate without a

11   restrictive legend, when the Consulting Shares are duly authorized, validly issued,

12   fully paid, non-assessable, and fully vested, and when all the conditions for the

13   removal have been met, frustrates EDALAT's rights to the benefits of the Consulting

14   Agreement and constitutes a breach of the implied covenant of good faith and fair

15   dealing, and thus, a breach of the Consulting Agreement.

16        62.    EDALAT has performed his duties and obligations under the Consulting

17   Agreement, beyond that which was expected.

18        63.    ALTERNATE HEALTH has refused to remove the restrictive legend

19   from the certificate for the Consulting Shares and issue a certificate without a

20   restrictive legend, even though the Consulting Shares are duly authorized, validly

21   issued, fully paid, non-assessable, and fully vested, and all the conditions for the

22   removal have been met.  By so doing, ALTERNATE HEALTH has, in effect, failed

23   to deliver the consideration called for under the Consulting Agreement by

24   unilaterally and unlawfully eliminating EDALAT's ability to sell, transfer,

25   hypothecate, or otherwise dispose of the Consulting Shares (which were worth up to

26   $5,000,000), thus artificially propping up its stock price while causing significant

27   damages to EDALAT.  ALTERNATE HEALTH's refusal to remove the Restrictive

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

Legends from the certificate representing EDALAT's Consulting Shares and issue a certificate without a restrictive legend, when the Consulting Shares are duly authorized, validly issued, fully paid, non-assessable, and fully vested, and when all the conditions for the removal have been met, has frustrated EDALAT's rights to the benefits of the Consulting Agreement and constitutes a breach of the implied covenant of good faith and fair dealing, and thus, a breach of the Consulting Agreement.

64.    As a result, EDALAT (and his designees) cannot sell the Consulting Shares, notwithstanding their right to do so.  As a result, EDALAT (and his designees) have suffered and will continue to suffer damages in an amount to be proven at trial but which exceeds $75,000.

## FOURTH CAUSE OF ACTION

### Refusal to Register Transfer of Securities

### (Against Counterdefendants AHC and COMPUTERSHARE)

65.     EDALAT refers to and incorporates herein by reference each and every other paragraph of this complaint as though fully set forth herein.

66.    COUNTERDEFENDANT AHC is under a duty to register the transfer of its securities if the statutory conditions of Section 86 of the Securities Transfer Act of British Columbia are met.

67.    COUNTERDEFENDANT COMPUTERSHARE acts as the transfer agent and registrar for AHC in the registration of transfers of AHC's common shares and has the same duty to register the transfer of AHC's securities if the statutory conditions of Section 86 of the Securities Transfer Act of British Columbia are met.

68.    EDALAT has met the statutory conditions of Section 86 of the Securities Transfer Act of British Columbia for the transfer of his Consulting Shares, but COUNTERDEFENDANTS AHC and COMPUTERSHARE have failed, and have continued to fail, to register the transfer of EDALAT's Consulting Shares by

1  refusing to remove the Restrictive Legends from the certificate representing

2  EDALAT's Consulting Shares and issue a certificate without a restrictive legend,

3  when the Consulting Shares are duly authorized, validly issued, fully paid, non-

4  assessable, and fully vested, and when all the conditions for the removal have been

5  met.

6      69.    Pursuant to Section 86 of the Securities Transfer Act of British

7  Columbia, COUNTERDEFENDANTS AHC and COMPUTERSHARE are jointly

8  and severally liable to EDALAT for loss resulting from unreasonable delay in

9  registration or failure or refusal to register the transfer.

10     70.    As a direct and proximate result of COUNTERDEFENDANT AHC's

11 and COMPUTERSHARE's violation of the Securities Transfer Act of British

12 Columbia, EDALAT has suffered and will continue to suffer damages in an amount

13 to be proven at trial but which exceeds $75,000.

14                    **FIFTH CAUSE OF ACTION**

15                            **Conversion**

16                  **(Against All Counterdefendants)**

17     71.    EDALAT refers to and incorporates herein by reference each and every

18 other paragraph of this complaint as though fully set forth herein.

19     72.    ALTERNATE HEALTH and COMPUTERSHARE have refused (and

20 MANN and MURPHY have caused ALTERNATE HEALTH and

21 COMPUTERSHARE to refuse) to remove the Restrictive Legends from the certificate

22 for the Consulting Shares and issue a certificate without restrictive legends, even

23 though the Consulting Shares are duly authorized, validly issued, fully paid, non-

24 assessable, and fully vested, and all the conditions for the removal have been met.  By

25 so doing, COUNTERDEFENDANTS have wrongfully exerted dominion over

26 EDALAT's property, in denial of, and inconsistent with EDALAT's rights therein and

27 in exclusion of and/or defiance to EDALAT's rights.  COUNTERDEFENDANTS

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

1  have exercised such dominion without EDALAT's authority or consent and in

2  disregard, violation, and denial of EDALAT's rights as a stockholder of AHC.  By the

3  foregoing acts, COUNTERDEFENDANTS have converted EDALAT's property to

4  their own ownership, possession, custody, or control, and for their use and enjoyment.

5       73.    As a direct and proximate result of COUNTERDEFENDANTS'

6  conversion of the Consulting Shares, EDALAT has suffered and will continue to

7  suffer damages in an amount to be proven at trial but which exceeds $75,000.

8       74.    By these acts, COUNTERDEFENDANTS have acquired title to or

9  possession of EDALAT's property, with actual and/or constructive knowledge that

10  such acquisition was the result of malfeasance, inequitable coercion, and improper and

11  impermissible conduct.  Any property held by COUNTERDEFENDANTS as a result

12  is held unfairly and was obtained by such malfeasance, inequitable coercion, and/or

13  other unconscionable conduct and in violation of EDALAT's rights.  Accordingly,

14  COUNTERDEFENDANTS have been unjustly enriched and are under an equitable

15  duty to convey such property deemed to be held in constructive trust for EDALAT,

16  and EDALAT is entitled to a judgment accordingly.

17       75.    COUNTERDEFENDANTS' acts, practices, and course of business were

18  performed intentionally, knowingly, fraudulently, and with reckless indifference

19  toward, and a disregard of, the rights of EDALAT, entitled EDALAT to an award of

20  actual and punitive damages in an amount to be determined at trial.

21  **<u>SIXTH CAUSE OF ACTION</u>**

22  **Declaratory and Equitable Relief**

23  **(Against Counterdefendants AHUS and AHC)**

24       76.    EDALAT refers to and incorporates herein by reference each and every

25  other paragraph of this complaint as though fully set forth herein.

26       77.    COUNTERDEFENDANTS AHC and COMPUTERSHARE have

27  failed, and have continued to fail, to register the transfer of EDALAT's Consulting

28

-43-

1   Shares by refusing to remove the Restrictive Legends from the certificate

2   representing EDALAT's Consulting Shares and issue a certificate without a

3   restrictive legend, when the Consulting Shares are duly authorized, validly issued,

4   fully paid, non-assessable, and fully vested, and when all the conditions for the

5   removal have been met.

6       78.   EDALAT requests the judgment include an order that

7   COUNTERDEFENDANTS AHC and COMPUTERSHARE have failed, and have

8   continued to fail, to register the transfer of EDALAT's Consulting Shares by refusing

9   to remove the Restrictive Legends from the certificate representing EDALAT's

10  Consulting Shares and issue a certificate without a restrictive legend.

11      79.   EDALAT requests the judgment include an order that

12  COUNTERDEFENDANTS AHC and COMPUTERSHARE shall remove the

13  Restrictive Legends from the certificate representing EDALAT's Consulting Shares

14  and issue a certificate without a restrictive legend.

15      80.   EDALAT requests the judgment include an order that

16  COUNTERDEFENDANTS shall take no action to suspend or otherwise thwart

17  EDALAT (or his designees) from selling, transferring, hypothecating, or otherwise

18  disposing of the Consulting Shares in the future.

19

20

21

22

23

24

25

26

27

28

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT

Case No. 8:17-cv-01887-CJC (JDEx)

1     **WHEREFORE,** Counterclaimant EDALAT prays for judgment as follows:

2     1.    A judgment of preliminary and permanent injunction ordering AHC and

3 COMPUTERSHARE to remove the restrictive legend from the certificate for the

4 Consulting Shares and issue a certificate without a restrictive legend;

5     2.    A judgment that the Consulting Shares are being held by

6 COUNTERDEFENDANTS in constructive trust for EDALAT and his designees and

7 that COUNTERDEFENDANTS are under an equitable duty to return and convey

8 such property to EDALAT and his designees by removing the restrictive legend from

9 the certificate for the Consulting Shares and issue a certificate without a restrictive

10 legend;

11     3.    A judgment of preliminary and permanent injunction against

12 COUNTERDEFENDANTS' taking any action to suspend or otherwise thwart

13 EDALAT (or his designees) from selling, transferring, hypothecating, or otherwise

14 disposing of the Consulting Shares in the future;

15     4.    For special and general damages according to proof;

16     5.    For compensatory damages, including loss of profits, royalties,

17 promotional opportunities, benefits and other opportunities of employment, according

18 to proof;

19     6.    For exemplary or punitive damages in an amount according to proof;

20     7.    For an award of interest, including pre-judgment interest, at the legal

21 rate;

22     8.    For an award of attorney's fees;

23     9.    For costs of suit incurred herein; and

24     10.    For such other and further relief as the Court deems just and proper.

25

26

27

28

# JURY TRIAL DEMAND

Counterclaimant Paul Edalat hereby demands trial of this action by jury.


DATED:      February 12, 2018          INDEGLIA & CARNEY LLP

                                       By:   _/ s / Marc A. Indeglia_
                                             Marc A. Indeglia
                                             Attorneys for Defendant,
                                             PAUL EDALAT

ANSWER OF DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SECOND
AMENDED COUNTERCLAIM OF PAUL EDALAT
Case No. 8:17-cv-01887-CJC (JDEx)

<div align="center">

1

## **CERTIFICATE OF SERVICE**

</div>

2    The undersigned certifies that a true and correct copy of the ANSWER OF

3  DEFENDANT PAUL EDALAT TO PLAINTIFFS' FIRST AMENDED

4  COMPLAINT AND FIRST AMENDED COUNTERCLAIM OF PAUL EDALAT

5  was served on counsel of record in accordance with the Federal Rule of Civil

6  Procedure on this 12th day of February, 2018, via this Court's ECF System and via U.S.

7  Mail on February 12, 2018 on the following:

8

9  Fred G. Bennett, Esq.
   Robert J. Becher, Esq.

10  QUINN EMANUEL URQUHART & SULLIVAN LLP

11  865 S. Figueroa Street, 10th Floor
   Los Angeles, CA 90017

12

13  *Attorneys for Plaintiffs and Crossdefendants Alternate Health USA Inc. and Alternate*
   *Health Corp.*

14

15  *(Served via this Court's ECF System Only)*

16

17    I am readily familiar with Indeglia & Carney LLP's practice for collecting and

18  processing correspondence for mailing with the United States Postal Service and

19  Overnight Delivery Service. That practice includes the deposit of all correspondence

20  with the United States Postal Service and/or Overnight Delivery Service the same day

21  it is collected and processed.

22    I declare under perjury under the laws of the State of California that the forgoing

23  is true and correct.

24    Executed on February 12, 2018 at Los Angeles, California.

25

26                    */s/ Marc A. Indeglia*

27

28

-47-