1        **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**

3       **HONORABLE JOHN W. HOLCOMB, U.S. DISTRICT JUDGE**

4

5   **ALTERNATE HEALTH USA, INC., et al.,**      )
                                                 )
6                     **Plaintiffs,**            )
                                                 )
7        **vs.**                                 )        **Case No.**
                                                 )  **CV 17-1887 JWH (JDEx)**
8   **PAUL EDALAT, et al.,**                     )
                                                 )
9                     **Defendants.**            )
    _____ )

10

11      **REPORTER'S TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**
                         **STATUS CONFERENCE**
12            **FRIDAY, SEPTEMBER 24, 2021**
                        **11:00 A.M.**
13                 **RIVERSIDE, CALIFORNIA**

14

15

16

17

18

19

20

21

22   _____

23      **MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
                FEDERAL OFFICIAL COURT REPORTER
24              350 WEST 1ST STREET, ROOM 4455
                LOS ANGELES, CALIFORNIA  90012
25                      (213) 894-2305

1                        **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFFS:**

4        MARKHAM READ ZERNER, LLC
         BY:  JOHN J.E. MARKHAM, II
5        BY:  BRIDGET A. ZERNER
             Attorneys at Law
6        One Commerical Wharf West
         Boston, Massachussetts  02110
7        (617) 523-6329

8

9    **FOR THE DEFENDANTS:**

10       SAIED KASHANI LAW OFFICES
         BY:  MIR SAIED KASHANI
11           Attorney at Law
         800 West First Street, Suite 400
12       Los Angeles, California  90012
         (213) 625-4320
13

14   **FOR THE COUNTER-DEFENDANT COMPUTERSHARE INVESTOR SERVICES,**
15   **INC.:**

16       LESNICK, PRINCE & PAPPAS, LLP
         BY:  DAVID S. ALVERSON
17           Attorney at Law
         315 West 9th Street, Suite 705
18       Los Angeles, California  90015
         (213) 493-6582
19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1              FRIDAY, SEPTEMBER 24, 2021; 11:00 A.M.

 2                     RIVERSIDE, CALIFORNIA

 3                            -oOo-

 4              THE COURTROOM DEPUTY:  Calling Case

 5   No. SA CV 17-1887, Alternate Health USA, Inc., et al., versus

 6   Paul Edalat.

 7              If I can please have counsel state their name for

 8   the record, starting with plaintiffs' counsel.

 9              MR. MARKHAM:  Yes.  John Markham and Bridget Zerner

10   for all the plaintiffs.  Good afternoon, Your Honor -- I guess

11   good morning, Your Honor.

12              THE COURT:  Good afternoon where you are and good

13   morning where I am.

14              MR. MARKHAM:  Yes.

15              THE COURT:  Please go ahead, Mr. Kashani.

16              MR. KASHANI:  Yes.  Saied Kashani for the

17   defendants, Edalat and related parties.

18              THE COURT:  Yes.  Good morning, Mr. Kashani.

19              MR. ALVERSON:  Good morning, Your Honor.

20   David Alverson for counter-defendant Computershare Investor

21   Services, Inc.

22              THE COURT:  And good morning, Mr. Alverson.

23              Okay.  I set this status conference when I saw the

24   motion to dismiss a large part of this case.  And I think after

25   I -- after I set the status conference, I saw the response that
```

1   Mr. Alverson filed on behalf of his clients to the motion.

2           We have a -- as of this instant, we have a trial set

3   for, I think, October 18th and a final pretrial conference next

4   Friday and a hearing on a motion in limine that Mr. Alverson

5   filed, I believe, on behalf of his client, set for hearing next

6   Friday.

7           So let me hear what's going on and we'll figure out

8   how to deal with everything.

9           Mr. Markham, you or Ms. Zerner, please give me your

10  perspective.

11          MR. MARKHAM:  Thank you.

12          Well, Your Honor, after the case got reassigned to

13  Your Honor, a lot of elbow grease was put in.  A motion for

14  summary judgment was filed, we filed an extensive response,

15  this Court gave a very illuminating opinion of what the edges

16  of the soccer field, as it were, what we had to show and how we

17  had to show it.

18          Thereafter, we had an extensive number of motions

19  in limine that were briefed.  As is often the case, when

20  lawyers take a look at what the judge is going to rule on

21  various aspects of things, they rethink the worth of the case

22  with their client.

23          And Mr. Kashani and I talked, as you had encouraged

24  us to, to try to settle it.  And we decided that the best thing

25  for our clients to do, in our professional opinions, was to

1  dismiss the claims that we have made against Mr. Kashani's

2  clients and he dismissed the claims that they had made against

3  our clients.

4          Obviously, given our professional opinion about

5  where the case was going to end up, the current asset

6  structures of the defendants and the plaintiffs, we thought it

7  was certainly the prudent thing to do cost-wise, certainly in

8  terms of costs to the Court.  And so we decided that we would

9  dismiss the claims.  And, therefore, we have made that motion,

10  and we submit that it's in the interest of justice to allow the

11  parties not to spend eight days arguing over something that

12  they would rather put to bed.

13          And I know that I -- I don't usually speak for

14  Mr. Kashani, but I think in this I will, at least, dare to

15  speak for him.  We really appreciate all the guidance that the

16  Court has given us in all of its rulings that has lit the way

17  to where we are now.

18          THE COURT:  All right.  Thank you.

19          Mr. Alverson, I very much want to hear from you, but

20  first let me hear from Mr. Kashani.  Don't feel obligated to

21  weigh in.  But if you have anything to add, please, I'm eager

22  to hear.

23          MR. KASHANI:  Thank you, Your Honor.  First of all,

24  I apologize if I'm sounding hoarse.  Again, I do appreciate the

25  Court's accommodation of the schedule and for my health

1    treatment.

2         But I echo what Mr. Markham said.  I do want to

3    state procedurally that what is left in the case to try is the

4    claims of -- let's call them the tendering shareholders or the

5    shareholders who tendered shares to Mr. Markham's client --

6    Computershare for registration and those shares were not

7    registered or the legend was not removed.

8         And it's our contention, which has been stated in

9    all the papers, that Computershare had an independent duty to

10   remove that legend and allow the shares to be sold.  So we

11   would -- we want to -- we would like to keep the trial date and

12   proceed with those claims.

13        Certainly, the trial would not be as long.  I don't

14   know what defenses Computershare will raise, but I don't --

15   given the number of claims being removed, I don't think they'll

16   need as long.  But that's up to my client.

17        So we would just like to go to trial against

18   Computershare, as it presently stands.  Given the motions

19   in limine, some of the parties may actually drop out because,

20   you know, there's a distinction between shares that were

21   actually tendered and not tendered.  So that may be a factor.

22        But as of now, we do have remaining claims, which

23   Mr. Alverson pointed out quite clearly in his opposition, and

24   we would like to go forward and try those in October as

25   presently scheduled.

1    THE COURT:  If we did that -- and I very much want

2   to hear from Mr. Alverson and his perspective.  But staying

3   with your view of the world for the moment, Mr. Kashani, who

4   are the counter-claimants who actually have claims against

5   Computershare?

6    MR. KASHANI:  Well, we contend that -- let me

7   explain first what happened factually and then it will be

8   understood.  There were shares issued with a legend to

9   Mr. Edalat 1.2 million shares, the counter-claimant Sentar

10  about 800,000 shares, and counter-claimants Barghi and

11  Olivia Karpinski about 25,000 shares each.

12    It is undisputed factually that Mr. Edalat tendered

13  his shares to Computershare to remove the legend.  The legend

14  was not removed.  That's not a matter of dispute factually.

15    The balance of the shares, if I read the motions

16  in limine, I think it's the Court's position that if those

17  shares weren't tendered, then those plaintiffs don't have a

18  claim.  We were arguing that once Computershare refused to

19  remove the legend from Edalat, the remaining shareholders are

20  excused from tendering because it's futile.  That may be an

21  issue that we'll determine with plaintiffs.

22    I can, though, state that if the motion to dismiss

23  is granted, Ms. Karpinski and Ms. Barghi will dismiss their

24  claims.  They're not going to go to a federal trial, take up

25  your time over 25,000 shares.  They're not going to do that.

```
 1              So we're just talking about Mr. Edalat who tendered
 2    1.2 million shares and potentially Sentar company which had
 3    900,000 shares, which there's a factual dispute whether they
 4    were ever tendered.  Our position, again, is the futility
 5    exception.  That may have been resolved by the motion
 6    in limine, that may need to be resolved, but that's all we have
 7    left to try.
 8              So Ms. Karpinski and Ms. Barghi are not going to
 9    waste this Court's time over 25,000 shares each.  But the
10    balance -- those are the issues, and that's what we would like
11    to go to trial on.
12              THE COURT:  All right.  Thank you.
13              All right.  Now, I've been very eager to hear from
14    Mr. Alverson and your client's perspective.  Please tell me --
15    please give me your thoughts of the procedural posture and how
16    you would like to proceed.
17              MR. ALVERSON:  Yes, Your Honor.  I'm not going to
18    choose to try this case or discuss the underlying facts and
19    arguments of this case.  I would like to state procedurally
20    with our point of view, which I think is important
21    substantively here.
22              Your Honor obviously has seen the filings and
23    understands how we got here.  We were certainly never part of
24    any settlement discussions.  As I mentioned in my pleading --
25    well, let me back up.
```

1        From a procedural standpoint, the joint motion to

2   dismiss is defective for the reasons I've outlined.  If it's a

3   Rule 41(a)(2) request for dismissal, it has to be filed as a

4   noticed motion and parties have the opportunity to present

5   opposition on a substantive basis.  And Your Honor has the

6   discretion whether to grant it or grant it with or without

7   prejudice or grant it with conditions.  That's clear under the

8   law.

9        Your Honor, the Court issued a notice of

10  deficiencies identifying that -- you know, there are obviously

11  deficiencies in the notice that was set for 14 days' notice.

12  It was set without a meet and confer.  You know, and we have

13  the final pretrial conference obviously next Friday and the

14  trial dates three weeks away.

15       And depending on what happens with the motion for

16  voluntary dismissal, once the rules have been followed and it

17  is properly filed and then it has been ruled upon by

18  Your Honor, it could very well change the complexion of the

19  trial and also the complexion of the pretrial submissions.

20       And, you know, as has been reflected in all the

21  filings, Computershare's defense is inextricably intertwined

22  with Alternate Health's four years' worth of statements and

23  court pleadings and declarations filed with the Court that

24  Mr. Edalat procured these shares via fraud.

25       I've been in the middle of communications with

1    Alternate Health's counsel regarding updating the pretrial

2    submissions, which were due last Friday, when their

3    communications with me on that abruptly ceased and I received

4    their joint motion to dismiss.

5          So, you know, given how all this has transpired and

6    the timing of it and the inadvertent or not attempt to

7    disregard the rules and file a Rule 41(a)(2) motion with only

8    two weeks' notice and no meet and confer, if I was a cynical

9    attorney, I might think the timing was some part of back --

10   part of some backroom deal to try to prejudice and sandbag my

11   client on the eve of trial.  But I'm not so cynical.

12         But, nonetheless, I would like the rules to be

13   followed.  I would like a proper motion to be followed.  I

14   would like a meet -- their meet and confer rules to be

15   followed.  And once that proper motion is filed, I'll discuss

16   it with my client and see whether we oppose it or not.

17         THE COURT:  Well, let me stay engaged with you,

18   Mr. Alverson.  I think you're right about procedurally this is

19   a motion under Rule 41(a)(2) and it needs to be filed according

20   to the rules.

21         Now, let's put that aside for a moment and kind of

22   step back and look at the big picture.

23         MR. ALVERSON:  Sure.

24         THE COURT:  I am not likely to say, oh, can't settle

25   this case, let's go to trial and everything.  We're going to

**UNITED STATES DISTRICT COURT**

```
 1    have -- it's probably true that if the Alternate Health parties

 2    and the Edalat parties have reached some sort of an

 3    accommodation, settlement, whatever one wishes to call it, I'm

 4    not going to force them to go to trial.

 5              The issue is, I think, where does that leave your

 6    client.  And I do not want your client to be disadvantaged

 7    by -- you know, by where we are in terms of what disputes

 8    remain in existence.

 9              So, yes, I could say this motion is improper because

10    the local Rule 7-3 was not complied with, no hearing date was

11    set, et cetera, et cetera.  But I want to kind of get behind

12    that and see where we need to go.

13              So, Mr. Alverson, assuming that the claims between

14    the other parties -- I'll just call it that -- have been

15    resolved, where does that leave you?  What do you want to do?

16              Mr. Kashani told me he wants to go to trial on time

17    on the 18th with Mr. Edalat and Sentar, as I understood him,

18    against Computershare.  I'm kind of assuming that you should

19    weigh in here that you do not want that resolved.  You don't

20    want to go to trial on October 18th with those two claims.  I

21    think it's the fourth and fifth claims for relief from the

22    counter-claim; right?

23              What do you want to happen, assuming that the case

24    is resolved between and among everybody but your client?

25              MR. ALVERSON:  Well, without -- sorry.  Just to
```

1    respectfully back up a little bit.  I'd like to present -- I

2    would like to present in writing -- I suppose we would file an

3    opposition to the request for dismissal -- I mean, there is

4    certainly case law out there where dismissal has been denied,

5    where third parties or remaining parties are going to be

6    prejudiced.  And -- or at the very least the dismissal is

7    granted with certain conditions and requirements are met in

8    terms of witnesses and so forth.  So --

9            THE COURT:  So let me interrupt you.  I do want to

10   hear everything you have to say on this point, but let me

11   interrupt you on this prejudice issue.

12           I'm sympathetic to that argument.  So how do we

13   alleviate the prejudice to your client?  I mean, do you want

14   more time?  Do you want to file a counterclaim or a

15   cross-claim?  Do you not know yet?  How do we alleviate the

16   prejudice to your client?

17           MR. ALVERSON:  Well, I have -- I have some ideas,

18   but I would like to present those in a cogent fashion to the

19   Court, either in terms of -- in the fashion of an opposition or

20   some other document because -- because, given the circumstances

21   and the position our client's facing, I think we have some very

22   compelling arguments to make to Your Honor.

23           So at the very least, we should be permitted for

24   that filing and have that be contemplated and heard by

25   Your Honor and then Your Honor can make his ruling.  But I

```
 1    certainly don't think -- I certainly think that, given what

 2    we're requesting, it would be premature to go ahead with an

 3    October 18th trial date.  Depending on how Your Honor would

 4    rule, I would probably also request we be able to update our

 5    pretrial filings.

 6              As I've said before, you know -- and as

 7    Computershare's papers are clear, you know, our defense was

 8    inextricably linked with these claims of fraud by

 9    Alternate Health.  And we were -- my client was expressly

10    instructed by Alternate Health to take certain action or not

11    take certain action because of those claims.  So --

12              THE COURT:  I understand.  So just --

13              MR. ALVERSON:  So I would -- I'm sorry.  I would

14    like the opportunity to address this in writing, as I think

15    properly should be done as a noticed motion, with the trial --

16              THE COURT:  Let me get there.

17              MR. ALVERSON:  Okay.

18              THE COURT:  Let me get there.

19              MR. ALVERSON:  Thank you, Your Honor.

20              THE COURT:  I'm with you.

21              So let me explore -- what if we did this -- and I'm

22    not saying I'm going to, but let me explore this as one

23    possible path.  What if I were to vacate the pretrial

24    conference date and the trial date, strike the motion, without

25    prejudice, for the parties who wish to settle to refile their
```

1   Rule 41(a)(2) motion, require everybody to comply with --

2   require the moving parties to comply with local Rule 7-3, set a

3   briefing schedule that makes sense.  I don't know, the parties

4   have to tell me, but maybe it will take more time to file a

5   motion and to file the opposition in reply and have a hearing.

6           What if we do that and in that way sort out where we

7   are?  Does it make sense to have some claims dismissed?  Does

8   it make sense to impose conditions?  That can all be sorted out

9   on a reasonable calendar, a reasonable schedule.

10          What about that course of action, Mr. Alverson?

11          MR. ALVERSON:  Yes, I agree.  We're just asking for

12  our day in court to be heard on this issue, Your Honor.

13          THE COURT:  All right.  Let me jump back to

14  Mr. Kashani next.

15          So what if I do that?

16          MR. KASHANI:  I have no objection.

17          I would request, just to save some time, that maybe

18  if Mr. Alverson agrees, the prior meet and confer requirement

19  can be waived just to save some time.  I think there's been

20  discussion, you know, preceding this.  If he doesn't want to,

21  that's fine.  But if he does -- I mean, I can tell him right

22  now, a meet and confer is not going to -- what's the word of

23  the local rule?  It's not going to obviate the need for the

24  motion, let's put it that way.

25          THE COURT:  Well, I believe deeply in local

1    Rule 7-3, even more now than when I was a lawyer.  I think it's

2    always helpful for counsel to talk about issues.  In my

3    experience, they may resolve things that they didn't even

4    recognize collectively was an issue in the course of talking

5    about it in a professional and civil manner.  So I don't think

6    I would relax that requirement.

7            You may very well be right, Mr. Kashani.  It may

8    be -- what I'm hearing you saying is it would be futile.  But I

9    don't think we lose anything other than a little bit of time if

10   we do that.  And it will give you all a chance to talk about

11   it.

12           MR. ALVERSON:  Frankly, I would -- my client's

13   located on the East Coast.  And it's a Friday, and I would

14   probably want to talk to them today about what transpired today

15   and so forth.  And then we can have our meet and confer.

16           I don't see the need why this all has to be rushed

17   through.  Again, if I was cynical, you know, I would be

18   suspicious of why this is all going on and why there's now all

19   of a sudden an urgent reason to try the case in three weeks.

20   But we just want our day to be heard, Your Honor.

21           THE COURT:  Understood.  So --

22           MR. MARKHAM:  May I be heard?

23           THE COURT:  Yes, but one second.

24           So, Mr. Kashani, what I heard you say is you do not

25   object to the path that I suggested, that I threw out there for

**UNITED STATES DISTRICT COURT**

1    discussion.

2         MR. KASHANI:  No.  No, I do not.  Mr. Alverson -- if

3    he needs more time to revise pretrial papers or something like

4    that, I mean that's fine.

5         THE COURT:  Okay.  Mr. Markham, yes, I very much

6    want to hear your perspective.

7         MR. MARKHAM:  Two things.  Mr. Alverson has now

8    twice said that if he were cynical, he would think this is part

9    of something nefarious.  But, of course, he's not cynical.

10   Just in case he really wanted to leave the implication about

11   which I'm cynical that he did want to leave, we didn't do this

12   for any other reason than at the time we did it, in

13   consultation with Mr. Kashani, we thought it was the best

14   interest in our clients' interest to do it.  That's the only

15   reason we had, number one.

16        Number two, maybe I misheard him, but Mr. Alverson

17   indicated that AHC had been instructing him since the claims

18   were filed.  No, we have not.  AHC or one of its

19   representatives did instruct him, did instruct his client

20   pre-filing not to remove the legend so that the stock could be

21   sold.  That's a given.

22        THE COURT:  Hold on.  Let me cut you off.

23        I appreciate your desire to make sure the record

24   reflects your client's perspective.  I get that.  But that's

25   not helping me today.  I'm not going to resolve any of that

```
 1   today.  And I'm not -- that's kind of noise for me right now.

 2   I'm trying to solve the procedural issue.

 3              MR. MARKHAM:  I was responding -- yes, Your Honor.

 4   I was responding to the issue he raised, but I will stand down.

 5              THE COURT:  Well, thank you.

 6              MR. MARKHAM:  Obviously.

 7              THE COURT:  What do you think on behalf of your

 8   clients of the proposed path that I mentioned, that is, resolve

 9   the Rule 51(a)(2) motion in a -- in a procedurally proper

10   manner that is preceded by a local Rule 7-3 conference where

11   hopefully you and Mr. Alverson can discuss the issues that

12   you're both raising that are beyond the scope of what I want to

13   talk about today?  What do you think about that path?

14              MR. MARKHAM:  Well, my question is this.  I had not

15   read the rule to require consulting a party that wasn't part of

16   the relief that would be granted.  So that's why we didn't

17   consult Mr. Alverson.

18              But, Your Honor, I'm -- I'll go with Mr. Kashani on

19   this.  If the Court thinks we need to do that, we should.  It

20   might be good if we got dates for papers and reply papers now

21   so that we would all know and we wouldn't have to have a

22   guesswork.  We could have a say until next Tuesday or Wednesday

23   to do a meet and confer.  I'm available.  Then the Court could

24   set dates, we could all file our papers by those dates.  That

25   might make it easier on everybody, but -- that's my one
```

1  suggestion, but I'll vote with the majority obviously.

2          THE COURT:  Right.  I mean, nobody has filed a

3  motion for sanctions for failure to follow something.  I mean,

4  Mr. Alverson has raised the issue that local Rule 7-3 was not

5  complied with.  I understand -- this is an odd situation.  So

6  let's just take a step back and sort this out.

7          One of my -- couple of things.  One of my big

8  concerns is that Mr. Alverson's client is not prejudiced by

9  these claims being dismissed from the case.  And I would

10 understand that it would take some time for him and his client

11 to sort out what has happened and how they wish to -- how they

12 wish to proceed.

13         And, second, I just think it would be -- it would be

14 helpful if counsel discussed where we -- where you all are,

15 where we all are.

16         And the other point is, as you know from, I think,

17 the very first hearing where I was a little bit annoyed that

18 the parties had ignored an order to conduct a settlement

19 conference by a particular date, I am eager to get -- to move

20 this case along and, if it needs to be tried, get it tried.  I

21 was hoping and expecting that would happen on October 18th.

22 But weighing all these factors, I think this is the best way to

23 proceed.

24         So what I'm going to do is vacate the pretrial

25 conference date of October 1st.  I'll deny the pending motion

1  in limine, without prejudice.  If it's appropriate to bring it

2  later, Mr. Alverson, you'll have an opportunity to do that.

3  I'll vacate the trial date.

4           Let's talk about reasonable dates to refile -- and I

5  will deny the joint motion to dismiss, so-called, ECF 183,

6  without prejudice.  And let's set some dates.

7           I do want you to talk.  Let's set a deadline for,

8  Mr. Kashani, your clients and, Mr. Markham, your clients to

9  refile a joint motion, assuming -- a joint motion to dismiss

10  under Rule 52 -- 41(a)(2), assuming that is how you want to

11  proceed.  Let's set a deadline to do that.  And obviously,

12  you'll need to meet and confer before that.

13           Is two weeks from today too early for a deadline to

14  file that motion?

15           MR. KASHANI:  Not for my clients, Your Honor.

16           MR. MARKHAM:  No, Your Honor, not for my clients.

17           THE COURT:  Okay.  So, Mr. Alverson, this will mean

18  that they will need to meet and confer with you before next

19  Friday.  Is that -- could everybody collectively do that?

20           MR. ALVERSON:  Yes, Your Honor.

21           THE COURT:  Okay.

22           MR. MARKHAM:  Yes, Your Honor.

23           MR. KASHANI:  We're available.

24           THE COURT:  Good.  Two weeks from today, then, is

25  October 8th.  So that will be the deadline to file the

1   anticipated joint motion under Rule 41(a)(2) to dismiss certain

2   claims and counter-claims.

3          Now, Mr. Alverson, how much time are you going to

4   need to respond, whether it's an opposition or whatever it is

5   you're going to file in response?  Do you need more than a

6   week?  Do you need two weeks?

7          MR. ALVERSON:  Your Honor, I'm actually going to be

8   traveling so I would request an extra -- in October.  I'm going

9   to request an extra week, if that's okay.

10          THE COURT:  So is two weeks -- October 22nd, does

11   that work for you and your clients?  I don't want to press you.

12   On the one hand, I want to get this resolved but, on the other

13   hand, let's do it in a way that's humane.  We were going to be

14   in trial that week.

15          MR. ALVERSON:  Sorry, Your Honor.  Were you waiting

16   for my response?

17          THE COURT:  Yes.

18          MR. ALVERSON:  Oh, I'm sorry.  Yes, October 22nd?

19          THE COURT:  Yes.

20          MR. ALVERSON:  Opposition due?  Yes.

21          THE COURT:  Okay.

22          MR. ALVERSON:  Sorry about that.  I'm sorry.

23          THE COURT:  Okay.  October 22nd for -- deadline for

24   the opposition.

25          Is October 29th, one week, sufficient for a reply,

1    Mr. Markham?

2            MR. MARKHAM:  Um, I think I'd ask -- I will ask for

3    a bit more time and here's why.

4            THE COURT:  That's okay.  That's okay.

5            MR. MARKHAM:  Okay.  I'd like two weeks.

6            THE COURT:  Understood.  So 11/5.  Mr. Kashani, okay

7    by you?

8            MR. KASHANI:  Sure.  That's fine, Your Honor.

9            THE COURT:  Okay.  The reply will be due

10   November 5th.  Let's set a hearing on this on November 19th.

11           Madam Clerk, is that date clear for us?

12           THE COURTROOM DEPUTY:  Yes.

13           THE COURT:  Okay.  11/19, November 19th, at

14   9:00 a.m.

15           MR. KASHANI:  Your Honor, could I check one thing on

16   that date?

17           THE COURT:  Sure.

18           MR. KASHANI:  I want to see that there's no

19   conflict.

20           THE COURT:  Yes, please.  That's why we're doing

21   this.

22           MR. KASHANI:  I actually have a County Bar

23   Association -- I'm a witness to the County Bar Association

24   mediation that day -- arbitration that day.

25           THE COURT:  Well, you know, let's -- how about the

1  18th?  How about November 18th?

2          MR. KASHANI:  That should be fine.

3          THE COURT:  Mr. Markham, Mr. Alverson, is the

4  18th --

5          MR. MARKHAM:  Good for us, Your Honor, for Markham.

6          MR. ALVERSON:  That's fine, Your Honor.

7          THE COURT:  Okay.  That will give us a little bit

8  more time.  That's obviously not my regular law and motion day.

9  Let me just check.

10          Madam Clerk, do we have a trial set that week that's

11  going to be problematic?

12          MR. KASHANI:  I think we had this trial set that

13  week.

14          THE COURT:  That's November -- our trial was set

15  October 18th.

16          MR. KASHANI:  Oh, okay.  Sorry.  I've been bad with

17  dates lately.

18          THE COURT:  All right.  Here's what I'm going to do.

19  I'm going to set the hearing that we've been discussing for

20  Thursday, November 18th.  We'll do it by Zoom, by video.  Let's

21  say 10:00 a.m.

22          I think that the trial in that other case, I think

23  that's not going to happen.  If I'm wrong and I'm in trial the

24  week of November 15th and, therefore, cannot have a hearing on

25  the 18th at 10:00 a.m., I'll let you know.  And we'll move --

1   we'll move it to -- we'll move it to a Friday -- well, we'll

2   deal with that if and when the time comes.  It will not be the

3   19th, in view of Kashani's conflict.

4           MR. KASHANI:  Your Honor, may I offer a suggestion,

5   perhaps would avoid this?  If Mr. Markham concurs, I know we

6   could get a reply in in one week.  Then we could have the

7   hearing the week of the 1st and not have this issue.  We could

8   have the hearing on November 5th if we put just -- take one

9   week for the reply, which is normal.  I don't want to step on

10   Mr. Markham's toes but --

11           THE COURT:  Well, he asked for two weeks.

12           MR. MARKHAM:  You know what?  If I could revise

13   that, just to get this resolved in everybody's benefit where we

14   don't risk you being in trial, Your Honor, we'll get it done in

15   a week.  We're fine.

16           THE COURT:  That may not help in terms of me being

17   in trial.  But --

18           MR. MARKHAM:  Oh.

19           THE COURT:  -- I appreciate that.

20           So backing up, then, so the reply -- instead of

21   November 5th, reply on October 29th.  And then I'm going to

22   need two weeks to work this up.  So that will put us -- a

23   hearing on November 12th.  That's the day after Veterans' Day,

24   which is a federal holiday, but I think -- let me check with my

25   clerk.

1          We're here the 12th, are we not?

2          THE COURTROOM DEPUTY:  Yes.

3          MR. ALVERSON:  Your Honor, respectfully, I'm not.

4   I'm going to be out of town.

5          THE COURT:  On the 12th?

6          MR. ALVERSON:  Yes, Your Honor.  I'm sorry about

7   that.

8          THE COURT:  Again, that's why we're doing this.

9          MR. ALVERSON:  Yeah.  Veterans' Day is the 11th;

10  right?

11         THE COURT:  Affirmative.

12         MR. ALVERSON:  Yeah.  I'm going to be out of town

13  that day.

14         THE COURT:  Madam Clerk, are we in trial the week of

15  November 8th, as of now?  I'm wondering if we could do this on

16  the 10th.

17         THE COURTROOM DEPUTY:  I do not see any trials.

18         THE COURT:  Okay.  Again, I want to possibly leave a

19  little bit more time for this case anyway.  So how's

20  November 10th at 10:00 a.m. for the hearing?

21         MR. ALVERSON:  That works for me, Your Honor.  Thank

22  you.

23         MR. KASHANI:  That's fine for me.  Thank you.

24         MR. MARKHAM:  Me too, Your Honor.

25         THE COURT:  All right.  And obviously that's Pacific

1  time.  I know you can -- you can do that computation,

2  Mr. Markham.

3          MR. MARKHAM:  Yes, I do.  I will.

4          THE COURT:  Now, I said by Zoom.  Mr. Markham,

5  you're on the East Coast.  Unless everybody really wants to do

6  it in person, we'll do it by Zoom.

7          MR. MARKHAM:  We'd prefer Zoom, obviously.

8          THE COURT:  Okay.  That's enough.

9          Okay.  So reviewing, deadline to file the motion,

10  October 8th.  Deadline for the opposition, October 22nd.

11  Deadline for the reply, October 29th.  Hearing, November 10th,

12  Wednesday, November 10th, at 10:00 a.m.

13          MR. ALVERSON:  Your Honor, is there a possibility --

14  and I'm not going to presume what you would do one way or the

15  other.  But is there a possibility that you may take the --

16  rule without oral argument?

17          THE COURT:  Yes.  Yes, depending on what your --

18  well, depending on what the parties say, sure.  If I don't --

19  I'm not going to have an oral argument just for the sake of

20  having oral argument.  As much as I like all of you counsel,

21  I'm not going to waste everybody's time and my time.  If it's

22  clear on the papers how to proceed, I'll do that.

23          And, likewise, if you reach some sort of a

24  stipulation, God forbid, that gives us a path forward

25  procedurally, whether it resolves the whole case or resolves

1    some claims and leaves other claims to be tried, if you can

2    reach that agreement and proposed schedule, I'd be happy to

3    consider that.  So try to head in that direction, if you can.

4            Okay.  That accomplishes what I wanted to accomplish

5    at this status conference.

6            Mr. Markham, I'll start with you.  What else do we

7    need to do here today?

8            MR. MARKHAM:  Nothing for the plaintiffs,

9    Your Honor.  Thank you.

10           THE COURT:  Very well.

11           Mr. Kashani?

12           MR. KASHANI:  Nothing, Your Honor.  I just have two

13   comments.

14           First, I like Mr. Markham's Queen Anne chairs.  I

15   think those are very nice.

16           And, second -- and I only say this because my wife

17   is a fashion designer -- that is a very nice tie, Your Honor.

18           THE COURT:  Oh, mine?  Thank you.

19           MR. KASHANI:  I only say this because my wife's a

20   fashion designer.  She's trained me to spot those things.

21           MR. MARKHAM:  So just if I can respond very briefly.

22   I've been doing battle with Mr. Kashani now for about four

23   years.  That's the first time he's ever complimented me.  I'm

24   going to order that transcript.

25           THE COURT:  Well, I may order it as well just for

```
 1   the flattery.

 2             Okay.  Anything substantive, Mr. Kashani?

 3             MR. KASHANI:  No, Your Honor.  We're fine.  We'll

 4   get it done.

 5             THE COURT:  All right.  Mr. Alverson, anything else

 6   on your end?

 7             MR. ALVERSON:  No, Your Honor.  Thank you for your

 8   time.

 9             THE COURT:  Okay.  Thank you all very much.  Have a

10   great rest of the day and a good weekend.  I look forward to

11   seeing your respective papers.

12             MR. MARKHAM:  Thank you, Your Honor.

13             THE COURTROOM DEPUTY:  Court is adjourned.

14             (Proceedings concluded at 11:35 a.m.)

15

16

17

18

19

20

21

22

23

24

25
```

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5

6            I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17               DATED THIS 30TH DAY OF SEPTEMBER, 2021.

18

19

20               /S/ MYRA L. PONCE
                 _____
21               MYRA L. PONCE, CSR NO. 11544, CRR, RDR
                 FEDERAL OFFICIAL COURT REPORTER
22

23

24

25

**UNITED STATES DISTRICT COURT**