1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3         EASTERN DIVISION-RIVERSIDE

4               - - -

5    HONORABLE JOHN W. HOLCOMB, DISTRICT JUDGE PRESIDING

6               - - -

7  ALTERNATE HEALTH USA INC., et al., )
                                       )
8                     Plaintiffs,  )
                                       )
9           vs.                    )   No. SACV 17-1887-JWH
                                       )
10 PAUL EDALAT, et al.,            )
                                       )
11                    Defendants.  )
   _____)

12

13           REPORTER'S TRANSCRIPT OF MOTION PROCEEDINGS

14                  Riverside, California

15               Tuesday, November 9, 2021

16                    10:00 a.m.

17

18

19

20

21

22           PHYLLIS A. PRESTON, CSR, FCRR
             Federal Official Court Reporter
23           United States District Court
                  3470 Twelfth Street
24           Riverside, California 92501
                  stenojag@aol.com

25

```
 1   APPEARANCES BY ZOOM:

 2

 3   For Alternate Health, et al.:

 4                       MARKHAM READ ZERNER LLC
                         BY:  JOHN MARKHAM
 5                       One Commercial Wharf West
                         Boston, Massachusetts 02110
 6

 7

 8   For Paul Edalat:

 9                       SAIED KASHANI LAW OFFICES
                         BY:  SAIED KASHANI
10                       800 West First Street, Suite 400
                         Los Angeles, California 90012
11

12

13   For Computershare:

14                       LESNICK PRINCE & PAPPAS LLP
                         BY:  DAVID ALVERSON
15                       315 West 9th Street, Suite 705
                         Los Angeles, California 90015
16

17

18

19

20

21

22

23

24

25
```

```
 1              TUESDAY, NOVEMBER 9, 2021; RIVERSIDE, CALIFORNIA

 2                              -o0o-

 3              THE CLERK:  This Court is now in session.  The

 4    Honorable John W. Holcomb, United States District Judge,

 5    presiding.                                                    10:00

 6              Calling Case No. SACV-17-1887, Alternate Health USA

 7    Inc., et al., v. Paul Edalat.

 8              Counsel, if I can have you please state your name for

 9    the record starting with plaintiffs' counsel.

10              MR. MARKHAM:  Yes.  John Markham for all the        10:00

11    plaintiffs.  Good morning, Your Honor.

12              THE COURT:  Good morning, Mr. Markham.

13              MR. KASHANI:  Saied Kashani for the defendants and

14    cross-complainants Edalat, Barghi, Olivia Karpinski, and

15    Sentar.                                                       10:00

16              THE COURT:  All right.  Good morning, Mr. Kashani.

17              MR. KASHANI:  Good morning, sir.

18              MR. ALVERSON:  Good morning, Your Honor.  David

19    Alverson on behalf of counter-defendant Computershare Investor

20    Services, Inc.                                                10:01

21              THE COURT:  And good morning to you, Mr. Alverson.

22              All right.  This is a hearing on a so-called joint

23    motion to dismiss.  I know we had a hearing a month or month

24    and a half ago to talk about this matter and to tee up the

25    briefing schedule on this motion.                             10:01
```

1          You've presented some very interesting issues and

2   problems.  I haven't made up my mind about what to do.  I

3   really wanted to talk to you counsel here today.  It seems to

4   me there is a whole spectrum of ways that we could proceed.

5   Everything from -- I think as Mr. Kashani and his clients would        10:01

6   prefer is simply go to trial relatively soon on the two claims

7   that remain -- seek to be -- that the parties seek to -- the

8   moving parties seek to have remain as against Computershare.

9   That's sort of on one end of the spectrum.

10          On the other end of the spectrum, what Computershare        10:02

11  has asked for is I think seven -- if I counted right, seven

12  different conditions to be imposed which would involve, among

13  other things, taking more discovery before we go to trial on

14  those two remaining claims.

15          And then, of course, this isn't linear.  There is        10:02

16  lots of other things that I could do and I'm thinking about.

17  But as I said, I haven't decided.  To be transparent, one of

18  the things that I'm considering is a conditional dismissal --

19  or consider it this way, conditioning the dismissal that the

20  moving parties desire on a dismissal without prejudice of the        10:02

21  two claims against Computershare which could be refiled in a

22  court of competent jurisdiction perhaps after a cooling off

23  period or something like that.

24          So that option would involve, to flesh it out a

25  little bit, as I said, dismissing the claims that the moving        10:03

1    parties seek to have dismissed on the terms that they seek so

2    long as they also -- so long as the counterclaimants dismiss

3    without prejudice the claims against Computershare.

4              So that would be an option.  You could do that or you

5    could -- if the moving parties don't want to do that, we'll go          10:03

6    to trial on everything.  There simply won't be a dismissal.

7              And there are lots of other ways to go as well,

8    probably things I haven't even thought of.  So I haven't made

9    up my mind.  But with that long lead-in, I want to talk to you

10   all about these various options and the underlying facts and           10:03

11   circumstances.

12             So let me start with this:  As I understand it, there

13   is no written settlement agreement between and among the moving

14   parties.  Mr. Kashani and Mr. Markham, I think I see you both

15   nodding, correct?                                                       10:04

16             MR. MARKHAM:  Yes, Your Honor, that is correct.

17             THE COURT:  Is there any memorandum whatsoever?  I

18   know you haven't -- you've said there is no settlement

19   agreement, but is there a memorandum?  Is there an exchange of

20   emails?  For example, let's say one of you went rogue and said,        10:04

21   well, we didn't really have a deal, what would the other one

22   point to to say, well, yes, we do?

23             Mr. Markham, let me start with you.

24             MR. MARKHAM:  The recitals in the joint motion where

25   both of us have signed in the pleadings to this Court stating          10:04

```
 1   that we agree to dismiss our claims against each other with
 2   prejudice and without costs, we believe that would be
 3   enforceable.  I never really thought to look for them.  I
 4   apologize.  I suppose I should have.  But I'm pretty sure that
 5   Saied Kashani and I exchanged emails about settlement, but I      10:05
 6   don't think that those would be as important as the fact that
 7   both as counsel have signed on to a representation which
 8   obviously binds our clients under 801(d)(2)(B) and (C) where
 9   we're representative of our clients reciting there was an
10   agreement to settle.                                             10:05
11            THE COURT:  Mr. Kashani, I want to hear from you too.
12            But let me just follow-up with you, Mr. Markham, on
13   one point.  You raised something that just occurred to me, and
14   I don't know the answer to it.  Can this settlement bind the
15   parties if they haven't signed anything?  Some of these         10:05
16   parties, for example, are individuals.
17            MR. MARKHAM:  To the extent that the parties
18   represented by me -- they -- I spoke for them and said I was
19   speaking for them in the settlement motion paper where there is
20   recital as to the terms of the settlement with prejudice and    10:06
21   without costs, the consideration being that the other side
22   would dismiss their claims with prejudice without costs.  A
23   lawyer speaking for his clients to a court binds the clients.
24   So that would be our position.
25            THE COURT:  Thank you very much.                       10:06
```

```
 1              Mr. Kashani, did you want to add anything to the
 2    issues?
 3              MR. KASHANI:  I agree with that.  I consider all my
 4    clients bound.  This is something we've been working on for
 5    years, as we pointed out in the papers, and shouldn't have come   10:06
 6    as any surprise to anyone.
 7              THE COURT:  Okay.  Next question:  What litigation
 8    remains pending between the parties?  I think there was a
 9    reference to a case that's pending -- is it before Judge Staton
10    on some issues?                                                   10:07
11              Mr. Kashani is nodding, so I'll ask you to respond.
12              MR. KASHANI:  That's correct, Your Honor.  And that
13    is not affected by this dismissal one way or another.
14              THE COURT:  I take it Computershare is not a party to
15    that case that Judge Staton is handling, correct?                 10:07
16              MR. KASHANI:  Correct.
17              THE COURT:  Now, is there other litigation pending as
18    well?  I seem to remember from our first hearing that there --
19    somebody told me this was one piece of the whole complex web of
20    cases, my words, not yours.                                       10:07
21              Mr. Kashani, is there other litigation between and
22    among these parties?
23              MR. KASHANI:  Not with Alternate Health.  Other than
24    the case before Judge Staton, there are no other cases that I'm
25    aware of that involve Alternate Health or the Alternate Health    10:07
```

1   parties, meaning --

2           THE COURT:  You cut out for one second there.  Say

3   that last two sentences again, please.

4           MR. KASHANI:  Other than the case before Judge

5   Staton, there are no other cases pending between my clients and      10:07

6   Alternate Health, Mr. Mann, or Dr. Murphy.  Now, my colleague,

7   Mr. Markham, does represent other parties that are not related

8   to Alternate Health in other cases that involve Mr. Edalat, but

9   those do not involve Alternate Health, Mann, or Murphy.

10          THE COURT:  Okay.  Mr. Markham, you concur?                   10:08

11          MR. MARKHAM:  I do.

12          MR. ALVERSON:  May I ask about the *Vivera* case?

13  Because I've heard that discussed before.  That was a state

14  court case that was set forth in papers filed with this Court

15  that the adjudication of which had an impact on that case.  I       10:08

16  understand that there was a trial.  I'm not aware of whether

17  there is an appeal or not, so if they could speak to that.

18          MR. MARKHAM:  Yes, I can address that.  That case is

19  over.  Vivera sued AHC on an interpretation of a contract

20  between them.  AHC counterclaimant, that went to trial in           10:08

21  January of 2020 in front of Judge Fruin, I believe, in state

22  court.  He heard the evidence, most of which is stipulated, and

23  he issued a ruling in favor of AHC in terms of the issue, which

24  was the scope of a license agreement between AHC and Vivera or

25  a transferor of Vivera, and that went up to appeal -- the Court     10:09

1  of Appeals, and about four months ago they ruled in favor of

2  AHC.  That case is over.  It was not subsequently appealed.

3  There is nothing left to it.

4          THE COURT:  Mr. Kashani, did you want to add anything

5  in that regard?                                                10:09

6          MR. KASHANI:  It was a question of scope of the

7  license granted which license was an issue in this case.  It

8  was a question of contract interpretation.  The Court held in

9  favor of AHC.  That ruling is final and binding on the parties.

10         THE COURT:  Mr. Alverson, I just want to confirm your   10:10

11  client, Computershare, is not a party to any other piece of

12  litigation involving these same parties, correct?

13         MR. ALVERSON:  That's correct, Your Honor.

14         THE COURT:  And Computershare is not involved in any

15  litigation that pertains in any way to this case, whether or   10:10

16  not it involves the same parties, correct?

17         MR. ALVERSON:  That's correct, Your Honor.

18         THE COURT:  Okay.  I want to understand a little bit

19  better the so-called remaining claims, that is, Claims 4 and 5

20  of the operative counterclaim.  I think it's the fourth amended  10:10

21  counterclaim.

22         Mr. Kashani, is that correct?

23         MR. KASHANI:  Yes.

24         THE COURT:  And that was filed, I believe,

25  November 13th, 2019.  Did I get that right as well?            10:10

1          MR. KASHANI:  I want to say 2018.  It was 2018.  The

2    cross-complaint to which I have been referring in my papers was

3    filed in 2018.

4          THE COURT:  I've got a Document 97, ECF 97; is that

5    the correct operative pleading for the counterclaim?                    10:11

6          MR. ALVERSON:  That's the fourth amended

7    counterclaim, I believe.

8          MR. KASHANI:  Yes, that is correct.  But the claim

9    against -- let me put it this way:  The claim against

10   Computershare was unchanged from the complaint filed in              10:11

11   December of 2018.  But that is correct, the operative

12   counterclaim was filed in 2019.  I believe the change in that

13   was to bring in Dr. Murphy on an alter ego basis.

14         THE COURT:  I understand.  Okay.  Thank you.  That's

15   helpful.                                                             10:11

16         The point of my asking is I just wanted to make sure

17   I've got the right language in front of me that recites the

18   claim that is being made against Computershare.  So it appears

19   that I do.

20         So we're talking about the so-called fourth cause of         10:11

21   action and fifth cause of action.  Now, both of these claims

22   are asserted against Computershare, and then for the fourth

23   also AHC and Murphy, and the fifth also against AHC and AHUS.

24   Now, is it correct that the counterclaimants on these two

25   claims are all of the counterclaimants listed in the pleading?      10:12

1          MR. KASHANI:  They are.  But as I told Your Honor, if

2   the dismissal is granted without conditions essentially, then

3   Olivia Karpinski and Farah Barghi will drop their counterclaims

4   against Computershare.  What these claims against Computershare

5   pertain to are very simply stated.                                    10:12

6          And it's a case, frankly, that I've tried many times

7   against various parties, either the issuer or the transfer

8   agent, whoever it is.  These were shares that were subject to

9   let's call it registration or removal of a legend to allow

10  sale.                                                                 10:13

11         My client, it is undisputed that Paul Edalat tendered

12  1.6 million shares to Computershare in August of 2017 and asked

13  that the legend be removed.  Computershare refused to remove

14  the legend.  The sole stated reason they gave ever to my client

15  was that the issuer refused permission to remove the legend.          10:13

16  That's the only explanation they ever gave my client.  Now,

17  since then in the litigation, they have further explanation.

18         But we contend that under the code, both in Canada

19  and the UCC, which is virtually word-for-word identical, they

20  don't have that right.  The issuer's approval is not required.        10:13

21  And if their refusal exposes them to damages, which in this

22  case is the loss of ability to sell the shares at that time at

23  the market price, and now the market price is zero, so

24  obviously there is a substantial loss.  I think it dropped from

25  $3 a share or $4 a share to zero times 1.7 million shares,            10:14

```
 1    that's a lot of shares.  So that's our position.

 2              And I would like to add something else.

 3    Computershare has asserted in its answer in this case that

 4    their basis for refusing to remove the legend or register was

 5    fraud alleged on the part of Alternate Health.  However, we      10:14

 6    have seen now, based on documents that Computershare made

 7    available for the very first time on this motion, that the

 8    claim of fraud by Alternate Health was not raised or even

 9    stated to Computershare until two months after they denied

10    registration.                                                     10:14

11              So the sequence of events is August 2017 my client

12    tenders the shares.  Computershare contacts Alternate Health by

13    email.  Alternate Health emails back we won't give permission,

14    period, nothing else, no explanation, just we won't give

15    permission.  Computershare tells my client in writing we will    10:15

16    not remove the legend because the issuer won't give permission.

17              Then two months later in November of 2017 Alternate

18    Health contacts Computershare and says, we believe there is an

19    issue of fraud and, therefore, we ask you to freeze these

20    shares.                                                          10:15

21              So the allegation of fraud did not form part of their

22    decision to deny registration.  So I'm kind of wondering what

23    we're all talking about here, because Computershare's whole

24    basis on this motion is we need help establishing fraud on the

25    part of Edalat.  As I understand it, that's their position.  We  10:15
```

1   can't do it alone.  We need Alternate Health in the case to

2   help us establish that.

3         What I'm saying is, based on the documents they

4   provided, that formed no part of their decision.  So, you know,

5   when this goes to trial, my first step is a motion in limine to        10:15

6   prevent Computershare from asserting fraud as a basis for

7   denying this registration because that wasn't stated.

8         But long story short, that's our claim against

9   Computershare legally, and we've cited the authorities in the

10  papers.  Our position is the lack of consent of the issuer is        10:16

11  not a grounds to deny registration, and so that's our -- and

12  legally Computershare has the same liability as the issuer.

13  And we've been making the same claim now for three years.

14        THE COURT:  Let me follow up on something.  Forgive

15  me for interrupting you.  So from the perspective of your        10:16

16  clients on these claims against Computershare, you said in July

17  of -- what was it, July or August of 2017, your clients,

18  counterclaimants, made a demand on Computershare to register or

19  remove the legend -- I may have those words not quite correct

20  -- but to take certain actions with respect to the securities,        10:17

21  and Computershare did not do that?

22        MR. KASHANI:  Correct.

23        THE COURT:  From your client's perspective, why did

24  Computershare not do that?

25        MR. KASHANI:  Well, we know why they didn't do it        10:17

```
 1   initially, because they now for the first time produced the

 2   documents.

 3            THE COURT:  Just give me the reason.  What's the

 4   reason from your client's perspective?

 5            MR. KASHANI:  The reason is very clear.  The reason      10:17

 6   is they contacted the issuer after we requested, let's call it

 7   registration, and the answer came back from the issuer we do

 8   not give permission.

 9            THE COURT:  And to be clear, the issuer is AHC,

10   correct?                                                         10:17

11            MR. KASHANI:  Issuer is AHC, yes.  And that is the

12   only reason given.  We do not give permission, period.  No

13   claim of fraud, nothing else.

14            THE COURT:  Got it.  So the purpose of these

15   questions is just for me to understand the nature and scope of  10:17

16   the claims that in your perfect world, Mr. Kashani, in your

17   client's perfect world what we would try here shortly.  If I

18   give 100 percent, I'm trying to figure out what the world looks

19   like.

20            MR. KASHANI:  And it's a very simple case.             10:18

21            THE COURT:  Okay.  Let me turn to Mr. Alverson.  I

22   want to hear from you, and I've got a number of questions, but

23   let's, please, focus just on this one.  I want to understand

24   the scope of the claim.  From your client's perspective, what

25   does this case look like in Mr. Kashani's perfect world of, you  10:18
```

```
 1   know, we go to trial relatively soon just on these two claims,

 2   and I don't impose any other of the conditions that you have

 3   requested?  Let's just go down that hypothetical path.  What do

 4   those claims look like from your standpoint?

 5           MR. ALVERSON:  Sure, Your Honor.  So let me back up.      10:18

 6   And I think I've set this forth in our papers that Alternate

 7   Health is the principal that hired Computershare as its

 8   transfer agent.  What happened was we received -- Computershare

 9   received some paperwork and a share certificate requesting that

10   the restrictive legend be removed from the share certificate.   10:19

11           Computershare communicated this transfer or

12   restrictive legend removal request to it's principal, Alternate

13   Health.  Alternate Health's response was, we do not approve of

14   the legend and return the materials back to Mr. Edalat or his

15   agent.                                                          10:19

16           Although it's correct that at that time the denial is

17   communicated from Alternate Health to Computershare, the reason

18   for Alternate Health's denial wasn't communicated to

19   Computershare.  It's very clear the reason why Alternate Health

20   denied and instructed Computershare not to remove the legend.   10:19

21   And that became evident very clearly because within weeks

22   Alternate Health filed this lawsuit for fraud against

23   Mr. Edalat claiming, among other things, that he procured these

24   shares via fraud.  And then shortly after that Alternate Health

25   notified Computershare of this lawsuit and, essentially, the    10:20
```

1   reasons why it instructed Computershare not to remove the

2   restrictive legend.

3           So, in our mind, it doesn't matter that at the time

4   Alternate Health refused to remove the restrictive legend and

5   instructed Computershare not to do so that that wasn't -- that    10:20

6   that belief of fraud wasn't communicated at the time.  Look,

7   you know, if Mr. Edalat --

8           THE COURT:  Okay.  I got it.  You don't need to argue

9   that.  I'm not going to make any decisions on that.

10          MR. ALVERSON:  I understand.  But that's our point of     10:20

11  view.  And so the fact of whether Mr. Edalat procured these

12  shares via fraud or not is a huge issue.  It's a very, very

13  important issue in this case.

14          THE COURT:  Okay.  So let's say, again, in my

15  hypothetical world here, we go to trial on these two claims.      10:21

16  Nobody has said anything about Claim 5, the declaratory and

17  equitable relief claim so-called.  I assume it's sort of

18  co-terminus to what both of you have just described.

19          Mr. Kashani, you're nodding.  Okay.  That's good.

20          So, Mr. Alverson, let's say we go to trial on these       10:21

21  claims.  I think it's undisputed that -- correct me if I'm

22  wrong.  It's undisputed that counterclaimants made a demand on

23  Computershare and AHC to take the steps with respect to these

24  securities, remove the legend, whatever it may be, and that

25  they did not do that.  That's not disputed.                       10:22

 1          The issue is, is there any liability that flows from

 2   that?  Let me stick with Mr. Alverson.

 3          Mr. Kashani, I do want to hear from you.

 4          But let me stick with Mr. Alverson.  Is that correct?

 5          MR. ALVERSON:  Yes.                                    10:22

 6          THE COURT:  What's the reason that there is no

 7   liability that would flow from that?

 8          MR. ALVERSON:  Well, if you look at the statute, the

 9   statute that's being sued under, the Securities Transfer Act of

10   Canada, Section 86, amongst other things, one of the           10:22

11   requirements for the registration is that the transfer be

12   rightful.

13          THE COURT:  Okay.

14          MR. ALVERSON:  So there is language under the statute

15   where -- and then it also -- I mean, there is obviously other  10:22

16   defenses, like equitable defenses like unclean hands.  So if

17   somebody stole shares and presented them to Computershare to

18   transfer into their name, there is lots of reasons under the

19   statute and equitably and others why there would be no

20   liability for refusing to do so.                               10:23

21          THE COURT:  I understand and I appreciate that.

22          Let's say that the finder of fact determines that the

23   failure to take the steps as requested with respect to these

24   securities was not rightful and none of these affirmative

25   defenses applies; is it clear what the damages are?  Is it just 10:23

1   a matter of taking the number of shares times the diminution in

2   price?

3          MR. ALVERSON:  Are you asking me, Your Honor?

4          THE COURT:  Yes, sticking with you, Mr. Alverson.

5          MR. ALVERSON:  I think -- and that is one of the                    10:23

6   reasons we would want an expert.  I think there is issues with

7   regards to what would be the appropriate price.  If there is

8   1.6 million shares that are trying to be sold, and depending on

9   what the price is and what the volume is of the daily trading

10  every day, you know, could all of them have been sold at the     10:24

11  same time for a certain price?  Would they have had to have

12  been spread out in order to not depress the market?

13         And also one other interesting point I would like to

14  raise, Your Honor, is that, you know, one of the claims -- one

15  of the -- Mr. Edalat has, essentially, in his counterclaim       10:24

16  against Alternate Health, basically taken the position that

17  Mr. Mann and/or Mr. Murphy engaged in fraud which as a result

18  artificially inflated the price of this stock and now --

19         THE COURT:  I got to cut you off.  You're getting a

20  little far afield.                                               10:24

21         MR. ALVERSON:  But there would be --

22         THE COURT:  Hold on, please, Mr. Alverson.

23         MR. ALVERSON:  Yes, Your Honor.

24         THE COURT:  The question was narrow.  The number set

25  forth in the counterclaim I think is $6 million.  Is that        10:24

1   ballpark for sort of the worst case scenario for your clients?

2   I mean, that is, is it -- again, is that ballpark or is the

3   worst case scenario 60 million or 600 million?

4           MR. ALVERSON:  I mean, I guess I've seen -- I've seen

5   the share price at that time I guess -- I think it's like -- it          10:25

6   was $2 a share, I think.  I would say $4 million, but certainly

7   no more than 6.

8           THE COURT:  Okay.  I'm just trying to get the right

9   order.

10          MR. ALVERSON:  Yes.                                               10:25

11          THE COURT:   Okay.  Thank you.

12          Mr. Kashani, I have a few more questions for you.  Do

13  you agree that, as Mr. Alverson said, we would look to, I think

14  it's Section 86 of the Securities Transfer Act of British

15  Columbia, for -- to inform what it was -- in your world, in       10:25

16  your version of the facts of the law, inform us as to what it

17  was that Computershare should have done when it received the

18  demand from counterclaimants?

19          MR. KASHANI:  Yes, that and Section 94.  Section 94

20  imposes the same liability on Computershare as on the issuer.          10:26

21          THE COURT:  To be clear, it's Section 86 and 94 of

22  that --

23          MR. KASHANI:  I believe so, yes.

24          THE COURT:  -- of that Canadian statute?

25          MR. KASHANI:  Correct.  But I might point out that          10:26

```
 1    it's identical to the UCC provisions under Article II.

 2           THE COURT:  So that's where I'm going.  I haven't

 3    focused on this before.  I think we did have a discussion about

 4    jurisdiction in one of the hearings within the past -- within

 5    the past year.  But let me say it this way:  If this claim is        10:26

 6    arising under a Canadian statute, why is this claim not tried

 7    in Canada?

 8           MR. KASHANI:  Well, they never raised that as grounds

 9    to transfer the case.  There is lots of things they never

10    raised.  They never designated an expert.  They never filed        10:27

11    cross-complaints.  All these things they want to do, they now

12    want to do in a highly prejudicial manner to my client.  Let's

13    just take the expert witness.

14           THE COURT:  Okay.  You're going far afield.  I'm

15    going to give everybody a chance to say whatever it is they       10:27

16    wish to say at the end, but I just want to confirm.  So isn't

17    there a comity issue here?  I mean, why shouldn't -- let me

18    just state it this way:  Why should I not refrain from trying

19    this case for these two remaining claims given that we're

20    talking Canadian law?                                             10:27

21           MR. KASHANI:  Well, there were -- again, that issue

22    wasn't raised.  I would say let's wait.  But also there is

23    substantial contacts with this jurisdiction.  The shareholders

24    are here.  The company is here.  The company has a headquarters

25    in Los Angeles.  Computershare contracted with the company in     10:28
```

```
 1   Los Angeles.  They knew that.  The company has -- when the
 2   shares were initially issued and the transfer agent was
 3   engaged, the company listed headquarters in Toronto, Los
 4   Angeles, Venice, and San Antonio.  So they knew they were
 5   dealing with a company.                                       10:28
 6          The company also always had from the beginning a U.S.
 7   listing as well as a Canadian listing.  So it's not like
 8   Computershare dealt entirely with a company in Toronto.  They
 9   received the communications which occasioned this problem from
10   Los Angeles, from Howard Mann, from the company in Los Angeles, 10:28
11   not from Toronto.
12          So when they -- if they were to suddenly say now,
13   well, this should be in Canada, well, you know, we've been
14   litigating for three years in Los Angeles, I think its a little
15   late to make that claim.  They have sufficient contacts with    10:28
16   Los Angeles to assert jurisdiction over them here.
17          You know, they -- if they didn't want to deal with a
18   U.S. court, they shouldn't have contracted with a U.S. based
19   company, which is what they did.  You know, the company lists
20   its headquarters, as I said, in Venice, San Antonio, and        10:29
21   Toronto.  So they knew that from the beginning before
22   Mr. Edalat even came on the scene.  They handled share
23   transfers for many other U.S. based investors.
24          THE COURT:  Okay.  Thank you.  I understand.
25          MR. ALVERSON:  I'm sorry.  May I respond briefly,        10:29
```

```
1    Your Honor?

2          THE COURT:  Briefly, go ahead.

3          MR. ALVERSON:  Alternate Health is a Canadian

4    corporation.  This case, as you've rightly identified, with

5    just these two remaining claims is a completely different case,    10:29

6    a completely different looking case than the case Mr. Kashani

7    described where Alternate Health sued Edalat, Edalat sued

8    Alternate Health --

9          THE COURT:  Mr. Alverson, I got it.

10         MR. ALVERSON:  Thank you, Your Honor.                        10:30

11         THE COURT:  I will give you -- as I said, I will give

12   everybody a chance to say what they wish to say.  Actually,

13   Mr. Alverson, that's a good segue to where I want to go next.

14         Mr. Kashani, as I said, I haven't decided what I'm

15   going to do, but I am, of course, looking at the standards that   10:30

16   I am to apply.  Rule 41(a)(2) says that I can and I think

17   should dismiss claims on a motion, quote, *on terms that the*

18   *Court considers proper*, end quote.

19         And then there are a number of cases in the Ninth

20   Circuit and elsewhere that talk about -- flesh that out a        10:30

21   little bit.  There is, for example, the *Stevedoring Services*

22   case that says, in essence, I can dismiss claims, quote, *so*

23   *long as defendant will not be prejudiced or unfairly affected*

24   *by dismissal*, end quote.

25         Mr. Alverson, in his papers and just now, made an          10:31
```

1    argument, and it's a compelling argument, that the world has

2    changed.  The case that will go forward, if I do what you want

3    me to do, is very different than the one that was going to go

4    forward before your clients and Mr. Markham's clients reached

5    their settlement.                                            10:31

6            Why shouldn't there be some conditions that would let

7    Mr. Alverson and his client react to what has happened, whether

8    it's taking some discovery, whether it's allowing the parties,

9    including your client, your clients, to provide expert reports?

10   Why is that not appropriate for there to be some conditions?   10:31

11           MR. KASHANI:  Well, I think, first of all, just

12   responding to one thing Mr. Alverson said, the lead plaintiff

13   in the case is Alternate Health USA, Inc., which is a Delaware

14   corporation, and that's the lead plaintiff.  And Alternate

15   Health, Inc., I believe is also a U.S. corporation.  So two of   10:32

16   the three plaintiffs are U.S. corporations.  So the notion that

17   this is solely a Canadian corporation is I think a little off

18   in terms of --

19           THE COURT:  Let me just respond and kind of tell you

20   what I'm thinking.  I think you're absolutely right.  It didn't   10:32

21   give me any pause to know that this claim -- these two claims

22   were in the counterclaim, that there is this Canadian aspect to

23   this case.  Given the other parties and the other claims, I

24   think this just kind of got rolled in.  And as I said, I didn't

25   bat an eye at this Canadian piece.                           10:32

1          Now that everything else is potentially gone and all

2     we have left is this Canadian piece, I'll tell you it gives me

3     pause about trying it here.  So let's please return to my

4     question, and again, playing devil's advocate, do you not agree

5     that some conditions are appropriate to allow Computershare to          10:33

6     respond and react as essentially a defendant in this case, a

7     counter-defendant, given how the landscape has changed so

8     dramatically?  Can you really -- can you really defend

9     proceeding with just these two claims relatively soon with no

10    additional discovery, as I said, expert witnesses or other          10:33

11    conditions?

12          MR. KASHANI:  Well, I would say this:  No condition

13    imposed -- the Court can impose conditions.  I can think of two

14    right off the bat which are appropriate.  For example,

15    Mr. Alverson should have the right to use Alternate Health's          10:34

16    exhibit list, Alternate Health's witness list, because they may

17    have thought, okay, we're going into trial.  And that's just in

18    the rules that if someone designates witnesses or exhibits and

19    then that person pulls out of the case for whatever reason, I

20    think it would be appropriate for another party to say, well, I          10:34

21    was relying on those lists, so I'm going to use those lists.

22          Discovery and experts, though, present a completely

23    different issue and let me explain why.  We need to consider

24    equity here.  We need to consider fairness.  And we need to

25    consider the balance of power between these entities.          10:34

1          Computershare has unlimited resources.  My client has

2     no resources at this time.  I think I've put in the papers

3     there has just been a sizable judgment entered against this

4     corporation for nonpayment of rent.  That's how bad financial

5     shape he's in.                                                10:34

6          Now, Computershare obviously wants to take advantage

7     of that.  And the Court says, well, you can designate an expert

8     as well.  No, we can't, because my client can't afford it at

9     this point.  We can't go through unlimited depositions that

10    Computershare wants to do.  All of this is highly prejudicial  10:35

11    to my client.

12         So I would say that an initial matter -- and the

13    Court had mentioned this -- that the Court should give the

14    opportunity to go forward with the case as-is as opposed to

15    dismissal.  We should have that choice if the Court imposes    10:35

16    conditions.  Because the case was teed up for trial, and it was

17    going to trial, and the Court should at least give us -- if the

18    Court is inclined to impose conditions, the Court should give

19    us the choice to accept those conditions or go forward as-is.

20    And we may decide to just go forward as-is.                    10:35

21         THE COURT:  Well, let me -- I want to hear the rest,

22    but let me follow up on that and make sure I understand you.

23    So one of the options that I'm considering, as I said at the

24    beginning of this hearing, is giving the moving parties an

25    option to go one of two paths.                                 10:36

1          One path is go to trial.  All the claims are what

2     they are.  We set a trial date, and we'll probably need another

3     final pretrial conference, and we'll just go to trial on all

4     the claims.  I mean, if someone chooses not to defend a claim,

5     so be it.  But we will just go to trial on everything.  Or I'll          10:36

6     grant the motion to dismiss the claims as requested in the

7     motion so long as the two remaining claims, Claims 4 and 5 in

8     the counterclaim against Computershare, are likewise dismissed

9     without prejudice.  I threw an idea out there of a cooling off

10    period before they can be refiled, but put that aside.  So          10:37

11    there's those two paths.

12          If I were to do that, I think you'd want to confer

13    with Mr. Markham and have the parties confer, but from your

14    perspective can you tell me, well, I'm definitely going this

15    way or that way?          10:37

16          MR. KASHANI:  Well, if the Court -- just to protect

17    my client, I can say right now if the Court is inclined to

18    allow Computershare to do all the discovery they should have

19    done before and to appoint experts that they should have done

20    before, my client does not have the financial resources to          10:37

21    respond to that.  My client does have the ability to go to

22    trial because we were set to go to trial.

23          This was a last minute settlement.  I mean, it came

24    together very much at the last minute regardless of what

25    Mr. Alverson has insinuated.  This is -- while it's been          10:37

1   discussed, various conditions were imposed by either side prior

2   to the date, and finally all the conditions went away.

3        And there was a phone call.  I remember it well

4   because I was actually outdoors when I got it, and the

5   connection wasn't very good, but we communicated and came to          10:38

6   this agreement.  So this was a last minute thing.  But we were

7   ready to go to trial, and we will go to trial.  And

8   Computershare has to go to trial because they were obviously

9   ready to go to trial.  They weren't jumping up and down and

10  talking about Canada until this happened.                            10:38

11       So we should be given that option in fairness

12  because, I implore Your Honor, this is highly prejudicial to my

13  client.  As we pointed out in the papers, Computershare had

14  fair warning.  You know, I didn't put in some of the crude

15  language my client used in describing this situation.  You          10:38

16  know, my client is a little bit -- Mr. Edalat is a little bit

17  like our last president.  You know, he has a lot of bluster,

18  but, you know, every once in a while there is a flash of

19  brilliance.

20       And in this case he did tell them, you know, hey,            10:38

21  this is what's going to happen.  You better be prepared.  In

22  fact, the exact words he used to Mr. Alverson's face was, he

23  said, *your client is going to write the check so you better be*

24  *ready because Howard Mann is going to leave you hanging on*

25  *this.*  And that was two years ago in Mr. Alverson's office, so     10:39

1   they had plenty of warning.

2           So for them to come now and say, oh, we didn't know,

3   this is surprising us, I don't accept that.  I don't think

4   that's credible.

5           So our position is if conditions beyond, you know,          10:39

6   allowing him to use the witness list, the document list, if

7   conditions beyond that are imposed, we would be inclined to go

8   to trial because we were prepared to do that and we can do

9   that.  And then no one can say that's unfair because everyone

10  was ready to do that when we were ready to do that.  And, you    10:39

11  know, the chips fall where they may, as Your Honor points out.

12          All these other conditions that Computershare

13  demands, for them to rethink the case, for them to go to

14  Canada, for them to appoint experts, all of these put them in a

15  better position than if we had simply gone to trial.  Because    10:40

16  if we had gone to trial, there would have been no depositions

17  because no one took any depositions.  If we had gone to trial,

18  there would be no expert because no one designated an expert,

19  although Mr. Alverson found one, apparently, but never

20  designated him.  And there would be no talk of Canada because    10:40

21  we would be here in Riverside.

22          So, you know, I'm opposed -- I think any conditions

23  that put Computershare in a better position than if we had

24  simply gone to trial are unfair.  The sole legitimate

25  complaint --                                                      10:40

```
 1              THE COURT:  Let me follow up on that.  But, I mean,
 2    your clients are in a better position as a result of the
 3    settlement, right?
 4              MR. KASHANI:  Well, Computershare can still raise all
 5    the defenses that they thought they had before.  No defenses          10:40
 6    are precluded.  They can call Mr. Mann.  He's local.
 7              THE COURT:  You're critical of Computershare.  You
 8    say you don't want Computershare to be in a better position
 9    than it would have been in if you'd simply gone to trial on
10    time.  But the way the -- in view of the settlement that your        10:41
11    clients have reached with Mr. Markham's clients, you are all in
12    a better position than you were if you'd just gone to trial.
13    So I guess I'm just saying I don't find that a very compelling
14    argument.
15              MR. KASHANI:  Well, I'm not sure -- let me clarify.        10:41
16    A better position -- well, settlements in theory are always
17    good, and that puts us in a better position in that sense, but
18    it doesn't put us in any better position vis-a-vis
19    Computershare, because Computershare has all the defenses that
20    they had last week or last month or two months ago.                 10:41
21              That Mr. Alverson may find it administratively, let
22    me put it that way, or logistically more difficult to present
23    those defenses because maybe he was relying on Mr. Markham to
24    do all the work, but that's a far cry from we need all this
25    discovery that wasn't taken.  They knew the case.  They knew        10:42
```

1    the defenses.  Nothing changed.  They took no discovery.  They

2    designated no experts.  So why now, when we're going to trial

3    on the same defenses, do they get to appoint that?  You know,

4    if Mr. Alverson felt an expert was needed before trial, which

5    he did, why didn't he designate one?  Why does he get to        10:42

6    designate one now?

7            If we went to trial with Mr. Markham and the case as

8    currently planned, there would be no expert witness.  So why

9    does he get an expert witness when we're going to trial on the

10   same claims, I mean, the same theories?  He's going to raise     10:42

11   the same defenses.

12           THE COURT:  Okay.  I understand your argument.  Thank

13   you very much.

14           Mr. Markham, I want to hear from you, please, on this

15   point of if I go with that one option where I make your -- the  10:42

16   dismissal of the claims involving your clients as requested in

17   the motion -- in the joint motion, if I condition that on

18   dismissal of the claims against Computershare without

19   prejudice, can you tell me at this point what your position

20   would be, what your preference would be, or do you need more    10:43

21   time to consult with your clients and Mr. Kashani?

22           MR. MARKHAM:  I understand.  You've made it clear.

23   If the condition of the dismissal of -- well, of my clients'

24   ability to dismiss its claim and obtain a dismissal of the

25   claims against it is that the other claims get delayed through  10:43

1    a dismissal without prejudice, I really don't have a dog in

2    that fight.

3            The other end of that spectrum, however, I certainly

4    have a dog in that fight, not a very nice one.  Compelling us,

5    Your Honor, to go to trial when we resolved the differences, as       10:44

6    Your Honor encouraged us to do, and I believe, Your Honor -- I

7    don't have the transcript -- I believe you said either, you

8    know, dispose of the case or narrow the issues, try to do that,

9    and we did.

10           And Mr. Kashani and I know and have been able to             10:44

11   evaluate what's going to happen, who can pay what to whom in a

12   way that we decided to come to that conclusion.  I think it

13   would be almost unworkable to make us present these claims.

14           I don't know what would prevent us from coming to an

15   understanding that I would get up in my opening statement and       10:44

16   say, we've resolved our differences, and then have Mr. Kashani

17   go second and say he resolved his differences, and then what

18   would be the situation?  Would the Court then say, okay, stop.

19   Jury, you can go home now because I'm going to, you know, undo

20   this and do something else and then dismiss?  I don't know.        10:44

21           To the extent that Your Honor is thinking about

22   either forcing us to go to trial or dismissing everything to

23   the extent that it's concerned with prejudice against

24   Computershare, while I don't have a dog in the latter fight, I

25   have to say Computershare had two years to do everything that      10:45

1    it was going to do.  And consistent with this Court's rightful

2    insistence that the rules be followed, when we were first in

3    front of Your Honor and Mr. Kashani said, well, I want to file

4    a motion for summary judgment because I think that would narrow

5    the issues, Your Honor quite correctly said, well, you've got        10:45

6    one day to do it because your time has run out.  I don't know

7    why we have morphed so far from that to allowing the parties to

8    kind of start over.

9            THE COURT:  Let me just follow up on that last point.

10   To be clear, what I said was, what do the rules say.  And just       10:46

11   by virtue of when we had the status conference and the rules,

12   there was but one day left.

13           MR. KASHANI:  I'm not -- and that's what the rules

14   say, and so I'm not at all --

15           THE COURT:  And that's your point, as I said, let's         10:46

16   stick to the rules and let's get this done.  That's your point,

17   right?

18           MR. MARKHAM:  Right.

19           THE COURT:  Okay.  Again, I don't want to -- sorry to

20   cut you off.  I do want to hear from all of you at the end.         10:46

21   Let me turn back to Mr. Alverson.

22           So I pressed Mr. Kashani on the various conditions

23   that I could impose.  Mr. Markham made a point right there at

24   the end that I wanted to raise with you, and this is another

25   thing that's been on my mind.  And that is, when I first saw        10:46

1   you all in January, I was not happy because you had

2   collectively not complied with Judge Carney's order to have a

3   settlement conference by a particular date.  And so I said I'm

4   not going to extend all the dates for the fifth or sixth time,

5   whatever it was, and we're just going to move forward.  And you     10:47

6   did.  Mr. Kashani made his motion.  You know, I worked it up

7   and decided it.  I think it was reasonably close.  It was a

8   legitimate motion.  I did deny it.  But that put us on track

9   for trial.

10       Why should I -- this is a long lead-up for why should     10:47

11  I all of a sudden now say, well, let's take a pause and impose

12  all these conditions?  Let's have some discovery.  I mean, you

13  parties wanted that about a year ago, and I said no because you

14  hadn't complied with the rules, and we were screaming toward a

15  trial.  We're still screaming toward a trial.  Why don't we     10:48

16  just continue -- why is it not appropriate to stick with the

17  path that we have been on and go to trial?

18       So, Mr. Alverson, I'm turning to you with that

19  question --

20       MR. ALVERSON:  Sure.     10:48

21       THE COURT:  -- or option.

22       MR. ALVERSON:  You know, my first answer is, as Your

23  Honor has identified, the scope and the posture of this case is

24  completely different now.  But let me back up a little bit.

25       If there is a question about, you know, what     10:48

1   Computershare did and why they didn't do anything, and Your

2   Honor touched on the January 2021 status conference where we

3   first appeared in front of you.  In March 2020 the parties

4   signed a stipulation about proceeding with depositions.  There

5   was an agreement that I think Alternate Health would go next          10:48

6   and then Edalat would go next.  There was a year-long squabble

7   between the two sides over who would go next.

8          Even when that stipulation was entered and filed with

9   the court, there was a disagreement amongst the language

10  because the last deposition that was taken was Mr. Kashani took      10:49

11  it of a third-party witness, and Mr. Kashani said, well, the

12  language in the stip only applied to party witnesses.

13         So there was this literally almost a year-long

14  dispute which started right before COVID hit.  Then COVID hit.

15  They're still going back and forth about whether Mann is going       10:49

16  to be taken or whether Edalat is going to be taken, and it's

17  literally this back and forth over months.

18         Meanwhile, COVID hits and there is issues whether we

19  can do these remotely or whether Mr. Edalat is willing to show

20  up remotely or whether there's a stay-at-home order.  So all         10:49

21  these logistical issues in the meantime in addition to this

22  dispute over who goes next, Mann and Murphy on the one hand or

23  Mr. Edalat.

24         Computershare is caught in the middle of this

25  continuous back and forth between the two main players here          10:50

1    about who is going to go next.  Okay.  And then Mr. Kashani

2    during that time, you know, he has to go to Iran, and so we

3    have to postpone the depositions once, and then he says that

4    again.

5              And then in the meantime also there is these other      10:50

6    side issues Mr. Kashani brings up about why these depositions

7    can't go forward.  He says Mr. Markham's clients are sending

8    threats and threatening packages and so all depositions are

9    off.  And then there's an issue about some website that was

10   started which I think is the basis of another lawsuit.  And so   10:50

11   Mr. Kashani's position at that point was we're not doing any

12   depositions.  You know, this isn't business as usual now, which

13   is the language he used.

14             And so Computershare is, as from the beginning of

15   this case, is caught in the middle of these two parties trying   10:51

16   to figure out who is going to take the other's deposition next.

17   Of course we're going to ask Mr. Edalat questions at his

18   deposition.  Okay.  And at this point we're co-defendants

19   aligned with Alternate Health and Howard Mann against

20   Mr. Kashani.                                                      10:51

21             We have no -- you know, we have no reason to subpoena

22   or notice Mr. Mann's deposition separately.  Our interests are

23   aligned against Mr. Kashani's clients.  Co-defendants who are

24   aligned against the same plaintiff don't start noticing each

25   other's deposition and acting adversely.                         10:51

1          Okay.  So then we get to later in the year in 2020,

2    and Mr. Kashani says he has to go to Iran again and the

3    depositions have to be in 2021.  So that's when the parties

4    presented a stipulation to extend the deposition deadline and

5    the expert cutoff.  All the parties agreed.  So this notion          10:51

6    that Mr. -- none of the parties wanted a designated expert

7    witness is belied by the fact that we all signed a stipulation

8    trying to extend all these cutoffs.  Your Honor denied that.

9          THE COURT:  Hold on a second.  But I said no because

10   the parties hadn't complied with an aspect of Judge Carney's         10:52

11   order and five extensions were plenty.  So, I mean, you could

12   have at any time served a deposition notice, served a subpoena

13   for a deposition, and if you -- if there was not compliance,

14   you could have filed a motion to compel.  You could have done

15   that within the time frame notwithstanding --                        10:52

16          MR. ALVERSON:  I understand.  Alternate Health served

17   a deposition notice, and there was back and forth.  And they

18   filed a motion to compel which ended up being untimely.  So, in

19   hindsight, should Computershare have done some things

20   differently?  Yes.                                                   10:53

21          But the fact of the matter is, as a matter of

22   fairness, Mr. Edalat has never been deposed in this case.  So

23   for him to say he'd be prejudiced, we're not asking for another

24   ten hours of deposition after he's been deposed before.  He

25   hasn't been deposed, Mr. Mann hasn't been deposed, and              10:53

1    Mr. Murphy hasn't been deposed.  Those parties sought to depose

2    each other.  Those sides sought to depose each other.  That

3    didn't happen for things that were out of Computershare's

4    control to a realistic extent, okay, because of our position in

5    the case, Your Honor.                                        10:53

6          THE COURT:  I understand.  Okay.  That pretty much

7    exhausts my questions.  Again, I have not decided what to do.

8    There is a whole spectrum of options and, as I said,

9    off-spectrum options.

10         Let me hear from each of you.  Please wrap up and        10:53

11   tell me anything in addition that you'd like to tell me.  Let

12   me start with counsel for the moving parties.  Mr. Kashani, let

13   me start with you.  I appreciate the argument you've given.

14   I've listened to it.  I'm going to get a transcript of this

15   hearing and look at it again.  Don't feel the obligation to    10:54

16   repeat yourself, but what else do you want to tell me?

17         MR. KASHANI:  Well, let me respond one thing on this

18   issue of discovery.  Mr. Alverson took full advantage of the

19   lack of discovery in this case.  I presented in our papers an

20   exchange of emails --                                         10:54

21         THE COURT:  You made that point, and I heard you.

22   Yes, I understand.

23         MR. KASHANI:  I mean, I was prepared to go to trial

24   without any document production from Computershare.

25   Computershare even exercised its option not to produce any    10:54

1   documents on its Rule 26 disclosure which was within the rules

2   for them to do.  I'm not complaining.

3          You know, and Mr. Alverson -- I think if

4   Computershare had come to the parties earlier and said, hey, we

5   need some discovery, can we do some things informally, can we          10:55

6   exchange documents, can we do this, but instead I get an abject

7   refusal saying no way, no how, you didn't propound any

8   discovery, so, you know, go pound sand.

9          THE COURT:  I understand that point.  I understand

10  that point.                                                           10:55

11         MR. KASHANI:  I think it's an important point.  I

12  would say this:  If the Court is inclined to impose any

13  condition where there is a dismissal without prejudice of

14  Computershare, that should be itself with conditions.

15         Number one, any statute of limitations or laches           10:55

16  needs to be waived.  Two, they need to consent to jurisdiction

17  in Los Angeles because they were here for three years.  They

18  shouldn't be able to say now let's go to Canada.  And that

19  condition has certainly been imposed in many cases, you know,

20  where a dismissal is done with the condition that it has to be    10:55

21  filed in the U.S. District Court, maybe in another state, but

22  that's certainly been imposed in the case law.

23         For them to say, you know, dismiss us with prejudice

24  and let us run to Canada, I mean, that leaves my client without

25  a remedy because we literally can't afford to chase them to        10:56

1   Canada anymore.  Maybe we could have three years ago if they

2   had raised this point, but they never did.  So allowing them to

3   raise that now is unfair.

4           And I would just repeat if the Court is inclined to

5   impose conditions, we should be given the option to go to trial          10:56

6   as presently constituted, and then, you know, we would see what

7   happens.

8           THE COURT:  Understood.  All right.  Thank you,

9   Mr. Kashani.

10          Mr. Markham, I'll let you go next.  Anything in           10:56

11  addition you'd like to add?

12          MR. MARKHAM:  I won't repeat what I've said.  My only

13  other thought is that I believe my clients have an enforceable

14  agreement with the Edalat clients for a dismissal.  And were

15  the Court to issue an order saying we have to go to trial, I           10:56

16  think I would want to raise my motion, the fact that that

17  important satisfaction is binding and it can be used by us as a

18  defense to the counterclaims against us just as Mr. Kashani

19  could use it as a defense to our claims against him.

20          But, again, we're at the Court's disposition, and           10:57

21  Rule 41 says that you may dismiss.  It doesn't mean you have

22  to, Your Honor.  I just think that this is giving way too much

23  deference to what one party did not do knowing all along, as

24  they were told, there's a possibility of settlement, not only

25  by us in what I thought was a lawyer-like way, as we presented           10:57

```
 1   in our papers, both me and Bridget, but by Mr. Edalat who did
 2   so in a much more striking way, and I remember.  I was there.
 3   It was on the record.  Thank you, Your Honor.
 4         THE COURT:  Let's go to procedure land here.  So
 5   let's say I do give the moving parties the option of either      10:57
 6   proceeding with your dismissal as agreed plus dismissing the
 7   Computershare claims without prejudice -- I know that's more
 8   Mr. Kashani and his client's decision than yours, Mr. Markham
 9   -- or proceed to -- or I deny the motion and, you know, the
10   claims are the claims and we move to trial.  We go to trial      10:58
11   with those claims.
12         Now, in that world, Mr. Markham, Mr. Kashani has said
13   -- we'll see what actually happens when I do this -- Mr.
14   Kashani has said that he'd rather proceed to trial.  So in that
15   world, Mr. Markham, you said -- you're kind of imaging what      10:58
16   happens at trial.  You go -- you present your opening and you
17   say, ladies and gentlemen of the jury, we've resolved this case
18   as far as my clients are concerned, thank you very much, and
19   you sit down.  And Mr. Kashani does the same thing with respect
20   to your clients and then makes his arguments against            10:58
21   Computershare.
22         Okay.  Well, so be it.  That makes it easy for the
23   jury on the verdict form to check the box for, you know, I
24   guess that your -- the claims that you have asserted on behalf
25   of your clients against Mr. Kashani's clients, judgment for Mr.  10:59
```

1    Kashani's clients, and likewise the claims that he has asserted

2    against your clients, judgment for your clients.

3              Okay.  Why is that a hard -- what's so hard or

4    unusual about that?

5              MR. MARKHAM:  I really haven't thought it through          10:59

6    because until Your Honor posited the fact that it might say,

7    no, we're going to trial as-is, as-was, I hadn't really thought

8    it through.  I've been trying cases for a long time.  I've

9    never gone up to a jury and said anything remotely like this,

10   and I would think Mr. Kashani hasn't either.                        10:59

11             I'm just pointing out that it would be very difficult

12   to make two clients who have stated in writing to the Court

13   that they have a binding plea agreement to force them to go,

14   but perhaps you can.  I leave it in Your Honor's discretion

15   because clearly that's what this is.  It's a discretionary         11:00

16   decision.

17             THE COURT:  All right.  Thank you.  And as I said, I

18   have not decided what I'm going to do.

19             Mr. Alverson, very eager to hear your final thoughts.

20   Please tell me what you wish to tell me.  Don't feel -- please     11:00

21   don't repeat yourself because I understood your arguments, but

22   go ahead.

23             MR. ALVERSON:  Thank you.  Thank you, Your Honor.

24   Maybe just a couple things to respond to the reply brief and

25   what Mr. Kashani has said about discovery.  We've been in          11:00

1    compliance with Rule 26 and all the discovery rules. The fact

2    of the matter is, is the parties had not yet exchanged exhibits

3    that were identified on the trial exhibit list. And, in fact,

4    my last motion to compel had to do with the a document that's

5    on -- Mr. Kashani put on the trial exhibit list that I have not    11:01

6    received yet. But I assure you I've been in full compliance

7    with Rule 26. And Mr. Kashani never served any document

8    requests on me and, so, you know, if there is a lack of any

9    discovery, we served document requests on Mr. Kashani's client.

10   So this notion that we've just been sitting idly by on          11:01

11   discovery, I'd just like to disabuse that.

12        Number two, Mr. Kashani says that he's never received

13   a copy of the indemnity agreement. In fact, he has a copy of

14   the indemnity agreement and produced it to Computershare in

15   this case.                                                       11:01

16        I guess lastly I just want to say that Your Honor has

17   identified what we think is the main situation. This case is a

18   completely different case than the case that was originally

19   filed. Alternate Health had been prosecuting its fraud claims

20   which -- fraud claims and defenses which are essentially         11:02

21   Computershare's defenses. And if Computershare does not have

22   the opportunity to fully and fairly take up the mantle and be

23   able to assert that and take limited depositions of the

24   principals in this case under other limited conditions -- and

25   we're not asking for unlimited scorched earth, we're asking for  11:02

```
 1    -- we ask for specific things which we feel in the interest of

 2    justice should be allowed so that if this case goes forward,

 3    just with Mr. Kashani's clients against Computershare,

 4    Computershare can fairly defend itself.

 5            THE COURT:  If we do that, do I need to refrain from      11:02

 6    granting this motion until after trial; that is, the Alternate

 7    Health parties, if I grant the motion and we go to trial with

 8    conditions, without conditions, whatever, but the next step is

 9    a trial, counterclaimants against Computershare, the Alternate

10    Health parties are gone, right, do they need to remain in the   11:03

11    case so Computershare can compel their presence at trial, their

12    production of documents through a trial subpoena, or if I go

13    this route, can they literally be dismissed?

14            MR. ALVERSON:  Well, I think --

15            THE COURT:  Do you understand my question?              11:03

16            MR. MARKHAM:  I do.

17            THE COURT:  Mr. Markham, do you want to -- I think I

18    know what your answer is going to be, but go ahead.

19            MR. MARKHAM:  Well, no, my answer is going to be

20    this:  Mr. Mann lives in Los Angeles.  He's within the subpoena  11:04

21    range of the Court.  Anything that they want, they can subpoena

22    him to get.  He's not going to defy a subpoena.  I've never

23    seen him do one -- in fact, Mr. Edalat had him waiting outside

24    in state court for eight hours, and he never got called, but he

25    waited.  So my guess is he will -- he's obligated to show up.   11:04
```

1          With respect to Mr. Murphy, he's way beyond the range

2   of even a party being compelled to show up, and plus he wasn't

3   involved in this instance.  So that's not a reason for keeping

4   us in the case is to allow them to do that.

5          I'm also happy to say that I would certainly give to      11:04

6   Mr. Alverson and Mr. Kashani copies of all the trial exhibits

7   that we had and we were ready to present.  We can do that.

8   Mr. Mann could show up -- could be compelled to show up.  So

9   that's not a reason for keeping him in.

10         THE COURT:  Okay.  Thank you, Mr. Markham.              11:05

11         Mr. Alverson, did you want to respond any more on

12  that particular point?

13         MR. ALVERSON:  Other than to note that apparently

14  Mr. Murphy does reside in Texas, so, obviously, we would

15  undertake -- we could undertake procedures to take his         11:05

16  deposition in the State of Texas.  I don't necessarily think --

17  I mean, it would be easier to --

18         THE COURT:  That's one of the conditions you've asked

19  for, right?

20         MR. ALVERSON:  Yes, that's right.                       11:05

21         THE COURT:  Okay.

22         MR. ALVERSON:  I do appreciate Mr. Markham's

23  willingness to satisfy one of the conditions which is providing

24  us with the documents they were going to use and rely on in the

25  case.                                                          11:05

```
 1              THE COURT:  Mr. Alverson, I want to hear the rest of

 2   your argument if there was anything in addition.  But, first,

 3   this question has occurred to me:  If I impose that condition,

 4   that is, I'll grant the motion to dismiss if the parties -- if

 5   the counterclaimants will also dismiss your client,            11:06

 6   Computershare, without prejudice, what if I also impose the

 7   condition that if there was a follow-on case, a new case, it

 8   could be brought in this jurisdiction, in the Central District,

 9   as opposed to Canada, would you agree to that condition?  I

10   mean, obviously, assume there is a lot of things that have to   11:06

11   happen for us to get there.

12              MR. ALVERSON:  Your Honor, quite frankly, I would

13   probably have to talk to my client about that.

14              THE COURT:  That's fair.

15              MR. ALVERSON:  Again, the decision was made --       11:06

16   decisions were made whether to contest personal jurisdiction or

17   not.  Those kind of decisions were made in the context of the

18   original lawsuit.  And there were a lot of reasons for the

19   decisions that were made which may be different now depending

20   on the complexion of the remaining case.                       11:07

21              THE COURT:  I understand.  Okay.  So sorry I

22   interrupted you.  Please, did you have anything else that you

23   wanted to tell me?

24              MR. ALVERSON:  No, I think that was it, Your Honor.

25   I think I'm done, yes.                                          11:07
```

1          THE COURT:  All right.

2          MR. KASHANI:  May I have a word, Your Honor?

3          THE COURT:  I would just -- the short answer is yes.

4    Since you and Mr. Markham represent the moving parties, I'll

5    give you the last word.  Hopefully it's brief because I think I          11:07

6    understand your perspective, but please go ahead.

7          MR. KASHANI:  Well, a very critical point for my

8    client is the expert witness.  We cannot afford to designate an

9    expert.  No expert was designated.  I don't see any world where

10   Computershare can say we get to do an expert now even though          11:08

11   none was designated by Alternate Health or us before.  That's

12   just we want to be in a better position now.  That's all that

13   is.  Because no one -- the need for the expert was clear to

14   them before, and it was clear to all sides, and they discussed

15   it, and they chose not to appoint one.  Nothing has changed in          11:08

16   that regard.  The value of the stock would be the expert.

17   Nothing has changed in that area.

18          We had testimony from a broker who was selling shares

19   at that time, you know, at market price.  He had no difficulty.

20   So that's a deposition I took.  Mr. Alverson asked no questions          11:08

21   of that witness even though he was present at the deposition.

22   So this issue has been covered.

23          It would be very, very unfair to my client in any

24   world, even under a dismissal with prejudice.  And I would say

25   that a dismissal without prejudice of Computershare, the courts          11:08

1    have imposed conditions that if deadlines have passed, they

2    will not be reopened if the case is refiled.  And I think the

3    expert witness is a critical factor.

4           So if the Court is inclined to require dismissal

5    without prejudice of Computershare, the condition that the        11:09

6    expert cutoff remain should be imposed.  And that has been

7    imposed in the case law.  If the Court wants a case, I can

8    email it to the Court.

9           THE COURT:  I saw the cases that you cited in your

10   papers.  Is it in there or is it a different case?               11:09

11          MR. KASHANI:  Possibly not because this is -- what

12   happens is defendant comes -- what has happened in the case law

13   is the plaintiff comes forward, fails to designate an expert,

14   wants to dismiss and refile, and the Court says, fine, you can

15   dismiss and refile, but you're bound by the same deadline.  You  11:09

16   cannot designate an expert in your new case.

17          I think that condition should definitely be imposed

18   if they're allowed to have a dismissal without prejudice.

19   Anything less than that puts them in a better position than if

20   we had simply gone to trial, because the expert witness is not   11:09

21   a function of Alternate Health is defending us.  I mean, it's a

22   function of we want to establish the value of the stock.  Well,

23   they didn't do that.  I mean, they knew that.  They didn't do

24   that.

25          And I would just like to close with one thing.  The       11:10

1    one thing I'm not hearing whatsoever from Computershare is any

2    accommodation or concession whatsoever.  It's just we want, we

3    want, we want.  We didn't do discovery; we want to do

4    discovery.  We didn't designate an expert; we want to designate

5    an expert.  We reserve the right to run back to Canada.  I                11:10

6    don't think that -- you know, he who seeks equity must do

7    equity, and I'm not hearing any equity at all from

8    Computershare.

9              THE COURT:  All right.  Mr. Markham, any final

10   thoughts?  You're muted.                                                  11:10

11             MR. MARKHAM:  Sorry.  No final thoughts except that

12   if the case is dismissed without prejudice, I really believe

13   that plays havoc with the statute of limitations all around,

14   but I haven't thought about that.  So I've got nothing further.

15   I really appreciate the Court's time.                                     11:11

16             MR. KASHANI:  Yes, we do.  Thank you.

17             THE COURT:  All right.  So here's -- thank you very

18   much.  Thanks for your argument.  I always try to -- I try real

19   hard, and I think I'm usually successful, in being transparent

20   in terms of what I'm thinking with counsel at these hearings,             11:11

21   and I really have not decided what to do.  There are lots of

22   options.  I've thought of a couple more over the course of this

23   hearing.  So I'm going to think about it some more.

24             In the meantime, here is what I'm going to do:  I'm

25   going to require the parties to go to a mediation with the                11:11

1    magistrate judge.  I think your best outcome collectively is to

2    resolve this among yourselves, I'll use the word "global," on a

3    global basis with these disputes and these parties that are

4    present in this case.  One of the questions I asked was about

5    the other litigation that's pending.  I think this is                    11:12

6    self-contained enough that you could reach a business

7    resolution that makes sense.  So I'm going to compel you to do

8    that.

9            I have not discussed this with Judge Early yet.  I'm

10   going to talk to him, but I may -- I may require you to go to           11:12

11   mediation with a different magistrate judge.  I want to think

12   about that a little bit and talk to Judge Early.  And it will

13   depend on, whoever it is, his or her schedule, but I want you

14   to do this pretty promptly.

15           Could you -- I know that I'm imposing another set of            11:12

16   obligations on you, but this is a relatively small set of

17   obligations relative to what could happen and what will happen

18   no matter which option I ultimately pick.

19           So with all that having been said, can I compel

20   you -- well, I can compel you.  Should I compel you to have            11:13

21   this mediation before the end of the year?  Can you and your

22   clients do that with your schedules?

23           Let me start with Mr. Markham.

24           MR. MARKHAM:  Your Honor, my client can do it.

25           THE COURT:  Okay.  And to be clear, I'm anticipating          11:13

1   this will be a Zoom mediation as most of them have been since

2   COVID has hit.

3            Mr. Kashani, how about you and your clients?

4            MR. KASHANI:  I can do it.  I have a narrow window.

5   I have a rather painful surgery scheduled on December 15th.  So        11:13

6   between -- and then there is the Thanksgiving holiday.  So if

7   it's the first two weeks of December, we can do it.

8            I would suggest if the Court -- I'm not sure if this

9   happened last time, and I'm not sure if Computershare has

10  insurance, but it would be helpful, I think, if they have              11:14

11  insurance for their adjuster with authority to be present.  I'm

12  not sure -- Computershare, I didn't hear anything from

13  Computershare at the last mediation, so I don't know if they

14  even had an adjuster or anyone present, but maybe it would be

15  helpful, if they have insurance, for them to be ordered to have        11:14

16  an adjuster present with authority.

17           THE COURT:  I could rummage around and find your Rule

18  26(f) report.  I'm not sure what that would say.  I don't think

19  I'm going to compel that.  It's kind of in Computershare's

20  interest to have a -- if it has an insurer, to participate, but        11:14

21  I think that's a Computershare issue.  I'm not leaning toward

22  compelling that result, but I appreciate the thought Mr.

23  Kashani.

24           In any event, back to scheduling.  You're thinking in

25  view of your schedule sometime after Thanksgiving, the 1st.  So        11:15

1   Thanksgiving is the 25th.  So you're thinking the week of

2   November 29th or December 6th?

3           MR. KASHANI:  December 6th would be better.

4           THE COURT:  Something before Wednesday the 15th?

5           MR. KASHANI:  Yes.  And the 14th, I want to say that          11:15

6   Mr. Markham and I have a hearing on one of these other cases

7   that sticks in my mind.

8           THE COURT:  In any event, the week of the 29th of

9   November, week of December 6th would be best for you if we get

10  it in before the end of the year; is that what I'm hearing,          11:15

11  Mr. Kashani?

12          MR. KASHANI:  November 29th, something tells me I'm

13  out until December 3rd.  So the week of December 6th would be

14  best.

15          MR. MARKHAM:  That's a good week for me, Your Honor.          11:16

16          THE COURT:  Mr. Alverson?

17          MR. ALVERSON:  The week of the 6th is a good week for

18  me as well, Your Honor.

19          THE COURT:  Okay.  So I'm going to compel the parties

20  and counsel to participate in a settlement conference with a          11:16

21  magistrate judge.  My minute order memorializing this hearing

22  will say that, but there will be a separate order when I

23  identify who the magistrate is going to be.

24          I'm going to compel you to engage in that settlement

25  conference in good faith.  I think the best route out of this        11:16

1   case collectively for all of you is you to put your heads

2   together and come to a business resolution.  And if you don't,

3   then I'll rule on this motion.  And as I said, there is a lot

4   of options and some additional ones that occurred to me over

5   the course of the last hour and 17 minutes.                    11:17

6           All right.  What else do we need to accomplish here

7   today?  Mr. Markham?

8           MR. MARKHAM:  Nothing for the plaintiffs, Your Honor.

9           THE COURT:  All right.  Thank you.

10          Mr. Kashani?                                           11:17

11          MR. KASHANI:  Nothing.  Thank you, Your Honor.

12   Thanks for taking the time.  We appreciate it.

13          THE COURT:  Thank you.

14          Mr. Alverson, anything else?

15          MR. ALVERSON:  Nothing, Your Honor.  Thank you very    11:17

16   much for your time.

17          THE COURT:  Thank you for your briefing and your

18   argument here today.  I wish you had not presented such an

19   interesting conundrum.  But be that as it may, I wish you luck

20   with your settlement.  And if I don't communicate with you     11:17

21   before then, have a good Thanksgiving holiday.  Thank you.

22          MR. MARKHAM:  You as well, Your Honor.

23                  (Proceedings concluded.)

24                          -o0o-

25

CERTIFICATE OF OFFICIAL REPORTER

I, PHYLLIS A. PRESTON, FEDERAL OFFICIAL REALTIME
COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT
PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE
FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE
STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE
ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
THE UNITED STATES.

DATED THIS 3RD DAY OF DECEMBER, 2021

/s/ PHYLLIS A. PRESTON

_____

PHYLLIS A. PRESTON, CSR, FCRR

FEDERAL OFFICIAL COURT REPORTER