1                                                            **O**

2

3

4

5

6

7

8                 **UNITED STATES DISTRICT COURT**

9         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| ALTERNATE HEALTH USA INC.;<br>ALTERNATE HEALTH CORP.; and<br>ALTERNATE HEALTH, INC., | Case No. 8:17-cv-01887-JWH-JDEx |
| Plaintiffs, | **MEMORANDUM OPINION AND<br>ORDER ON MOTION OF<br>COUNTERDEFENDANT<br>COMPUTERSHARE INVESTOR** |
| v. | **SERVICES INC. TO DISMISS<br>SEVERED CLAIMS FOR *FORUM<br>NON CONVENIENS* AND IN THE** |
| PAUL EDALAT;<br>OLIVIA KARPINSKI;<br>FARAH BARGHI;<br>EFT GLOBAL HOLDINGS, INC.<br>   D/B/A SENTAR<br>   PHARMACEUTICALS; and<br>APS HEALTH SCIENCES, INC., | **INTEREST OF INTERNATIONAL<br>COMITY [ECF No. 208] AND<br>MOTION OF ALL OTHER<br>PARTIES TO DISMISS THEIR<br>CLAIMS AGAINST EACH OTHER<br>[ECF No. 191]** |
| Defendants. | |
| PAUL EDALAT;<br>EFT GLOBAL HOLDINGS, INC. dba<br>   SENTAR PHARMACEUTICALS;<br>FARAH BARGHI; and OLIVIA<br>   KARPINSKI, on behalf of<br>   themselves and derivatively on<br>   behalf of ALTERNATE HEALTH<br>   USA INC. and ALTERNATE<br>   HEALTH CORP., | |
| Counterclaimants, | |
| v. | |
| ALTERNATE HEALTH USA INC.,<br>ALTERNATE HEALTH CORP.,<br>ALTERNATE HEALTH, INC., | |

1

HOWARD MANN,
MICHAEL L. MURPHY, M.D., and
COMPUTERSHARE INVESTOR
    SERVICES, INC.,

    Counterdefendants.

This case boasts a voluminous and intricate procedural history. But it nearly resolved itself neatly on the eve of trial when most of the parties jointly moved to dismiss all claims between them pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.[1]

However, a slight wrinkle emerged. That settlement and proposed dismissal left out Counterdefendant Computershare Investor Services Inc. ("Computershare") and two of nine counterclaims that the Edalat Counterclaimants asserted against Computershare under Canadian law.[2] Accordingly, the Court severed those two counterclaims from the rest of the case and permitted a limited amount of discovery.[3]

Computershare now moves to dismiss those Canadian-law counterclaims on the grounds of *forum non conveniens* and the principles of international comity.[4] The Computershare Motion presents the question of whether this Court is a proper forum for Computershare and the Edalat Counterclaimants to adjudicate those claims. The Edalat Counterclaimants urge this Court to keep those claims; Computershare argues that this Court should not. After considering the papers filed in support and in opposition,[5] both Motions before the Court are **GRANTED**, as explained herein.

---

[1]     *See generally* Joint Mot. to Dismiss (the "Joint Motion") [ECF No. 191]. The moving parties are Plaintiffs and Counterdefendants Alternate Health USA, Inc.; Alternate Health Corp.; and Alternate Health, Inc. and Counterdefendants Howard Mann and Michael Murphy (collectively, the "Alternate Health Parties"), on the one hand, and Defendants and Counterclaimants Paul Edalat; EFT Global Holdings Inc. d/b/a Sentar Pharmaceuticals ("Sentar"); Olivia Karpinski; Farah Barghi; (collectively, the "Edalat Counterclaimants") and Defendant APS Health Sciences, Inc. ("APS") (collectively with the Edalat Counterclaimants, the "Edalat Parties"), on the other hand.

[2]     *See* Fourth Am. Counterclaim ("FACC") [ECF No. 97] ¶¶ 83-95.

[3]     Order on Joint Motion ("Order on Joint Motion") [ECF No. 207] 3.

[4]     *See generally* Counterdef.'s Mot. to Dismiss Severed Claims for *Forum non Conveniens* and Interests of International Comity (the "Computershare Motion") [ECF No. 208].

[5]     The Court considered the following papers: (1) the FACC; (2) the Joint Motion to Dismiss (including its attachments); (3) Opp'n to the Joint Motion

# I.  BACKGROUND

## A.    Factual Summary

This lawsuit centers around the issuance of—and the inability to sell—restricted shares of stock in Canadian cannabidiol company Alternate Health Corporation.  The dispute initially pit Edalat against Alternate Health Corporation and its American subsidiary—Alternate Health USA, Inc. (jointly, "<u>Alternate Health</u>"),[6] but it grew to involve several more parties and counterclaims.

Prior to the commencement of this lawsuit, Edalat and Alternate Health executed several written agreements involving the business of cannabis-derived nutraceuticals.[7]  One of those agreements was a consulting arrangement in which Edalat agreed to provide consulting services to Alternate Health in exchange for shares of its stock.[8]  Another was a licensing agreement that included patent applications from Sentar.[9]  Alternate Health leveraged the licensing agreement, in part, to raise funds from investors.[10]  Sentar was to receive shares of Alternate Health Corporation stock in exchange for entering into that license.[11]  At that

---

(the "<u>Joint Motion Opposition</u>") [ECF No. 193]; (4) Reply to the Joint Motion Opposition (the "<u>Joint Motion Reply</u>") [ECF No. 197]; (5) the Computershare Motion (including its attachments); (6) Opp'n to Untimely Mot. to Dismiss on *Forum Non Conveniens* Grounds (the "<u>Computershare Motion Opposition</u>") [ECF No. 211]; and (7) Reply Mem. of Counterdef. in Supp. of the Computershare Motion (the "<u>Computershare Motion Reply</u>") [ECF No. 213].

[6]  *See generally* Compl. (the "<u>Complaint</u>") [ECF No. 1].

[7]  Separate Statement of Uncontroverted Facts ("<u>SSUF</u>") [ECF No. 116-1] ¶¶ 6 & 7.  The parties are already deeply familiar with the facts of this case, so the Court recites the background only as needed.

[8]  *Id.* at ¶ 8.

[9]  *Id.* at ¶¶ 14 & 15.

[10]  *Id.* at ¶¶ 34-37.

[11]  *Id.* at ¶ 29.

1    time, Alternate Health Corporation's stock was publicly traded on the Canadian

2    Securities Exchange and through over-the-counter (OTC) markets.[12]

3         Pursuant to those two agreements, Alternate Health issued share

4    certificates to the Edalat Parties in March 2017.[13]  Importantly, those certificates

5    were restricted, and they bore a legend preventing their public sale before July 3,

6    2017, but the Edalat Parties understood that that restriction would eventually be

7    removed.[14]

8         In the summer of 2017, Alternate Health Corporation stock was trading

9    around US $2 per share, which—if the stock was sold at that price—would have

10   generated around $6 million in proceeds for the Edalat Parties.[15]

11   Unsurprisingly, the Edalat Parties requested the removal of the restrictive

12   legends, but Alternate Health refused.[16]  Edalat insists that its broker, non-party

13   Canaccord Genuity Wealth Management (USA) Inc., delivered all of the

14   required documentation for Alternate Health and Computershare to lift the

15   restriction, but to no avail.[17]  At the time, Computershare, a Canadian

16   corporation, was serving as Alternate Health Corporation's appointed transfer

17   agent and registrar for its common shares.[18]

18        In September 2017, Computershare notified Edalat that it would not

19   remove the restrictive legends from the certificates representing his shares in

20   Alternate Health Corporation.[19]  The Alternate Health Parties allegedly refused

21   to authorize Computershare to remove the legends because they believed that

22

23   _____

     [12]   FACC ¶ 4.

24   [13]   SSUF ¶¶ 60 & 61.

     [14]   *Id.* at ¶ 62; *see also* FACC ¶¶ 37 & 38.

25   [15]   FACC ¶ 46.

26   [16]   SSUF ¶¶ 63-65.

     [17]   FACC ¶ 45.

27   [18]   *Id.* at ¶ 8.

28   [19]   *Id.* at ¶ 47.

Edalat had defrauded them in order to receive shares of Alternate Health Corporation stock; namely, by overstating his expertise and by making other material omissions and misrepresentations.[20]  The Edalat Counterclaimants contend that Alternate Health refused permission to remove the legends—thereby preventing their sale of the stock—simply as an unlawful means to shore up the stock price of Alternate Health Corporation.

The Edalat Counterclaimants note that a higher stock price would serve the financial interests of the Alternate Health Parties, including Mann and Murphy.[21]  Mann was Alternate Health's CEO and its representative in all of its communications and dealings with Edalat, Barghi, and Karpinski.[22]  Murphy was a board member of Alternate Health,[23] presumably as a result of Alternate Health's acquisition in March of 2017 of a 20% stake in non-party Clover Trail Capital LLC—a company that Murphy allegedly controlled.[24]

The Edalat Counterclaimants maintain that their inability to sell their shares of Alternate Health Corporation stock caused them to suffer millions of dollars of losses.[25]  For reasons not discussed by the parties, the share price of Alternate Health Corporation began to drop precipitously in the first two quarters of 2018.  As of February 2022, shares of Alternate Health Corporation were trading at one one-hundredth of a penny per share in OTC markets—essentially nil.[26]

---

[20]      Complaint ¶¶ 3-8.

[21]      FACC ¶ 48.

[22]      Countercl. of Paul Edalat (the "Counterclaim") [ECF No. 14] ¶ 12; Decl. of Howard Mann in Supp. of Pl.'s Opp'n to Defs.' Mot. for Summ. J. [ECF No. 121-1] ¶ 4.

[23]      Counterclaim ¶ 6.

[24]      FACC ¶ 40.

[25]      *Id*. at ¶ 50.

[26]      *See* YAHOO!FINANCE, https://finance.yahoo.com/quote/AHGIF (last visited February 9, 2022).  The Court may take judicial notice of public stock prices *sua sponte*.  *See* Fed. R. Evid. 201(c)(1); *see also Grimes v. Navigant*

**B.     Procedural History**

Alternate Health commenced this action in October 2017, initially naming only Edalat as a defendant and asserting claims including fraudulent inducement and rescission of the consulting agreement.[27]  Alternate Health alleged that Edalat made several misrepresentations regarding Edalat and Sentar's capability to manufacture dissolvable pills.[28]  Alternate Health also alleged that Edalat intentionally failed to disclose that the Food and Drug Administration had accused him of manufacturing adulterated dietary supplements.[29]

About a month later, Edalat counterclaimed against Alternate Health, Mann, and Murphy for (1) fraud in the inducement; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) breach of contract; and (5) request for declaratory relief.[30]

The parties then engaged in several rounds of amendments of their respective pleadings.  In December 2017, Alternate Health USA Inc. and Alternate Health Corporation filed their First Amended Complaint.[31]  Edalat answered and refiled his counterclaim in January 2018.[32]  A month later, Edalat amended his counterclaim,[33] naming Computershare as a Counterdefendant for the first time.[34]

---

*Consulting, Inc.*, 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002) (holding that public stock prices fall into the category of facts that can be judicially noticed under Rule 201(b)(2)).

[27]     *See generally* Complaint.

[28]     *Id*. at ¶¶ 3-8.

[29]     *Id*.

[30]     *See generally* Counterclaim.

[31]     First Am. Compl. ("FAC") [ECF No. 21].

[32]     Answer of Def. Paul Edalat to Pls.' FAC and Countercl. of Paul Edalat [ECF No. 26].

[33]     *See generally* Second Am. Countercl. of Paul Edalat [ECF No. 30].

[34]     *Id*. at ¶¶ 7, 13, & 32-35.

1  In June 2018, Edalat voluntarily dismissed his counterclaim against
2  Murphy without prejudice[35] and stipulated to withdraw his fifth counterclaim
3  against Computershare.[36]

4  Six months later, the parties again decided to amend their pleadings.[37]  In
5  December 2018, Alternate Health USA Inc.; Alternate Health Corporation; and
6  Alternate Health, Inc. filed their Second Amended Complaint, which is the
7  Alternate Health Parties' operative complaint.[38]  In that pleading, the Alternate
8  Health Parties added Karpinski, Barghi, Sentar, and APS as defendants.[39]
9  Joined by Sentar, two days later Edalat also revised his pleading.  Edalat and
10 Sentar filed the third and penultimate amended counterclaim, in which they
11 reasserted their claims against Computershare.[40]

12  Eleven months later, after the parties took some discovery, Edalat and
13 Sentar—now joined by Karpinski and Barghi (forming the Edalat
14 Counterclaimants)—amended their counterclaim.[41]  The Fourth Amended
15 Counterclaim serves as their operative pleading.

16  Over the next two years, the parties repeatedly stipulated to continue the
17 case schedule.  Finally, in January 2021,[42] the Court denied the parties' fifth
18 request for a continuance,[43] and the Edalat Parties moved for summary
19

---

20  [35]    *See* Notice of Dismissal Pursuant to Fed. R. Civ. P. 41(a) or (c) [ECF
No. 58].
21  [36]    *See* Order Dismissing Without Prejudice Counterclaimant's Fifth Cause
22  of Action Against Counterdefendant Computershare in Second Am. Countercl.
[ECF No. 62] 1.
23  [37]    *See, e.g.*, Stip. to File Am. Pleadings [ECF No. 70].
24  [38]    Second Am. Compl. ("SAC") [ECF No. 72].
    [39]    *Id.* at ¶¶ 13-18.
25  [40]    *See* Third Am. Countercl. of Paul Edalat and EFT Global Holdings [ECF
26  No. 82] ¶¶ 83-95.
    [41]    *See generally* FACC.
27  [42]    Hereinafter, all dates are in 2021 unless otherwise noted.
28  [43]    Denied Order as to Trial Date and Pretrial Deadlines [ECF No. 113].

1  judgment on the last possible day.[44]  The Court conducted a hearing on that

2  motion in March and denied it two months later.[45]

3      In June the Court reset the case schedule, and the parties began to prepare

4  for trial in earnest.  Over the summer, the parties filed their lists of witness and

5  trial exhibits, and the Court heard and ruled on a number of motions *in limine*.[46]

6      In September the Alternate Health Parties and the Edalat Parties filed

7  their Initial Joint Motion to dismiss their claims against each other,[47] and they

8  set it for hearing as the same day as the final pretrial conference.

9  Computershare opposed the Initial Joint Motion on the grounds that it was not

10  properly noticed and that neither the Alternate Health Parties nor the Edalat

11  Parties met and conferred with Computershare as required by L.R. 7-3.[48]  As a

12  result, the Court denied the Initial Joint Motion without prejudice, vacated the

13  pretrial conference, and set a deadline for the Alternate Health Parties and the

14  Edalat Parties to file the Joint Motion.[49]

15      The Alternate Health Parties and the Edalat Parties dutifully filed their

16  Joint Motion in October,[50] and it is fully briefed.[51]  The Court conducted a

---

18  [44]     *See* Mot. for Summ. J. or Partial Summ. J. Against Pls.' Operative Compl.
19  (the "Motion for Summary Judgment") [ECF No. 116].  This motion was filed
    on behalf of the Edalat Parties, since *all* Defendants moved for summary
20  judgment regarding the claims in the Alternate Health Parties' Second
    Amended Complaint.

21  [45]     Order on the Motion for Summary Judgment [ECF No. 135] 4 & 23.
    Even though the Motion for Summary Judgment was ultimately denied, the
22  Court was impressed by the quality of Edalat's counsel's briefs in view of the
    tight timeline.  The Court wishes to acknowledge those herculean efforts.
23  [46]     *See* Order on Motions *in Limine* [ECF No. 179].

24  [47]     *See* Joint Mot. to Dismiss as to Claims Against Each Other (the "Initial
    Joint Motion") [ECF No. 183].
25  [48]     Counterdef.'s Objection and Opp'n to Pls.'/Counterdef.'s and
26  Defs.'/Counterclaimants' Joint Mot. to Dismiss [ECF No. 186] 1:18-2:12.
    [49]     Min. Order of Video Hr'g Regarding Status Conference [ECF No. 187].
27  [50]     *See generally* Joint Motion.
28  [51]     *See generally* Joint Motion Opposition; Joint Motion Reply.

1    hearing on the Joint Motion in November, at which it ordered the parties to

2    participate in a settlement conference with Magistrate Judge Kewalramani.[52]

3    Magistrate Judge Kewalramani set the settlement conference for December,[53]

4    but Edalat's counsel did not comply with the Settlement Conference Order.

5    Magistrate Judge Kewalramani then converted the settlement conference to an

6    Order to Show Cause hearing.[54]  At that hearing, Magistrate Judge Kewalramani

7    concluded that "a settlement Conference would be ineffective at this time."[55]

8          Later in December, this Court continued the hearing on the Joint Motion

9    to Dismiss and severed the Edalat Counterclaimants' fourth and fifth

10   counterclaims against Computershare from the claims between the Alternate

11   Health Parties and the Edalat Parties.[56]  The Court also granted leave for

12   Computershare to take the deposition of Mann, Murphy, and Edalat; for the

13   parties to designate expert witnesses, including damages experts; and for the

14   parties to file dispositive motions.[57]

15         A month later, in January 2022, Computershare filed the Computershare

16   Motion, through which it seeks the dismissal of the Edalat Counterclaimants'

17   fourth and fifth counterclaims for *forum non conveniens* and under the principles

18   of international comity.[58]  The Computershare Motion is fully briefed.[59]

19

20

21

22   _____

[52]    Min. Order Regarding the Joint Motion [ECF No. 198].

23   [53]    Settlement Conference Order [ECF No. 200].

24   [54]    *See* Order to Show Cause [ECF No. 203].

[55]    Minutes of Settlement Conference [ECF No. 206].

25   [56]    Order on Joint Motion 3.

26   [57]    *Id*. at 4.

27   [58]    *See generally* Computershare Motion.

[59]    *See generally* Computershare Motion Opposition; Computershare Motion
28   Reply.

## II.  LEGAL STANDARD

### A.  *Forum Non Conveniens*

Federal courts may, in their discretion, dismiss a case on the grounds of *forum non conveniens* even when jurisdiction and proper venue are established. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994).  Dismissal is appropriate only if the defendant establishes "(1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017). With regard to the first requirement, an alternative forum is deemed adequate when the defendant is "amenable to process" there and the other jurisdiction offers a satisfactory remedy.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).

With regard to the second requirement—the balancing of private and public factors—there is "ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."  *Piper Aircraft Co.*, 454 U.S. at 255.  That presumption "applies with less force when the plaintiff or real parties in interest are foreign."  *Id*. at 266.  The relevant private factors include:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) (internal quotations omitted).  The public interest factors include:

1      (1) local interest of lawsuit; (2) the court's familiarity with governing

2      law; (3) burden on local courts and juries; (4) congestion in the

3      court; and (5) the costs of resolving a dispute unrelated to this forum.

4 *Id.* at 1147 (citing *Piper Aircraft Co.*, 454 U.S. at 258-61).  The Ninth Circuit

5 instructs district courts to "look to any or all of the above factors which are

6 relevant to the case before it, giving appropriate weight to each." *Id.* at 1145.

7 **B.**     **International Comity**

8      International comity is "the recognition which one nation allows within

9 its territory to the legislative, executive or judicial acts of another nation, having

10 due regard both to international duty and convenience, and to the rights of its

11 own citizens, or of other persons who are under the protection of its laws."

12 *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).  It functions as a "doctrine of

13 prudential abstention, one that counsels voluntary forbearance when a sovereign

14 which has a legitimate claim to jurisdiction concludes that a second sovereign

15 also has a legitimate claim to jurisdiction under principles of international law."

16 *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (internal quotations

17 omitted).

18      Courts have identified two versions of the doctrine.  The first is a

19 legislative or "prescriptive comity," which guides domestic courts as they

20 decide the extraterritorial reach of federal statutes.  *F. Hoffmann-La Roche Ltd. v.*

21 *Empagran S.A.*, 542 U.S. 155, 165 (2004).  The second version, applicable here,

22 refers to the "comity among courts" or adjudicatory comity, which "may be

23 viewed as a discretionary act of deference by a national court to decline to

24 exercise jurisdiction in a case properly adjudicated in a foreign state." *Mujica*,

25 771 F.3d at 599 (quoting *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d

26 1036, 1047 (2d Cir. 1996)).  In such a case, "deference to the foreign court is

27 appropriate so long as the foreign proceedings are procedurally fair" and "do

28 not contravene the laws or public policy of the United States." *Id.* (quoting

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005)).

Before abstaining under adjudicative comity, the Ninth Circuit has instructed courts to evaluate (1) the strength of the United States' interest in using a foreign forum; (2) the strength of the foreign governments' interests; and (3) the adequacy of the alternative forum. *See Mujica*, 771 F.3d at 603. For the first prong, courts are to consider (1) the location of the conduct in question; (2) the nationality of the parties; (3) the character of the conduct in question; (4) the foreign policy interests of the United States; and (5) any public policy interests. *See id.* at 604. For the second prong, "[t]he proper analysis of foreign interests essentially mirrors the consideration of U.S. interests." *Id.* at 607. And for the third prong, the Court focuses on procedural fairness in the forum and whether the opponent has presented specific evidence of significant inadequacy. *Cooper v. Tokyo Elec. Power Co., Inc.*, 2019 WL 1017266, at *13 (S.D. Cal. Mar. 4, 2019), *aff'd sub nom. Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549 (9th Cir. 2020); *see also Mujica*, 771 F.3d at 608 (citing *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1306 (11th Cir. 2008)).

## C.    Voluntary Dismissal under Rule 41(a)(2)

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). As the parties point out in their respective briefs,[60] the decision to grant a voluntary dismissal under Rule 41(a)(2) lies with the sound discretion of the Court. *See, e.g.*, *Kern Oil Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1389 (9th Cir. 1986); *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982). "In exercising its discretion, the Court must make three separate determinations: (1) whether to allow dismissal at all; (2) whether

---

[60]     Joint Motion 3:11-14; Joint Motion Opposition 7:27-8:1.

the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." *Hana Fin., Inc. v. Most Off. 7, Inc.*, 2015 WL 13357671, at *2 (C.D. Cal. July 9, 2015).

## III.  DISCUSSION

As discussed at the outset, the Joint Motion would resolve all claims and counterclaims among the parties, except for two counterclaims asserted by the Edalat Counterclaimants against Computershare.[61]  Those two counterclaims are listed as the fourth and fifth claims for relief in the Edalat Counterclaimants' pleading.[62]  The fourth counterclaim arises from Computershare's alleged refusal to register the transfer of certain securities, in violation the Securities Transfer Act of British Columbia.[63]  The fifth counterclaim seeks declaratory and equitable relief against Computershare—specifically, in the form of a declaration and an order that the legend shall be removed from the shares and the shares placed for sale on the open market.[64]  Necessarily, then, the Court's analysis of the fifth counterclaim for relief would rely on and overlap with that of the fourth.

Computershare argues that the Court should dismiss those counterclaims on the grounds of *forum non conveniens* or, in the alternative, under the principles of international comity.[65]  In response, the Edalat Counterclaimants contend that the Computershare Motion is untimely, and they oppose a dismissal on the ground of *forum non conveniens* or international comity on the merits.[66]

---

[61]    *See generally* Joint Motion.

[62]    *See* FACC ¶¶ 83-95

[63]    *Id.* at ¶¶ 83-90.

[64]    *Id.* at ¶¶ 91-95.

[65]    *See generally* Computershare Motion.

[66]    *See generally* Computershare Motion Opposition.

**A.      Timeliness**

As a preliminary matter, the Edalat Counterclaimants contest Computershare's ability to make a motion to dismiss at this stage of the litigation.  They point to the Court's prior scheduling orders and *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984), for the proposition that motions to dismiss—in that case, for lack of personal jurisdiction—are inappropriate when the matter could be "tried in a matter of weeks."[67]  *Id.* at 1333.

But the Edalat Counterclaimants ignore the fact that, in its most recent order, this Court severed the Edalat Counterclaimants' two counterclaims and reopened discovery.[68]  *See* Fed. R. Civ. P. 21.  In doing so, the entire procedural posture of the case has changed.  Computershare's Motion is timely.

**B.      *Forum Non Conveniens***

**1.      Adequate Alternative Forum**

Computershare argues that Canadian courts provide an adequate alternative forum because (1) Computershare is a Canadian corporation, rendering it amenable to service of process there; and (2) other districts courts agree that Canadian courts serve as an adequate forum for cases involving breaches of contracts and related claims.[69]  *See, e.g.*, *Etaliq, Inc. v. Cisco Sys., Inc.*, 2011 WL 13220445, at *3 (C.D. Cal. July 20, 2011) (case involving breach of a non-disclosure agreement and trade secret misappropriation).

The Edalat Counterclaimants concede that Computershare is amenable to process in Canada but dispute whether adequate remedies exist.  Specifically, the Edalat Counterclaimants contend that Computershare "has not proven that the claim could be filed in Canada and not dismissed on [statute of] limitations

---

[67]      *Id.* at 5:17-6:15.

[68]      *See generally* Order on Joint Motion.

[69]      Computershare Motion 9:27-10:13.

grounds."[70]  In reply, Computershare agrees to "waive any statute of limitations defense in any Canadian court litigation" of the Edalat Counterclaimants' claims.[71]

"To be sure, an alternative forum is considered inadequate if a statute of limitations would bar the plaintiff's claims there." *Etaliq*, 2011 WL 13220445, at *3.  But the Ninth Circuit has "affirmed *forum non conveniens* dismissals that addressed statute of limitations concerns by requiring waiver in the foreign forum." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1235 (9th Cir. 2011).  Because Computershare expressly does just that,[72] the Edalat Counterclaimants' objection regarding the statute of limitations fails.

The Edalat Counterclaimants also complain that the unavailability of witnesses renders Canada an inadequate forum.  But the Court puts aside that concern for the moment because the availability of witnesses speaks to one of the many private factors that the Court must balance, not the adequacy of the forum itself.  *Compare id.* at 1225 *with id.* at 1227.  Accordingly, the first requirement for dismissal under *forum non conveniens*—the existence of an adequate alternative forum—is met.

## 2.   Balance of Factors

### a.   Private Factors

#### i.   Residence of the Parties and the Witnesses

The Ninth Circuit has instructed that the Court's focus should not rest on the "number of witnesses" or the quantity of evidence in each locale, but rather on "the materiality and importance of the anticipated witnesses'

---

[70]   Computershare Motion Opposition 16:16-20.

[71]   Computershare Motion Reply 3:19-21.

[72]   *See* Suppl. Decl. of David S. Alverson in Supp. of Computershare's Motion [ECF No. 213-1] ¶ 3.

1    testimony and then determine[] their accessibility and convenience to the

2    forum." *Gates Learjet Corp.*, 743 F.2d at 1335–36.

3            In this case, most of the parties would double as witnesses.  And the

4    parties are scattered.  Edalat, Karpinski, and Barghi all allegedly reside in Orange

5    County, California.[73]  Computershare is based in Canada, as are many of its

6    witnesses.[74]  Mann, who served as Alternate Health's CEO, is also allegedly a

7    citizen of Canada and is domiciled there.[75]  Murphy, whose testimony may likely

8    be relevant,[76] resides in San Antonio, Texas.[77]  While the Edalat

9    Counterclaimants allege that Sentar is based in California,[78] Computershare

10    disputes that allegation, noting that the California Secretary of State's business

11    entities portal has no record of Sentar.[79]  The Alternate Health Parties had

12    earlier alleged that Sentar is a Nevada corporation based in Las Vegas.[80]

13            However, the number of witnesses with relevant testimony likely extends

14    beyond those parties.  Even though Alternate Health Corporation is not a party

15    to the Computershare counterclaims, the testimony of Alternate Health

16    Corporation's current or former employees involved in these stock restrictions

17    would undoubtedly be material.  The Edalat Counterclaimants assert that

18    Computershare has not named any Canadian witnesses,[81] but Computershare

19    *does* mention several such potential witnesses, including Marcie O'Neill,

20

---

21    [73]    FACC ¶ 1.

22    [74]    Computershare Motion 14:26-15:5; Computershare Motion Reply 8:6-21.

23    [75]    FACC ¶ 6.  The Edalat Counterclaimants muddy the water in their brief, asserting that Mann has an office in Venice, California, and implying that he is a California resident.  *See* Computershare Motion Opposition 9:13 & 13:21.

24    [76]    *See* Computershare Motion 5:3-7.

25    [77]    FACC ¶ 7.

26    [78]    *Id*. at ¶ 2.

        [79]    Computershare Motion 10:25-28.

27    [80]    SAC ¶ 15.

28    [81]    Computershare Motion Opposition 13:13-16.

Alternate Health Corporation's Chief Compliance Officer, and Dave Bains and Francesca Power, both of whom worked at Computershare as relationship managers for Alternate Health Corporation.[82]  From the exhibits, it is apparent that those individuals were involved in—or had knowledge of—the restrictive stock legends on the Edalat Counterclaimants' shares.[83]

In view of the number of out-of-state witnesses and the relative importance of the Canadian witnesses' testimony to Computershare's role in executing the restrictive stock legends, the Court finds that this factor weighs in favor of a Canadian forum.

### ii. The Forum's Convenience to the Litigants

This Court, located in Riverside, California, would ostensibly be more convenient for the Edalat Counterclaimants, whereas a Canadian forum would ostensibly be more convenient to Computershare.  Neither party analyzes this factor in any further detail.  Accordingly, the Court deems it neutral.

### iii. Access to Physical Evidence and Other Sources of Proof

Per this Court's direction, the Alternate Health Parties have already produced all trial exhibits to Computershare.[84]  Computershare notes that the only other relevant physical evidence exists in the form of documents, which can easily be transmitted electronically.[85]  Therefore, this factor neither precludes nor favors dismissal.  *Cf. Mayberry v. Int'l Bus. Machines Corp.*, 2009 WL 1814436, at *5 (N.D. Cal. June 25, 2009) (discussing an analogous factor on a

---

[82]   *See, e.g.,* Computershare Motion 3:19-23; Decl. of David Cavasin in Supp. of Computershare's Motion [ECF No. 208-2] ¶ 4.

[83]   *See, e.g.,* Computershare Motion, Exs. C & G [ECF Nos. 208-6 & 208-10].

[84]   Order on Joint Motion 4.

[85]   Computershare Motion 16:14-15.

1  motion to dismiss under Rule 12(b)(3) and holding it should be given "minimal

2  weight" in view of the ease of electronic transmission of documents).

3      iv.    **Whether Unwilling Witnesses Can Be Compelled to**

4          **Testify**

5      If this Court retains this case, then the parties would likely encounter

6  difficulties with compelling certain witnesses to appear, in view of certain

7  limitations imposed by the Federal Rules of Civil Procedure:

8      A subpoena may command a person to attend a trial, hearing, or

9      deposition only . . . (A) within 100 miles of where the person resides,

10     is employed, or regularly transacts business in person; or (B) within

11     the state where the person resides, is employed, or regularly

12     transacts business in person, if the person (i) is a party or a party's

13     officer; or (ii) is commanded to attend a trial and would not incur

14     substantial expense.

15  Fed. R. Civ. P. 45(c)(1).  The Edalat Counterclaimants assert that "[t]here are

16  no, zero, witnesses (essential or otherwise) [Computershare] cannot bring to

17  California."[86]  But the issue is not whether Computershare can transport its

18  witnesses to California, but whether Computershare—or the Edalat

19  Counterclaimants for that matter—can ***compel*** them to do so.

20     None of the exceptions in Rule 45(c)(1) clearly applies to any of the

21  Canadian witnesses.  That obstacle is particularly important, given the centrality

22  of witnesses from Alternate Health Corporation, a foreign company that is not a

23  party to the severed counterclaims.  *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d

24  21, 30 (2d Cir. 2002) ("The most important problem is the unavailability of

25  process to compel unwilling third-party witnesses to appear in the United

26  States.").  Current or former Alternate Health Corporation employees

27

28  [86]    Computershare Motion Opposition 14:19-21.

1    presumably reside in Canada and "thus cannot be compelled to testify in
2    American courts as they would be in Canadian courts." *Id.*

3          Moreover, the dictates of Rule 45(c)(1) also apply to witnesses like
4    Murphy, who resides farther than 100 miles from this Court.[87]  Murphy is also a
5    non-party to the counterclaim, and the Edalat Counterclaimants concede that he
6    is not amenable to process here.[88]

7          Conversely, the issue of unwilling witnesses appears less onerous in a
8    Canadian forum, in part because federal law permits district courts to assist
9    litigants in international tribunals.  *See* Fed. R. Civ. P. 45(b); 28 U.S.C.
10   § 1782(a).  A district court may order a person residing in its district to give his
11   or her "testimony or statement or to produce a document or other thing for use
12   in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a); *see*
13   *also In re Ex Parte Application of Pro-Sys Consultants*, 2016 WL 3405547, at *1
14   (N.D. Cal. June 21, 2016) (granting *ex parte* application of plaintiffs appearing
15   before the Supreme Court of British Columbia for a deposition subpoena
16   pursuant to 28 U.S.C. § 1782(a)).  Availing themselves of that statute in a
17   Canadian forum would allow the parties to avoid the obstacles of coaxing non-
18   party Canadian witnesses to appear here, while retaining the benefit of deposing
19   Murphy, Edalat, Karpinski, and Barghi, and producing all of Sentar's
20   documents.  Therefore, this factor leans in favor of dismissal.

21                    **v.    Cost of Bringing Witnesses to Trial**

22         Computershare argues that the cost of bringing witnesses to trial in
23   Canada are "counterbalanced" by the cost that it would incur in bringing
24   witnesses to trial in Riverside, California.[89]  While that argument is compelling,
25   the Edalat Counterclaimants respond that the cost to them to bring this action in

---

26   [87]   *Id.* at 9:19; FACC ¶ 7.
27   [88]   Computershare Motion Opposition 14:16-17.
28   [89]   Computershare Motion 15:24-16:1.

-20-

Canada would be "disproportionate and unsurmountable."[90]  Counsel for the Edalat Counterclaimants testifies that Edalat has recently experienced severe financial setbacks.[91]  He also declared that Edalat, Karpinski, and Barghi have all suffered from various health ailments.[92]  The Court is sympathetic.  On balance, the Court finds that this factor weighs against dismissal.

### vi.    Enforceability of the Judgment

Common sense would suggest that a judgment against Computershare, a Canadian corporation, would be easier to enforce if that judgment was rendered by a Canadian court, rather than a United States federal court.  The Edalat Counterclaimants make no argument to the contrary.[93]  This factor weighs strongly in favor of dismissal.

### vii.    Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

Innumerable other practical problems may, on the margins, lean in favor of one forum or another.  The ongoing COVID-19 pandemic is one such problem, which can impact the logistics of trial rather unpredictably.  However, neither party analyzes the impact of COVID-19 on this case nor raises any other unique issues under this factor, so the Court finds it to be neutral.

### b.    Public Factors

### i.    Local Interest of the Lawsuit

While Computershare acknowledges that some local interest may exist in California because the Edalat Counterclaimants live here, that local interest is greatly outweighed by Canada's interest in the controversy.  Computershare argues that Canada's interest is greater because (1) the acts or omissions

---

[90]    Computershare Motion Opposition 17:23.

[91]    Decl. of Saied Kashani (the "Kashani Declaration") [ECF No. 211] ¶ 3.

[92]    *Id.*

[93]    *See generally* Computershare Motion Opposition.

concerning the restrictive stock legends took place in Canada, *see Dibdin v. S. Tyneside NHS Healthcare Tr.*, 2013 WL 327324 at *6 (C.D. Cal. Jan. 29, 2013); (2) Computershare is a Canadian corporation; and (3) Canada is "at home with the law" governing the action.[94]  *Piper Aircraft Co.*, 454 U.S. at 241 n.6.  The Edalat Counterclaimants make no argument in response.[95]  Accordingly, the Court finds that this factor weighs strongly in favor of dismissal.

### ii.    The Court's Familiarity with the Governing Law

In their fourth counterclaim, the Edalat Counterclaimants assert that Computershare violated its obligation to transfer shares in violation of the Securities Transfer Act of British Columbia.[96]  A Canadian court with appropriate jurisdiction would presumably have no difficulty applying its own law, but this Court readily and humbly admits that it has no relevant experience or expertise with Canadian securities law.  *Accord In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp. 2d 1020, 1041 (C.D. Cal. 2011), *amended on reconsideration in part sub nom. In re Air Crash at Madrid, Spain*, 2011 WL 2183972 (C.D. Cal. May 16, 2011), *and aff'd sub nom. Fortaner v. Boeing Co.*, 504 F. App'x 573 (9th Cir. 2013) ("[t]hat the Spanish courts might face difficulty in applying U.S. law to a small percentage of claims does not overcome the fact that this Court . . . would likely face difficulty in applying foreign law to all claims").  That fact weighs strongly in favor of dismissal because the Supreme Court has affirmed that the "doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co.*, 454 U.S. at 251; *see also Gilbert*, 330 U.S. at 509.

---

[94]    Computershare Motion 10:15-11:18.

[95]    *See generally* Computershare Motion Opposition.

[96]    FACC ¶ 86.

The Edalat Counterclaimants try to convince the Court that "95% of the factual and legal issues in this case are purely US,"[97] but their attempts are unconvincing for three reasons.  First, the Edalat Counterclaimants point to affirmative defenses that the Alternate Health Parties raised, which is a flawed argument because those defenses are not quite the same as those raised by Computershare.[98]  In fact, Computershare raises *forum non conveniens* as an affirmative defense to the fourth counterclaim, whereas the Alternate Health Parties do not.[99]

Second, neither party conducts a choice-of-law analysis that would persuade the Court that a Canadian forum would need to apply California state law or, conversely, that this Court could ***avoid*** applying Canadian law, even with respect to affirmative defenses.[100]  *See, e.g.*, *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010) (explaining the choice-of-law analysis when parties dispute which jurisdiction's law to apply).  Assuming a "true conflict" of laws exists, the Court would look to which jurisdiction's interests would be "more impaired if its law were not applied."  *Id.* at 1142.  Here, the Court concludes that Canada's interests would be "more impaired" for the reasons discussed *supra* in Part III.B.2.b.i.  But, assuming a true conflict of laws does not exist—*i.e.*, that applicable Canadian law resembles or is identical to California

---

[97]     Computershare Motion Opposition 9:26.

[98]     *Id.* at 10:8-19; *compare* Alternate Health Parties' Answer to FACC [ECF No. 98] 11:1-15:24 *with* Answer of Counterdefendant Computershare to FACC (the "Computershare Answer") [ECF No. 99] 11:1-12:18.

[99]     Computershare Answer 12:2-15.

[100]     While the Edalat Counterclaimants contend that Canadian courts would look to U.S. precedent to interpret applicable Canadian law, their support comes in the form of a citation to a Canadian case involving the interpretation of a different statute concerning ***patents***, not securities.  *See* Computershare Motion Opposition 12:10-20.  The Court is not convinced that the analogy is apt.  Moreover, the Edalat Counterclaimants fail to attach the case as an exhibit on the docket, depriving the Court of the ability to review it.  *See* Kashani Declaration ¶ 4.

law, as the Edalat Counterclaimants imply[101]—other courts have held that applying Canadian law would still "impose a substantial burden on both the Court and the jurors, to research, understand, and apply the foreign law," notwithstanding "the similarity between California law and [British Columbian] law." *Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *6 (N.D. Cal. Aug. 10, 2021) (internal quotations omitted).

Third, even if the number of quantifiable facts or affirmative defenses grounded in California law exceed those based on Canadian law, Computershare argues that Canadian questions of law and fact are more important, in part because adjudicating the fourth counterclaim turns on events that occurred in Canada and involve liability by a Canadian stock transfer agent under Canadian law.[102] Moreover, Computershare's counsel avers that this case presents issues of first impression regarding Section 86 of the Securities Transfer Act of British Columbia.[103] If true, that fact would weigh heavily in favor of dismissal. *See In re BP S'holder Derivative Litig.*, 2011 WL 4345209, at *4 (S.D. Tex. Sept. 15, 2011), *aff'd sub nom. City of New Orleans Employees' Ret. Sys.* ex rel. *BP P.L.C. v. Hayward*, 508 F. App'x 293 (5th Cir. 2013) (dismissing under *forum non conveniens* when faced with adjudicating a "recently enacted U.K. statute").

### iii.   Burden on Local Courts and Juries

The parties have demanded a jury trial.[104] "Where the local interest in a controversy is weak as compared to the alternative forum's interest, courts have held that the burden on local courts and juries, and the related costs, are not justified." *Etaliq*, 2011 WL 13220445, at *8. As discussed *supra* in

---

[101]     *See* Computershare Motion Opposition 11:20-12:9.

[102]     Reply for Computershare Motion 6:5-7:9 (dissecting predicate questions of law and fact that would turn on Canadian law or events occurring in Canada).

[103]     *Id*. at 4:9-5:3.

[104]     *See generally* FACC.

Part III.B.2.b.i, the local interest here is comparatively weak.  The Court therefore concludes that "burden on this Court and jurors in this district, in terms of time and cost, is not justified." *Id*.  This factor points to dismissal.

### iv.   Congestion in the Court

The Central District of California is "one of the busiest districts in the nation." *Cleanview Distribution Grp. LLC v. LGL Holdings, LLC*, 2021 WL 5969502, at *3 (C.D. Cal. Nov. 12, 2021) (collecting cases).  Because the counterclaims at issue rely on Canadian law and events that transpired there (at least in part), it is appropriate that a Canadian forum bear those costs.  "The burden on local courts and juries unconnected to the case and the costs of resolving a dispute unrelated to the forum also favor dismissal." *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009); *see also Dibdin*, 2013 WL 327324, at *7 (dismissing on the grounds of *forum non conveniens* where case turned on events that occurred in England, highlighting the Central District's relative congestion).

### v.   The Costs of Resolving a Dispute Unrelated to This Forum

Computershare argues that the parties would likely need to retain Canadian experts to assist the Court with issues of Canadian law, such as statutory interpretation, theories of liability, defenses, and damages.[105]  "Even if Canadian law is identical to California law, the Court will have to rely on the declarations of Canadian law experts to determine the substance of Canadian law." *Etaliq*, 2011 WL 13220445, at *7 n.3.  The Edalat Counterclaimants do not dispute that point.[106]  This factor, then, also weighs in favor of dismissal.

---

[105]   Computershare Motion 13:18-22.

[106]   *See generally* Computershare Motion Opposition.

### c. Conclusion on the Balance Factors

The public factors overwhelmingly favor dismissal.  The private factors, on balance, also favor dismissal:  three favor dismissal, three are neutral, and only one factor clearly counsels this Court to keep the case here—the costs to Edalat and the other Counterclaimants.  Notwithstanding the Court's sensitivity to those concerns, the cumulative view of the balancing test strongly favors the Canadian forum.  Thus, the second requirement for dismissal on the grounds of *forum non conveniens* is met.  *See Ayco Farms*, 862 F.3d at 948.  For that reason, the Court finds it appropriate to **GRANT** Computershare's Motion.

## C.  International Comity

In the alternative, Computershare asks this Court to defer to the Canadian court system in the interests of international comity.  It rehashes many of the same arguments that it makes in support of dismissal under the doctrine of *forum non conveniens*.[107]  The Edalat Counterclaimants do not explicitly respond to that argument; they do not mention the words "international" or "comity" even once in their briefs.[108]  The Edalat Counterclaimants' silence here corroborates the Court's decision to dismiss.  After all, the "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment to the uncontested issue."  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (quoting *Sportscare of America, P.C. v. Multiplan, Inc.*, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011)); *accord Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir.2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment).

---

[107]    Computershare Motion 18:14-19:26.

[108]    *See generally* Computershare Motion Opposition.

**D.      Voluntary Dismissal**

Because a Canadian forum would be a far more appropriate forum to adjudicate the severed counterclaims, the Court sees no good reason to force the Alternate Health Parties and Edalat Parties into a costly, burdensome trial when they are ready to dismiss their claims against each other.  Therefore, so long as the parties continue to adhere to the dictates of this Court's prior order,[109] the Court finds it appropriate to **GRANT** the Joint Motion to Dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      The Joint Motion to Dismiss is **GRANTED**.

        a.      All claims in this action asserted by Plaintiffs Alternate Health USA, Inc.; Alternate Health Corporation; and Alternate Health, Inc. against all Defendants are **DISMISSED with prejudice**, with each party bearing his, her, or its own costs.

        b.      All counterclaims in this action asserted by Paul Edalat; EFT Global Holdings, Inc. d/b/a Sentar Pharmaceuticals; Farah Barghi and Olivia Karpinski, on behalf of themselves and derivatively, against Alternate Health USA, Inc.; Alternate Health Corporation; Alternate Health, Inc.; Howard Mann; and Michael L. Murphy are **DISMISSED with prejudice**, with each party bearing his, her, or its own costs.

2.      The Computershare Motion is **GRANTED**.  The Edalat Counterclaimants' severed counterclaims are **DISMISSED without prejudice**.

3.      Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated: March 14, 2022

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[109]  *See generally* Order on Joint Motion.

-27-